**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:21-md-02994-RAR**

In re:

**MEDNAX SERVICES, INC.,**
**CUSTOMER DATA SECURITY BREACH LITIGATION**

_____/

This Document Relates to All Actions


**<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED</u>**
**<u>COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

SUMMARY OF COMPLAINT ALLEGATIONS.....................................................3

ARGUMENT AND CITATION TO AUTHORITIES ...............................................4

   I.    PLAINTIFFS LACK ARTICLE III STANDING.............................................4

      A.  Many of the Purported Harms Plaintiffs Allege Do Not Constitute an Injury-in-Fact..5

          1.   Alleged Risk of Future Harm Is Not Injury-In-Fact......................................5

          2.   Mitigation Measures Protecting Against a Speculative Risk of Future Harm Do Not Qualify as an Injury-In-Fact................................................................8

          3.   An Alleged Diminution in the Value of PII Is Not an Injury-In-Fact. ...........8

          4.   Alleged Loss of Privacy Is Not an Injury-In-Fact. ........................................9

          5.   Lost Benefit of the Bargain Is Not an Injury-In-Fact. .................................10

          6.   Emotional Distress, Without More, Is Not an Injury-In-Fact. .....................11

      B. No Plaintiffs Have Alleged Injuries Fairly Traceable to the Security Incident............11

          1.   Social Security Numbers on the Dark Web Are Not Fairly Traceable to the Security Incident. ......................................................................................12

          2.   Plaintiff Lee's Spam Telephone Calls Are Not Fairly Traceable to the Security Incident. ......................................................................................15

          3.   Plaintiff Nielsen's Alleged Identity Theft Is Not Fairly Traceable to the Security Incident. ......................................................................................16

  II.   THE COMPLAINT FAILS TO STATE A SINGLE PLAUSIBLE CLAIM FOR RELIEF..............................................................................................................18

      A. This Court Should Dismiss the Complaint Because it Is a Shotgun Pleading. ............19

B. Plaintiffs Fail to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count I) ................................................................................22

C. Plaintiffs Fail to State a Claim Under Any Consumer Protection Statute (Count II) ...24

    1. Plaintiffs' Consumer Statute Claims Fail for Two Global Reasons. ..............24

    2. Plaintiffs' Consumer Statute Claims Fail for Nine State-Specific Reasons. ...26

D. Plaintiffs Fail to State a Claim Under the California Confidentiality of Medical Information Act (Count III) ........................................................................30

E. Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count IV) ................31

F. Plaintiffs Fail to State a Claim for Negligence (Count V) ...........................................34

    1. With One Exception, Defendants Do Not Owe Plaintiffs a Common-Law Duty to Safeguard Their Information from Criminal Theft ...........................34

    2. Plaintiffs Cannot Establish that Defendants' Conduct Proximately Caused Any Loss ...............................................................................................37

    3. Plaintiffs Rumely, Fulks, Bean, and Jay's Negligence Claims Fail Because They Have Not Alleged They Suffered Any Legally Cognizable Damages ...37

    4. The Economic Loss Rule ("ELR") Bars Negligence Based Claims. ..............39

G. Plaintiffs Fail to State a Claim for Invasion of Privacy by Public Disclosure of Private Facts (Count VI) ..............................................................................40

H. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty of Confidentiality (Count VII) ...................................................................................................41

I. Plaintiffs Fail to State a Claim for Negligent Training and Supervision (Count VIII) ...............................................................................43

J. Plaintiffs Fail to State a Claim for Negligence Per Se (Count IX) ...........................46

    1. California, Maryland, and Washington Do Not Recognize Negligence Per Se. ...........................................................................................47

2.  Courts Applying Arizona, South Carolina, and Virginia Law Have Held
    that HIPAA Cannot Form the Basis of a Negligence Per Se Claim. ..............47

3.  HIPAA and HITECH Have No Private Right of Action, Which Bars a
    Negligence Per Se Claim in Missouri, North Carolina, and South Carolina...48

4.  Negligence Per Se Cannot Be Based on a General or Abstract Duty Under
    Arizona, Oklahoma, and Texas Law. ............................................................49

5.  Plaintiff A.W.'s Negligence Per Se Claim Fails for Two Missouri-Specific
    Reasons. ......................................................................................................50

III. ADDITIONAL ARGUMENT BY AMERICAN ANESTHESIOLOGY .........................50

A. The Complaint Improperly Lumps Together AA and the Other Defendants. ..............51

B. Eleven Plaintiffs Lack Standing to Sue AA Because They Do Not Allege Any
   Connection to AA. ...................................................................................................52

C. Plaintiffs Cannot Assert State-Law Claims When Their Own Claims Do Not Arise
   Under the Laws of Those States. ..............................................................................56

CONCLUSION....................................................................................................................57

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
   380 F. Supp. 3d 1243 (M.D. Fla. 2019) ...............................................................9

*32nd St. Surgery Ctr. LLC v. Right Choice Managed Care*,
   2013 WL 12202938 (W.D. Mo. July 24, 2013)....................................................23

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
   925 F.3d 1205 (11th Cir. 2019).........................................................................54

*Adkins v. Facebook, Inc.*,
   424 F. Supp. 3d 686 (N.D. Cal. 2019).................................................................38

*Adolph Coors Co. v. Rodriguez*,
   780 S.W.2d 477 (Tex. App. 1989) ......................................................................24

*Alexander v. Cmty. Hosp. of Long Beach*,
   259 Cal. Rptr. 3d 340 (Cal. Ct. App. 2020)........................................................45

*Alexander v. Smith & Nephew, P.L.C.*,
   98 F. Supp. 2d 1299 (N.D. Okla. 2000) ..............................................................37

*Allen v. FCA US LLC*,
   2017 WL 1957068 (W.D. Va. May 10, 2017)......................................................28

*Allen v. Similasan Corp.*,
   2013 WL 5436648 (S.D. Cal. Sept. 27, 2013)......................................................29

*Alleruzzo v. SuperValu, Inc. (In re Supervalu, Inc., Customer Data Sec. Breach
   Litig.)*, 870 F.3d 763 (8th Cir. 2017) ...................................................................7

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ........................................................35, 39

*Amfac Distrib. Corp. v. Miller*,
   673 P.2d 792 (Ariz. 1983) .................................................................................37

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
   77 F.3d 364 (11th Cir. 1996) .............................................................................20

*Anderson v. Soap Lake Sch. Dist.*,
   423 P.3d 197 (Wash. 2018) ....................................................................44, 45, 46

*Arrington v. Hausman*,
    760 F. App'x 705 (11th Cir. 2019) ............................................................................42

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................3, 18

*Att'y Gen. of Md. v. Dickson*,
    717 F. Supp. 1090 (D. Md. 1989) .............................................................................25

*Audler v. CBC Innovis Inc.*,
    519 F.3d 239 (5th Cir. 2008) ....................................................................................55

*Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*,
    332 S.W.3d 184 (Mo. Ct. App. 2010) .......................................................................39

*BancFirst v. Dixie Rests., Inc.*,
    2012 WL 12879 (W.D. Okla. Jan. 4, 2012)..........................................................34, 35

*In re Banner Health Data Breach Litig.*,
    2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ............................................................26

*Barmapov v. Amuial*,
    986 F.3d 1321 (11th Cir. 2021)...........................................................................19, 20

*Barr v. Flagstar Bank, FSB*,
    303 F. Supp. 3d 400 (D. Md. 2018) ...........................................................25, 26, 27

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019).....................................................................15

*In re Bay Circle Props., LLC*,
    955 F.3d 874 (11th Cir. 2020) ...................................................................................53

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................18

*Benjamin v. Shaw*,
    2017 WL 3205798 (D.S.C. July 28, 2017)..................................................................37

*Benson v. Savannah River Nuclear Sols. LLC*,
    2013 WL 5350805 (D.S.C. Sept. 20, 2013)................................................................22

*Bereston v. UHS of Del., Inc.*,
    180 A.3d 95 (D.C. 2018) ............................................................................................49

*BHR Recovery Cmtys., Inc. v. Top Seek, LLC*,
    355 F. Supp. 3d 416 (E.D. Va. 2018)...................................................................26, 27

*Bishop & Assocs. LLC v. Ameren Corp.*,
  520 S.W.3d 463 (Mo. 2017) ...................................................................23

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
  499 F. Supp. 3d 1160 (S.D. Fla. 2020)....................................................53

*Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*,
  624 S.E.2d 55 (Va. 2006) .......................................................................37

*Bob Mills Furniture Co., L.L.C. v. Ashley HomeStores, Ltd.*,
  2017 WL 11144629 (W.D. Okla. July 25, 2017).....................................26

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ................................................................53

*Bradley v. Pfizer, Inc.*,
  440 F. App'x 805 (11th Cir. 2011) ..........................................................49

*Brandt v. Med. Def. Assocs.*,
  856 S.W.2d 667 (Mo. 1993) ...................................................................43

*Briggs v. Nova Servs.*,
  147 P.3d 616 (Wash. Ct. App. 2006) ......................................................44

*In re Brinker Data Incident Litig.*,
  2020 WL 691848 (M.D. Fla. Jan. 27, 2020).............................................43

*Broughton v. McClatchy Newspapers, Inc.*,
  588 S.E.2d 20 (N.C. Ct. App. 2003) .......................................................40

*Brown v. ECCL 4:12, LLC*,
  2021 WL 3204752 (Tex. App. July 29, 2021)...........................................43

*Browning v. Apex Physical Therapy, LLC*,
  2020 WL 1455738 (E.D. Mo. Mar. 25, 2020) ..........................................25

*Brush v. Miami Beach Healthcare Grp.*,
  238 F. Supp. 3d 1359 (S.D. Fla. 2017).....................................................32

*Buckley v. Santander Consumer USA, Inc.*,
  2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ...............................34, 35

*Budach v. NIBCO, Inc.*,
  2015 WL 3853298 (W.D. Mo. June 22, 2015).........................................26

*Bumpers v. Cmty. Bank of N. Va.*,
  747 S.E.2d 220 (N.C. 2013)....................................................................27

*Burton v. MAPCO Exp., Inc.*,
    47 F. Supp. 3d 1279 (N.D. Ala. 2014) ................................................................41

*Buxton v. Buxton*,
    770 A.2d 152 (Md. 2001) ...................................................................................42

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)....................................................28

*Calzone v. Hawley*,
    866 F.3d 866 (8th Cir. 2017) ..............................................................................55

*CAMP Legal Def. Fund, Inc. v. City of Atl.*,
    451 F.3d 1257 (11th Cir. 2006)..............................................................................4

*In re Capital One Consumer Data Sec. Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020) ...........................................................35, 38

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016).............................................................40

*Carolina Rest. Grp. v. Pepsico Sales, Inc.*,
    2015 WL 4250395 (W.D.N.C. July 13, 2015)....................................................23

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
    492 F.3d 484 (4th Cir. 2007) ..............................................................................25

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) .................................................................................37

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ..................................................38

*Castro v. Budget Rent-Car Sys., Inc.*,
    65 Cal. Rptr.3d 430 (Cal. Ct. App. 2007)..........................................................18

*Cellco P'ship v. Plaza Resorts Inc.*,
    2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) .............................................22, 52

*Cesnik v. Edgewood Baptist Church*,
    88 F.3d 902 (11th Cir. 1996) ..............................................................................24

*Chambliss v. CareFirst, Inc.*,
    189 F. Supp. 3d 564 (D. Md. 2016) ......................................................................9

*Charleston, S.C. Reg. for Golf & Tourism, Inc. v. Young Clement Rivers &*
    *Tisdale, LLP*, 598 S.E.2d 717 (S.C. Ct. App. 2004) .....................................44, 45

*Chiron Recovery Ctr. v. United Healthcare Servs., Inc.*,
  2020 WL 3547047 (S.D. Fla. June 30, 2020) ....................................................52

*Chisholm v. TranSouth Fin. Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000) .........................................................................26

*City of High Point v. Suez Treatment Sols. Inc.*,
  485 F. Supp. 3d 608 (M.D.N.C. 2020)................................................................28

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................5, 11

*Claridge v. RockYou, Inc.*,
  785 F. Supp. 2d 855 (N.D. Cal. 2011)................................................................23

*Clifford v. Federman*,
  855 F. App'x 525 (11th Cir. 2021) .....................................................................52

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
  2017 WL 1551330 (S.D. Ill. May 1, 2017) ........................................................32

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
  887 F.3d 803 (7th Cir. 2018) .......................................................................35, 40

*In re Cmty. Health Sys., Inc.*,
  2016 WL 4732630 (N.D. Ala. Sept. 12, 2016)..............................................10, 13

*Cockrum v. Donald J. Trump for President, Inc.*,
  365 F. Supp. 3d 652 (E.D. Va. 2019).................................................................40

*Coffie v. Fla. Crystals Corp.*,
  460 F. Supp. 3d 1297 (S.D. Fla. 2020)..............................................................55

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
  2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ...................................................27

*Cook v. SCI Md. Funeral Servs. Inc.*,
  2016 WL 890298 (D. Md. Mar. 9, 2016) ............................................................33

*Corbett v. Transp. Sec. Admin.*,
  930 F.3d 1225 (11th Cir. 2019)..........................................................................53

*Corona v. Sony Pictures Entm't, Inc.*,
  2015 WL 3916744 (C.D. Cal. June 15, 2015) ....................................................38

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp.*,
  2011 WL 1233126 (S.D. Fla. Mar. 30, 2011)......................................................22

*Covarrubias v. Am. Airlines, Inc.*,
  2011 WL 13100749 (W.D. Wash. Apr. 21, 2011) ............................................................22

*Curry v. Schletter Inc.*,
  2018 WL 1472485 (W.D.N.C. Mar. 26, 2018) ................................................................42

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..............................................................................................53, 54

*Daniyan v. Viridian Energy LLC*,
  2015 WL 4031752 (D. Md. June 30, 2015) ....................................................................24

*Darnell v. Wyndham Cap. Mortg., Inc.*,
  2021 WL 1124792 (W.D.N.C. Mar. 24, 2021) ..................................................................9

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ........................................................................................26

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ..............................................................................................53, 54

*Davis v. Lutheran S. High Sch. Assoc. of St. Louis*,
  200 S.W.3d 163 (Mo. Ct. App. 2006) ............................................................................44

*Deburro v. Apple, Inc.*,
  2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) ................................................................25

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
  693 F. Supp. 2d 1325 (S.D. Fla. 2010) ..........................................................................22

*Deloitte & Touche v. Weller*,
  976 S.W.2d 212 (Tex. App. 1998) ................................................................................37

*Deutsche Bank Nat'l Tr. Co. v. Buck*,
  2019 WL 1440280 (E.D. Va. Mar. 29, 2019) ..................................................................35

*Dibrill v. Normandy Assoc., Inc.*,
  383 S.W.3d 77 (Mo. Ct. App. 2012) ..............................................................................45

*Dimas v. JPMorgan Chase Bank, N.A.*,
  2018 WL 809508 (N.D. Cal. Feb. 9, 2018) ....................................................................27

*Dixon v. Bhuiyan*,
  10 P.3d 888 (Okla. 2000) ............................................................................................31

*Doe v. St. Louis Univ. Sch. of Med.*,
  2013 WL 1305825 (E.D. Mo. Mar. 28, 2013) ................................................................22

*Doe v. United States*,
   83 F. Supp. 2d 833 (S.D. Tex. 2000) ................................................................... 40

*Douglas v. Hardy*,
   600 S.W.3d 358 (Tex. App. 2019) ....................................................................... 44

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ....................................................... 47

*Duqum v. Scottrade, Inc.*,
   2016 WL 3683001 (E.D. Mo. July 12, 2016) ...................................................... 10

*E-Learning LLC v. AT&T Corp.*,
   517 S.W.3d 849 (Tex. App. 2017) ....................................................................... 31

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) ............................................................................... 55

*Ebrahimi v. City of Huntsville Bd. of Educ.*,
   114 F.3d 162 (11th Cir. 1997) ............................................................................. 21

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013) ................................................................................. 37

*Egan v. Telomerase Activation Scis., Inc.*,
   8 N.Y.S.3d 175 (N.Y. App. Div. 2015) ............................................................... 25

*Embree v. Wyndham Worldwide Corp.*,
   779 F. App'x 658 (11th Cir. 2019) ................................................................. 21, 51

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ........................................................................... 14

*Fejzulai v. Sam's W., Inc.*,
   205 F. Supp. 3d 723 (D.S.C. 2016) ..................................................................... 29

*Feldman v. BRP US, Inc.*,
   2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) ..................................................... 56

*Fernandez v. Leidos, Inc.*,
   127 F. Supp. 3d 1078 (E.D. Cal. 2015) ............................................................... 15

*Filak v. George*,
   594 S.E.2d 610 (Va. 2004) .................................................................................. 33

*Fischer v. CentralSquare Techs., LLC*,
   No. 21-cv-60856, slip op. (S.D. Fla. Sept. 16, 2021), Dkt. No. 28 ...................... 25

*Frezza v. Google Inc.*,
    2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ...................................................................32

*Furman v. Sheppard*,
    744 A.2d 583 (Md. Ct. Spec. App. 2000).................................................................40, 41

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
    843 F.3d 1257 (11th Cir. 2016).................................................................................27

*Gardiner v. Walmart Inc.*,
    2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)..............................................................25, 38

*Gazzola v. NCL (Bahamas) Ltd.*,
    2019 WL 3067506 (S.D. Fla. July 12, 2019)..............................................................21, 52

*Gen. Fid. Ins. Co. v. Foster*,
    808 F. Supp. 2d 1315 (S.D. Fla. 2011) .......................................................................36

*In re Gilbertson v. Purdham*,
    2009 WL 7339865 (Va. Cir. Ct. May 4, 2009)...............................................................46

*Gipson v. Kasey*,
    150 P.3d 228 (Ariz. 2007) (en banc) .........................................................................34

*Gladstone Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979) .............................................................................................55

*Global Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*,
    424 F. Supp. 3d 848 (C.D. Cal. 2019).....................................................................33, 34

*Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols.*,
    954 F.3d 804 (5th Cir. 2020) ..................................................................................39

*Goldstein v. Costco Wholesale Corp.*,
    No. 21-cv-80601-RAR (S.D. Fla. Sept. 9, 2021), Dkt. No. 53.............................................18

*Gonnering v. Blue Cross & Blue Shield of Tex.*,
    420 F. Supp. 2d 660 (W.D. Tex. 2006) .......................................................................41

*Gonzales v. Palo Verde Mental Health Servs.*,
    783 P.2d 833 (Ariz. Ct. App. 1989) ..........................................................................42

*Goodman v. HTC Am., Inc.*,
    2012 WL 2412070 (W.D. Wash. June 26, 2012).............................................................26

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) ...................................................................................38

*Gray v. Acadia Healthcare Co.*,
    2020 WL 5996418 (E.D. Okla. Oct. 9, 2020) .......................................................29

*Green Tree Servicing, LLC v. Chi. Title Ins. Co.*,
    499 S.W.3d 771 (Mo. Ct. App. 2016) ...............................................................33

*Gregory v. Chohan*,
    615 S.W.3d 277 (Tex. App. 2020) ....................................................................44

*Grich v. Mantelco, LLC*,
    746 S.E.2d 316 (N.C. Ct. App. 2013) ..........................................................33, 34

*Griffin v. Florida*,
    2020 BL 430625 (S.D. Fla. Nov. 4, 2020) ......................................................21

*Hadnot v. Shaw*,
    826 P.2d 978 (Okla. 1992)...........................................................................40, 41

*Hale v. Wells Fargo Bank*,
    2021 WL 767664 (S.D. Fla. Feb. 26, 2021) .......................................... 19, 21, 52

*Hammond v. Bank of N.Y. Mellon*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................................................38

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*,
    743 S.E.2d 808 (S.C. 2013) .............................................................................26

*Hercules Inc. v. U.S.*,
    516 U.S. 417 (1996) .........................................................................................32

*Hernandez v. Lowe's Home Centers, Inc.*,
    2011 WL 8964944 (Va. Cir. Ct. Aug. 1, 2011) .................................................46

*Hetzel v. JPMorgan Chase Bank, N.A.*,
    2014 WL 7336863 (E.D.N.C. Dec. 22, 2014) ...................................................48

*Holland v. JPMorgan Chase Bank, N.A.*,
    2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019)...................................................55

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*,
    641 F.3d 1259 (11th Cir. 2011)........................................................................12

*Holmes v. Countrywide Fin. Corp.*,
    2012 WL 2873892 (W.D. Ky. July 12, 2012) ...................................................34

*In re Horizon Healthcare Servs. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017) ............................................................................13

*Howard v. Kerzner Int'l Ltd.*,
   2014 WL 714787 (S.D. Fla. Feb. 24, 2014) ..................................................18

*Howard v. Ryder Truck Rental, Inc.*,
   2012 WL 12882374 (D. Ariz. Feb. 9, 2012) ..................................................41

*Humana Hosp. Desert Valley v. Super. Ct.*,
   742 P.2d 1382 (Ariz. Ct. App. 1987) ...........................................................45

*Hurry v. Fin. Indus. Regul. Auth. Inc.*,
   2015 WL 11118114 (D. Ariz. Aug. 5, 2015) ..................................................40

*Ibarra v. Gastelum*,
   471 P.3d 1028 (Ariz. Ct. App. 2020) ...........................................................49

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*,
   143 S.W.3d 794 (Tex. 2004)..........................................................................34

*Irwin v. Jimmy John's Franchise, LLC*,
   175 F. Supp. 3d 1064 (C.D. Ill. 2016) ..........................................................35

*J.R. v. Walgreens Boots All., Inc.*,
   470 F. Supp. 3d 534 (D.S.C. 2020) ........................................................46, 48

*Jackson v. Resolution GGF Oy*,
   136 F.3d 1130 (7th Cir. 1998) ......................................................................55

*Jacques v. First Nat'l Bank of Md.*,
   515 A.2d 756 (Md. 1986) ..............................................................................34

*January v. TD Serv. Co.*,
   2011 WL 13229240 (C.D. Cal. Oct. 17, 2011)..............................................37

*Jenkins v. CEC Ent. Inc.*,
   421 F. Supp. 3d 257 (D.S.C. 2019) ..............................................................34

*Jones v. Yaffey*,
   2021 WL 687727 (S.D. Fla. Feb. 23, 2021) ..................................................20

*Jordan v. Jordan*,
   257 S.E.2d 761 (Va. 1979) ............................................................................34

*Joseph v. Bernstein*,
   612 F. App'x 551 (11th Cir. 2015) ..........................................................21, 52

*JPMCCM 2010-C1 Aquia Office LLC v. Mosaic Aquia Owner, LLC*,
   2019 WL 4134035 (Va. Cir. Jan. 15, 2019) ..................................................39

*Jurin v. Google Inc.*,
  768 F. Supp. 2d 1064 (E.D. Cal. 2011) ...................................................................22

*Kahle v. Litton Loan Servicing LP*,
  486 F. Supp. 2d 705 (S.D. Ohio 2007) ............................................................. 38, 39

*Kapu Gems v. Diamond Imports, Inc.*,
  2016 WL 4259119 (N.D. Cal. Aug. 12, 2016) .....................................................42

*Kassman v. Busfield Enters.*,
  639 P.2d 353 (Ariz. Ct. App. 1981) .....................................................................44

*Kaswell v. Wells Fargo Bank, N.A.*,
  2014 WL 3889183 (D. Md. Aug. 6, 2014) ...........................................................28

*Keg Rests. Ariz., Inc. v. Jones*,
  375 P.3d 1173 (Ariz. Ct. App. 2016) ...................................................................33

*Khan v. Children's Nat'l Health Sys.*,
  188 F. Supp. 3d 524 (D. Md. 2016) ................................................................. 9, 10

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) .........................................................................32

*Kuehn v. Stanley*,
  91 P.3d 346 (Ariz. Ct. App. 2004) .......................................................................44

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) ...............................................................................28

*Landucci v. State Farm Ins. Co.*,
  65 F. Supp. 3d 694 (N.D. Cal. 2014) ...................................................................23

*Legrone v. Mogenson*,
  2011 WL 2555710 (Cal. Ct. App. June 28, 2011) ...............................................42

*Lehrer v. State, Dep't of Soc. & Health Servs.*,
  5 P.3d 722 (Wash. Ct. App. 2000) .......................................................................33

*Levy v. Infilaw Corp.*,
  2017 WL 3573825 (W.D.N.C. Aug. 17, 2017) ....................................................22

*Lewis v. Casey*,
  518 U.S. 343 (1996) .............................................................................................54

*Lewis v. Mercedes-Benz USA, LLC*,
  2021 WL 1216897 (S.D. Fla. Mar. 30, 2021) .......................................... 53, 56, 57

*Little v. Omega Meats I, Inc.*,
   615 S.E.2d 45 (N.C. Ct. App. 2005) ........................................................37

*Lohabare v. Home Recovery of Va., Inc.*,
   2017 WL 11576843 (E.D. Va. Nov. 2, 2017) ...........................................25

*Longenecker-Wells v. Benecard Servs.*,
   658 F. App'x 659 (3d Cir. 2016) .............................................................32

*Lovell v. P.F. Chang's China Bistro, Inc.*,
   2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ...................................42

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................9, 11, 53

*Mack v. USAA Cas. Ins. Co.*,
   994 F.3d 1353 (11th Cir. 2021) ...............................................................53

*Magluta v. Samples*,
   256 F.3d 1282 (11th Cir. 2001) ...............................................................21

*Magnum Constr. Mgmt. LLC v. WSP USA Sols., Inc.*,
   2021 WL 799448 (S.D. Fla. Mar. 2, 2021) ....................................22, 52

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) .......................................................................55

*In re Managed Care Litig.*,
   298 F. Supp. 2d 1259 (S.D. Fla. 2003) ....................................................18

*In re Marriott, Int'l, Inc., Customer Data Sec. Breach Litig.*,
   2020 WL 6290670 (D. Md. Oct. 27, 2020) ........................................36, 47

*Martishius v. Carolco Studios, Inc.*,
   562 S.E.2d 887 (N.C. 2002) .....................................................................34

*Marvin's Midtown Chiropractic Clinic, LLC v. Am. Fam. Ins. Co.*,
   2018 WL 2326625 (W.D. Mo. May 22, 2018) .......................................48

*McConnell v. Servinsky Eng'g, PLLC*,
   22 F. Supp. 3d 610 (W.D. Va. 2014) .......................................................31

*McCormick v. England*,
   494 S.E.2d 431 (S.C. Ct. App. 1997) .......................................................43

*McMichael v. James Island Charter Sch.*,
   840 F. App'x 723 (4th Cir. 2020) ......................................................40, 41

*McNeil v. Best Buy Co.*,
　　2014 WL 1316935 (E.D. Mo. Apr. 2, 2014) .......................................................41

*McQuade v. Arnett*,
　　558 F. Supp. 11 (W.D. Okla. 1982) ...................................................................44

*In re Michaels Stores Pin Pad Litig.*,
　　830 F. Supp. 2d 518 (N.D. Ill. 2011)..................................................................39

*Monsanto Co. v. Geertson Seed Farms*,
　　561 U.S. 139 (2010) ............................................................................................5

*Morgan v. Wal-Mart Stores East, LP*,
　　2010 WL 4394096 (W.D. Va. Nov. 1, 2010) ......................................................46

*Morris v. Wilmington Sav. Fund Soc'y*,
　　360 F. Supp. 3d 363 (W.D. Va. 2018)................................................................22

*Moyer v. Michaels Stores, Inc.*,
　　2014 WL 3511500 (N.D. Ill. July 14, 2014).......................................................34

*MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*,
　　2021 WL 1711684 (S.D. Fla. Apr. 15, 2021) .....................................................55

*Muransky v. Godiva Chocolatier, Inc.*,
　　979 F.3d 917 (11th Cir. 2020) (en banc) ............................................................53

*N.H. v. Presbyterian Church (U.S.A.)*,
　　998 P.2d 592 (Okla. 1999)..................................................................................45

*Nataros v. Fine Arts Gallery of Scottsdale, Inc.*,
　　612 P.2d 500 (Ariz. Ct. App. 1980) ...................................................................25

*In re Nexus 6P Prod. Liab. Litig.*,
　　293 F. Supp. 3d 888 (N.D. Cal. 2018)................................................................27

*Nickel v. Stephens Coll.*,
　　480 S.W.3d 390 (Mo. Ct. App. 2015) .................................................................31

*Nielsen v. Mednax, Inc., et al.*,
　　No. 4:21-cv-00500-JD (D.S.C. Feb. 17, 2021), Dkt. No. 1...............................16

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974) ...........................................................................................54

*Océ Printing Sys. USA, Inc. v. Mailers Data Servs.*,
　　760 So. 2d 1037 (Fla. Dist. Ct. App. 2000) ........................................................25

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
    481 F. Supp. 3d 1258 (S.D. Fla. 2020)......................................................................54, 55

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014)............................................................................41

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*,
    647 N.E.2d 741 (N.Y. 1995)............................................................................................25

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    218 Cal. Rptr. 3d 562 (Cal. Ct. App. 2017)....................................................................31

*Packrite, LLC v. Graphic Packaging Int'l, Inc.*,
    2018 WL 4112827 (M.D.N.C. Aug. 29, 2018)................................................................26

*Panang v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) .............................................................................................26

*Parker v. Carilion Clinic*,
    819 S.E.2d 809 (Va. 2018) .......................................................................................35, 48

*Parrish v. Bank*,
    2016 WL 3906814 (W.D. Okla. July 14, 2016)..............................................................26

*Paskenta Band of Nomlaki Indians v. Crosby*,
    122 F. Supp. 3d 982 (E.D. Cal. 2015) ............................................................................42

*Patsalides v. City of Fort Pierce*,
    2016 WL 11503007 (S.D. Fla. Aug. 12, 2016)...............................................................24

*Patterson v. Beall*,
    19 P.3d 839 (Okla. 2000)................................................................................................26

*Pearce v. Am. Def. Life Ins. Co.*,
    343 S.E.2d 174 (N.C. 1986)............................................................................................25

*Penn-Am. Ins. Co. v. Zertuche*,
    770 F. Supp. 2d 832 (W.D. Tex. 2011) ..........................................................................27

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020).......................................................................39, 40

*Perez v. Wells Fargo & Co.*,
    2015 WL 1887354 (N.D. Cal. Apr. 24, 2015) ................................................................55

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) ....................................................................................34, 36

*Planned Parenthood of Kan. v. Nixon*,
220 S.W.3d 732 (Mo. 2007) ................................................................25

*Pope v. Rollins Protective Servs. Co.*,
703 F.2d 197 (5th Cir. 1983) ..............................................................26

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000)...........................................................54

*Praesel v. Johnson*,
967 S.W.2d 391 (Tex. 1998).................................................................49

*Preisler v. Eastpoint Recovery Grp., Inc.*,
2021 WL 2110794 (S.D. Fla. May 25, 2021) ...................... 11, 12, 54

*Prolow v. Aetna Life Ins. Co.*,
510 F. Supp. 3d 1303 (S.D. Fla. 2021).........................................22, 52

*Provost v. Aptos, Inc.*,
2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ...............................9, 10

*Pub. Serv. Co. of Okla. v. Burlington N. R. Co.*,
53 F.3d 1090 (10th Cir. 1995) ............................................................23

*Pyeatte v. Pyeatte*,
661 P.2d 196 (Ariz. Ct. App. 1982) ....................................................32

*Quechan Tribe of Fort Yuma Indian Rsrv. v. United States*,
2011 WL 1211574 (D. Ariz. Mar. 31, 2011).......................................42

*R.W. v. Armor Corr. Health Servs., Inc.*,
830 F. Supp. 2d 1295 (M.D. Fla. 2011) ..............................................11

*Ramirez v. GEICO*,
548 S.W.3d 761 (Tex. App. 2018) .......................................................26

*Ranger Ins. Co. v. Pierce Cnty.*,
192 P.3d 886 (Wash. 2008) .................................................................37

*Rd., LLC v. Beaufort Cnty*,
857 S.E.2d 371 (S.C. Ct. App. 2021) ..................................................33

*Regents of the Univ. of Cal. v. Super. Ct. of L.A. Cnty*,
163 Cal. Rptr. 3d 205 (Cal. Ct. App. 2013).........................................31

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011) ..............................................................8, 11

*Republic Servs., Inc. v. Am. Int'l Grp. Inc.*,
   2011 WL 2313606 (D. Ariz. June 10, 2011) .......................................................22

*Richter v. CC-Palo Alto, Inc.*,
   176 F. Supp. 3d 877 (N.D. Cal. 2016) (California CLRA) ...................................25

*Rolaff v. Farmers Ins. Co.*,
   2020 WL 4939172 (W.D. Okla. Mar. 19, 2020).................................................55

*Rosendahl v. Bridgepoint Educ., Inc.*,
   2011 WL 4914948 (S.D. Cal. Oct. 17, 2011) .....................................................22

*Ross v. Univ. of Tulsa*,
   2015 WL 4064754 (N.D. Okla. July 2, 2015) ....................................................49

*Salley v. Heartland-Charleston of Hanahan, SC, LLC*,
   2011 WL 2728051 (D.S.C. July 12, 2011)..........................................................48

*Saluteen-Maschersky v. Countrywide Funding Corp.*,
   22 P.3d 804 (Wash. Ct. App. 2001) ...................................................................31

*Salvador v. Allstate Prop. & Cas. Ins. Co.*,
   2020 WL 7042843 (D.D.C. Nov. 30, 2020) .......................................................55

*Sanders v. Callender*,
   2018 WL 337756 (D. Md. Jan. 9, 2018) .............................................................45

*Sarhan v. Miami Dade Coll.*,
   800 F. App'x 769 (11th Cir. 2020) ...............................................................19, 20

*Savidge v. Pharm-Save, Inc.*,
   2017 WL 5986972 (W.D. Ky. Dec. 1, 2017).......................................................38

*Schellenbach v. GoDaddy.com, LLC*,
   321 F.R.D. 613 (D. Ariz. 2017) .........................................................................27

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) .......................................................................15

*SEC v. Rauscher Pierce Refsnes, Inc.*,
   17 F. Supp. 2d 985 (D. Ariz. 1998).....................................................................42

*Severn Peanut Co., Inc. v. Indus. Fumigant Co.*,
   807 F.3d 88 (4th Cir. 2015) ...............................................................................39

*Shepherd v. Costco Wholesale Corp.*,
   441 P.3d 989 (Ariz. Ct. App. 2019) ...................................................................42

*Shook v. Indian River Transp. Co.*,
  236 F. Supp. 3d 1165 (E.D. Cal. 2017) ...................................................................30

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976) .........................................................................................................6

*Sinclair v. Hembree & Hodgson Constr., L.L.C.*,
  2020 WL 3965010 (W.D. Okla. July 13, 2020).......................................................44

*Skinner v. Tel-Drug, Inc.*,
  2017 WL 1076376 (D. Ariz. Jan. 27, 2017) ...........................................................48

*Slick v. Reinecker*,
  839 A.2d 784 (Md. Ct. Spec. App. 2003).................................................................32

*Sloan v. Inolife Techs., Inc.*,
  2017 WL 2268401 (N.C. Super. May 22, 2017)......................................................22

*Smith v. Privette*,
  495 S.E.2d 395 (N.C. Ct. App. 1998) .................................................................44, 45

*Smith v. Wm. Wrigley Jr. Co.*,
  663 F. Supp. 2d 1336 (S.D. Fla. 2009).....................................................................25

*Snakenberg v. Hartford Cas. Ins. Co.*,
  383 S.E.2d 2 (S.C. Ct. App. 1989) ............................................................................40

*Snyder v. Freeman*,
  266 S.E.2d 593 (N.C. 1980).......................................................................................32

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..............................................................................28, 29

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................39

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ......................................................................37

*Spencer v. DHI Mortg. Co.*,
  642 F. Supp. 2d 1153 (E.D. Cal. 2009) ....................................................................24

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................................53, 54, 56

*Sport Collectors Guild Inc. v. Bank of Am. NA*,
  2018 WL 8248944 (D. Ariz. Jan. 5, 2018) ..............................................................24

*Springmeyer v. Marriott Int'l, Inc.*,
  2021 WL 809894 (D. Md. Mar. 3, 2021) ....................................................... 12, 36

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020) ......................................................... 30, 31

*State Farm Fire & Cas. Co. v. Keenan*,
  216 Cal. Rptr. 318 (Cal. Ct. App. 1985) ..............................................................44

*State v. Willoughby*,
  892 P.2d 1319 (Ariz. 1995) ....................................................................................25

*Steinbeck v. Dollar Thrifty Auto. Grp.*,
  2008 WL 4279798 (N.D. Okla. Sept. 15, 2008) ...................................................25

*Stephens v. Availity, LLC*,
  2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) .......................................................33

*Stevens v. Hyde Ath. Indus., Inc.*,
  773 P.2d 871 (Wash. Ct. App. 1989) .....................................................................29

*Sullivan v. Clallam Cnty. Pub. Health Dist. No. 2*,
  2016 WL 3059409 (W.D. Wash. May 31, 2016) ...................................................49

*Sullivan v. Oracle*,
  254 P.3d 237 (Cal. 2011) .......................................................................................30

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...............................................................................................54

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) .................................................................................39

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  2018 WL 1189327 (D. Minn. Mar. 7, 2018) ...........................................................7

*Sutter Health v. Super. Ct.*,
  174 Cal. Rptr. 3d 653 (Cal. Ct. App. 2014) ..........................................................31

*In re Takata Airbag Prods. Liab. Litig.*,
  2016 WL 1266609 (S.D. Fla. Mar. 11, 2016) .......................................................57

*Estate of Templeton ex rel. Templeton v. Daffern*,
  990 P.2d 968 (Wash. Ct. App. 2000) ....................................................................47

*Terpin v. AT&T Mobility, LLC*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019) .................................................................25

*Terry v. Ely*,
   2020 WL 9074888 (W.D. Okla. Sept. 8, 2020) ....................................................24

*Tesar v. Union R-XI Sch. Dist.*,
   2017 WL 528318 (E.D. Mo. Feb. 9, 2017)...................................................40, 41

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ........................................................................................53

*Tompkins v. Charlotte-Mecklenburg Sch. Sys.*,
   2016 WL 5868086 (W.D.N.C. Oct. 6, 2016).......................................................44

*Torres v. Wendy's Co.*,
   195 F. Supp. 3d 1278 (M.D. Fla. 2016) ................................................................9

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ........................................................................................53

*Transcon. Ins. Co. v. L.F. Staffing Servs., Inc.*,
   2008 WL 11333473 (S.D. Fla. Aug. 13, 2008).....................................................33

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...........................................................................6, 8, 53, 54

*Tri-Lift NC, Inc. v. Drive Auto. Indus. of Am.*,
   2021 WL 131017 (D.S.C. Jan. 13, 2021) .............................................................39

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*,
   192 Cal. Rptr. 3d 354 (Cal. Ct. App. 2015).........................................................34

*Trinidad v. Metro. Prop. & Cas. Ins. Co.*,
   2013 WL 6729639 (W.D. Wash. 2013) ................................................................34

*Tsao v. Captiva MVP Restaurant Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021)....................................................................6, 7, 8

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human
   Servs.*, 985 F.3d 472 (5th Cir. 2021) ..................................................................46

*Valley Nat'l Bank v. Warren*,
   2021 WL 1597960 (M.D. Fla. Apr. 23, 2021)......................................................53

*Veridian Credit Union v. Eddie Bauer, LLC*,
   295 F. Supp. 3d 1140 (W.D. Wash. 2017) ...........................................................35

*Vibe Micro, Inc. v. Shabanets*,
   878 F.3d 1291 (11th Cir. 2018).............................................................................20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................55

*Viper Publ'g, LLC v. Bailey*,
    2018 WL 3114536 (W.D.N.C. June 25, 2018) ..................................25

*vPersonalize Inc. v. Magnetize Consultants Ltd.*,
    437 F. Supp. 3d 860 (W.D. Wash. 2020) ..........................................25

*Walker v. Presidium, Inc.*,
    296 S.W.3d 687 (Tex. App. 2009) .....................................................33

*Warr v. JMGM Grp., LLC*,
    70 A.3d 347 (Md. 2013) .....................................................................36

*Warren Tech., Inc. v. UL LLC*,
    2018 WL 10550930 (S.D. Fla. Oct. 31, 2018) ..................................54

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................4, 53

*Weil v. Phillips*,
    816 F. App'x 339 (11th Cir. 2020) ....................................19, 21, 52

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015)......................................19, 20, 21

*Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*,
    2017 WL 3621459 (E.D. Mo. Aug. 23, 2017) ..................................50

*Weiss v. Gen. Motors LLC*,
    418 F. Supp. 3d 1173 (S.D. Fla. 2019) .............................................57

*Welborn v. IRS*,
    218 F. Supp. 3d 64 (D.D.C. 2016) ....................................................13

*Wellogix, Inc. v. Accenture, LLP*,
    788 F. Supp.2d 523 (S.D. Tex. 2011)................................................42

*White v. Jackson*,
    2015 WL 1189963 (E.D. Mo. Mar. 16, 2015) ..................................44

*Williams v. Bank of Am., Nat'l Ass'n*,
    2015 WL 3843251 (D.S.C. June 19, 2015) .......................................44

*Williams v. Wicomico Cnty. Bd. of Educ.*,
    836 F. Supp. 2d 387 (D. Md. 2011) ..................................................44

*Willowbrook Foods, Inc. v. Grinnell Corp.*,
  147 S.W.3d 492 (Tex. App. 2004) ...................................................................................27

*Winter v. Novartis Pharma. Corp.*,
  739 F.3d 405 (8th Cir. 2014) ..........................................................................................18

*Woodrum v. Integris Health, Inc.*,
  2007 WL 201045 (W.D. Okla. Jan. 24, 2007) ...........................................................33, 34

*Wright v. Bath & Body Works Direct, Inc.*,
  2012 WL 12088132 (W.D. Mo. Oct. 17, 2012)................................................................27

*Wright v. Washington*,
  2020 WL 3848052 (W.D. Wash. Mar. 20, 2020) .......................................................40, 41

*Yukos Cap. S.A.R.L. v. Feldman*,
  977 F.3d 216 (2d Cir. 2020) ...........................................................................................43

*In re Zantac*,
  2020 WL 7866674.............................................................................................................57

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ................................................................................10

*Zarzana v. Ashley*,
  218 S.W.3d 152 (Tex. App. 2007) ..............................................................................45, 46

**Statutes**

Cal. Civ. Code § 1782(a)......................................................................................................29

Cal. Civ. Code § 56.10(a).....................................................................................................30

Cal. Civ. Code § 56.101(a)...................................................................................................31

Md. Code Com. Law § 13-103(a).........................................................................................25

Mo. Rev. Stat. § 407.020.1 ..................................................................................................25

Okla. Stat. tit. 15, § 754(2) ..................................................................................................29

Wash. Rev. Code § 5.40.050 ...............................................................................................47

Wash. Rev. Code § 19.86.090 .............................................................................................29

**Other Authorities**

31 C.F.R. § 1020.220(a)(2)(i)(A)(4)(i) ................................................................................16

62A Am. Jur. 2d *Privacy* § 97 (2021) ........................................................................................41

77 C.J.S. *Right of Privacy & Publicity* § 32 (2021)....................................................................41

Fed. R. Civ. P. 8.................................................................................................2, 19, 21, 25, 52

Fed. R. Civ. P. 9(b) .................................................................................................................26, 27

Fed. R. Civ. P. 10(b) .......................................................................................................................19

Fed. R. Civ. P. 12 ..............................................................................................................................1

FINRA Rule 6840 ............................................................................................................................16

Restatement (Second) of Torts § 314 (1965)...............................................................................36

Restatement (Second) of Torts § 652D cmt. a (1977) ...............................................................41

Pursuant to Rules 12(b)(1) and 12(b)(6), Defendants Mednax Inc., Mednax Services, Inc., Pediatrix Medical Group, and Pediatrix Medical Group of Kansas, P.C. (collectively, "Mednax") and American Anesthesiology, Inc. ("AA") move to dismiss Plaintiffs' Consolidated Complaint for Damages [ECF No. 53]: (1) under Rule 12(b)(1) because Plaintiffs lack standing to sue under Article III of the United States Constitution, and thus this Court lacks subject-matter jurisdiction; and (2) under Rule 12(b)(6) because Plaintiffs fail to state a single plausible claim to relief.

## INTRODUCTION

Plaintiffs assert nine causes of action (one of which purports to allege violations of fourteen different state statutes) in a quest to find some basis for holding Defendants liable for a criminal third-party cyberattack that affected Defendants (the "Security Incident"). But the large number of claims that Plaintiffs bring—which are in a Complaint that stretches over 100 pages and includes 532 paragraphs of allegations—cannot change the result that Defendants are not liable under any common-law or statutory theory. Plaintiffs' attempt to foist responsibility on Defendants simply because Defendants fell victim to a crime exceeds all bounds of plausibility and should be dismissed for these reasons:

- ***Lack of Standing***: Many Plaintiffs allege nothing more than a hypothetical risk of potential future harm, which cannot satisfy Article III's injury-in-fact requirement under binding Eleventh Circuit and United States Supreme Court precedent. In addition, no Plaintiff alleges an injury-in-fact that is fairly traceable to Defendants' conduct (as opposed to any other data- or cyber-intrusion involving their information). Plaintiffs rely heavily on the alleged exposure of their Social Security numbers, but Plaintiffs acknowledge that Social Security numbers were compromised only "[f]or a very limited number of patients or guarantors." Compl. ¶ 395 n.38. No Plaintiff plausibly alleges that his or her Social Security number was included in the Security

Incident.

- ***Impermissible Shotgun Pleading*:** Plaintiffs' Complaint is a quintessential—and impermissible—shotgun pleading that adopts the allegations of all preceding counts, is replete with vague, conclusory, and immaterial allegations, fails to separate each cause of action into separate counts, and fails to distinguish between Mednax and AA, lumping these separate entities together without identifying what each Defendant specifically did.  Rule 8 requires more.

- ***Breach of Implied Covenant of Good Faith and Fair Dealing*:** Plaintiffs' claims suffer from at least five defects, including that Plaintiffs have not plausibly alleged the existence of a contract with Defendants for the protection of their personal information—a requisite element of these claims.

- ***State Statutory Claims*:** Plaintiffs' claims fail because no Plaintiff asserts a legally cognizable injury and for at least nine state-specific reasons explained in detail below.

- ***California Confidentiality of Medical Information Act*:**  Plaintiffs' claim fails because Plaintiffs have not alleged an affirmative act by Defendants that caused the disclosure of their medical information.  Nor do Plaintiffs allege that the specific medical information subject to the statute's protections was viewed by unauthorized individuals.

- ***Breach of Implied Contract*:**  Plaintiffs' claims fail because they allege no facts supporting a meeting of the minds with respect to any specific data-security obligations.

- ***Negligence*:**  Plaintiffs' claims fail because, among other reasons: (1) all but one of Plaintiffs' home states do not recognize a duty to safeguard personal information under the circumstances alleged here; (2) the economic loss rule bars six Plaintiffs' attempts to recover in tort; and (3) Plaintiffs do not allege cognizable damages or that any supposed injuries were proximately caused by Defendants,

- ***Invasion of Privacy by Public Disclosure of Private Facts***:  Plaintiffs' claims fail for several reasons, including because Plaintiffs do not allege that Defendants intentionally disclosed any private information of Plaintiffs.

- ***Breach of Fiduciary Duty of Confidentiality***:  Plaintiffs' claims fail because, among other reasons, Plaintiffs have not alleged that Defendants intentionally disclosed any of their personal information, which is a required element of this intentional tort.

- ***Negligent Training and Supervision***: Plaintiffs' claims should be dismissed for at least four state-specific reasons and because Plaintiffs fail to plausibly allege the necessary elements of causation and damages.

- ***Negligence Per Se***: Plaintiffs' claims fail because they are nothing more than an improper attempt to create a private right of action for the alleged violation of the Health Insurance Portability and Accountability Act ("HIPAA"), which does not exist under the statute.

For each of these reasons, and those discussed below, the Complaint should be dismissed.

## SUMMARY OF COMPLAINT ALLEGATIONS[1]

Plaintiffs are residents of ten states who allege that they, or their children, received medical services from "Defendants."  *See, e.g.*, Compl. ¶¶ 15, 56, 89, 114, 139.  Plaintiffs allege that they received letters either from Mednax or from AA informing them that their personally identifiable information ("PII") or protected health information ("PHI"), or the PII or PHI of their children, was stolen by unauthorized individuals after a criminal third party gained access to certain business e-mail accounts.  Compl. ¶¶ 17, 42, 57, 75, 90, 115, 140, 164, 177, 197, 221, 243.

Plaintiffs allege that the notice letters they received indicate that various categories of

---

[1] Defendants summarize the Complaint's factual allegations because they must be taken as true for purposes of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants do not concede and instead vigorously dispute the veracity of the allegations.

personal information "may have been involved" in the Security Incident. *See id.* No Plaintiff plausibly alleges that his or her Social Security number was actually involved in the Security Incident. *See id.* Despite this, Plaintiffs assert that they now face a hypothetical risk of potential future harm (or, in a few instances, that they have already experienced an alleged injury), emphasizing that Social Security numbers have allegedly been "placed in the hands of unauthorized third parties and possibly criminals." Compl. ¶¶ 23, 48, 63, 81, 96, 121, 146, 170, 183, 203, 227, 249. But Plaintiffs acknowledge that the Security Incident involved only a very limited number of Social Security numbers, and Plaintiffs' lengthy Complaint is devoid of any allegations suggesting that *their own* Social Security numbers were involved in the Security Incident. To the contrary, when each Plaintiff describes their information that was allegedly involved, they do not list their Social Security numbers. Compl. ¶¶ 17, 42, 57, 75, 90, 115, 140, 164, 177, 197, 221, 243.

Plaintiffs assert nine causes of action against Defendants in hopes of finding one that sticks. But as discussed below, this Court lacks subject-matter jurisdiction because no Plaintiff has Article III standing and because each of Plaintiffs' causes of action fails to state a claim for relief. Thus, the Court should dismiss the Complaint.

<u>**ARGUMENT AND CITATION TO AUTHORITIES**</u>

**I.      PLAINTIFFS LACK ARTICLE III STANDING.**

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *CAMP Legal Def. Fund, Inc. v. City of Atl.*, 451 F.3d 1257, 1269 (11th Cir. 2006). "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. at 499 (internal quotation marks and

citation omitted).  To satisfy Article III, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 423 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Plaintiffs here fall into two categories.  The first group of Plaintiffs (Rumely, Fulks, Bean, and Jay) offer *only* conclusory, unproven, self-incurred, and/or hypothetical "injuries" to support their standing, including: (1) increased risk of future harm; (2) mitigation measures (like costs for credit monitoring and lost time); (3) diminution in value of their PII; (4) loss of privacy; (5) lost benefit of the bargain; and (6) unspecified emotional distress.  *See, e.g.*, Compl. ¶¶ 43, 46-48, 50, 432.  Although these Plaintiffs have cast a wide net, not one of these theories of harm constitutes injury-in-fact for purposes of Article III standing.

The second group of Plaintiffs allege those same injuries, but add on an *ipse dixit* theory of injury, alleging harms purportedly incurred at some unknown time and declaring the legal conclusion that they were "a direct and proximate result" of the Security Incident.  None of those alleged injuries is fairly traceable to the Security Incident.  Article III requires more.

### A.    Many of the Purported Harms Plaintiffs Allege Do Not Constitute an Injury-in-Fact.

Plaintiffs allege that they have each experienced an increased risk of future harm, incurred costs to mitigate against that alleged potential risk, experienced an alleged decrease in the value of their PII, and experienced an alleged loss of privacy and loss of the benefit of the bargain.  Four Plaintiffs—Rumely, Fulks, Bean, and Jay—allege no other categories of alleged harm.  As discussed below, none of these alleged injuries suffices for Article III standing.

#### 1.    Alleged Risk of Future Harm Is Not Injury-In-Fact.

The Eleventh Circuit and the Supreme Court have made clear that risk of increased future

harm cannot confer Article III standing.  In *Tsao v. Captiva MVP Restaurant Partners, LLC*, the Eleventh Circuit held that "conclusory allegations of an elevated risk of identity theft . . . are simply not enough to confer standing."  986 F.3d 1332, 1343 (11th Cir. 2021) (alterations, internal quotation marks, and citation omitted).  Rather, a plaintiff must plead facts that plausibly show "either that the . . . data breach placed him at a 'substantial risk' of future identity theft or that identity theft was 'certainly impending.'"  *Id*. at 1344.  The Supreme Court recently reached the same conclusion in a Fair Credit Reporting Act case, holding that, in a suit for damages, a "mere risk of future harm" cannot support standing when a plaintiff does "not demonstrate that the risk of future harm materialized" and "exposure to the risk itself" did not cause independent concrete harm.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021).

Rather than articulating an independent concrete harm actually suffered by each Plaintiff, the Complaint instead resorts to an academic recitation of various reports on data breaches and the risks that may exist at a macro level.  *E.g.*, Compl. ¶¶ 7, 279-87, 294-303.  But the mere reference to generic reports does "nothing to clarify the risks to [Plaintiffs] *in this case*" and therefore does not rise to the level of an injury-in-fact.  *Tsao*, 986 F.3d at 1343 (emphasis in original).  For instance, Plaintiffs rely heavily on alleged risks associated with the disclosure of Social Security numbers.  Compl. ¶¶ 280-82, 294.  Yet no Plaintiff plausibly alleges that his or her Social Security number was compromised by the Security Incident.[2]  Similarly, Plaintiffs' references to a

---

[2] The Complaint includes a handful of allegations that "Social Security numbers were part of the information that was compromised" for Plaintiffs or the members of the putative class. Compl. ¶ 401; *see id.* ¶¶ 4, 363, 409.  But to survive a motion to dismiss, the **named Plaintiffs** must have standing.  *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").  Each of the named Plaintiffs alleges that he or she received a notice describing the type of personal information that "may have been involved" in the Security Incident.

hodgepodge of reports and websites—some of which Plaintiffs purportedly last visited in 2013 (*see* Compl. ¶¶ 294, 302)—do not show a plausible risk of imminent future harm *for these Plaintiffs from this data theft*. For example, Plaintiffs cite a 2012 Identity Fraud Report by Javelin Strategy & Research, but that report addresses the risks of identity theft for individuals whose credit card information was compromised—information that, again, Plaintiffs do *not* even allege was compromised here. *See* Compl. ¶ 7. In fact, another federal court has explained that a more recent version of that same report *undercuts*, rather than supports, any risk of future harm because the report finds "that the majority of consumers whose payment cards are compromised in a breach will *not* become fraud victims as a result of the breach." *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *8 (D. Minn. Mar. 7, 2018). Plaintiffs also rely on a 2007 Government Accountability Office ("GAO") report to support their theory of an increased risk of future harm. Compl. ¶¶ 287, 293 n.13, 431. But the Eleventh Circuit held in *Tsao* that "the GAO Report actually demonstrates why there is no 'substantial risk' of identity theft." 986 F.3d at 1343; *see also Alleruzzo v. SuperValu, Inc. (In re Supervalu, Inc., Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 771 (8th Cir. 2017) (citing findings from a 2007 GAO report that "most breaches have not resulted in detected incidents of identity theft" and holding that report did not plausibly allege a risk of future harm).

Plaintiffs' theory is also factually flawed. Each Plaintiff includes a statement like this one: "Plaintiff Rumely, on behalf of H.R. and M.R., has suffered present and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from H.R.'s and M.R.'s PHI and PII, especially their Social Security numbers, in combination with their names,

---

Compl. ¶¶ 17, 42, 57, 75, 90, 115, 140, 164, 177, 197, 221, 243. None references his or her Social Security number.

being placed in the hands of unauthorized third parties and possibly criminals." Compl. ¶ 48; *see id.* ¶¶ 23, 63, 81, 96, 121, 146, 170, 183, 203, 227, 249. **But again, not one Plaintiff plausibly alleges that his or her Social Security number was actually involved in the Security Incident.** *See* note 2, *supra*.

Finally, even if Plaintiffs plausibly alleged an imminent risk of future harm (they do not), Plaintiffs would still lack standing to seek damages. In *TransUnion*, the Supreme Court held that a "mere risk of future harm" cannot support Article III standing to seek damages unless "the risk of future harm materialized" or the "exposure to the risk itself" caused independent concrete harm. 141 S. Ct. at 2211. Here, the Complaint provides no support for the idea that Plaintiffs' alleged risk of future harm has materialized or that they have suffered any independent, concrete harm based on the alleged disclosure of the information itself.

### 2. *Mitigation Measures Protecting Against a Speculative Risk of Future Harm Do Not Qualify as an Injury-In-Fact.*

Plaintiffs also seek to rely on a series of costs voluntarily incurred in response to the Security Incident, such as money paid for identity theft protection or time spent monitoring accounts for fraud. *See, e.g.*, Compl. ¶¶ 58, 67. But "[i]t is well established that plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Tsao*, 986 F.3d at 1344 (citation and internal quotation marks omitted). Thus, Plaintiffs' claimed mitigation measures do not confer standing. *See also Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) ("alleged time and money expenditures to monitor . . . financial information do not establish standing" (collecting cases)).

### 3. *An Alleged Diminution in the Value of PII Is Not an Injury-In-Fact.*

Plaintiffs' allegations that their PII has diminished in value also do not constitute an injury-in-fact. Plaintiffs must allege "actual" (not "hypothetical") diminution in value to establish injury-

in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted). Courts—including several in this Circuit—have consistently held this theory of injury does not suffice without specific allegations that the plaintiff's PII somehow lost value because of the breach. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.,* 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("The Court rejects this theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before the Data Breach."); *Torres v. Wendy's Co*., 195 F. Supp. 3d 1278, 1283-85 (M.D. Fla. 2016) (allegations of diminished value of PII following a data breach are insufficient for Article III standing); *Provost v. Aptos, Inc*., 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before the Breach."); *Khan v. Children's Nat'l Health Sys*., 188 F. Supp. 3d 524, 533-34 (D. Md. 2016) (alleged diminished value of PII did not establish standing when the plaintiff failed to "explain how the hackers' possession of that information has diminished its value, . . . [or] assert that she would ever actually sell her own personal information"); *Chambliss v. CareFirst, Inc*., 189 F. Supp. 3d 564, 572 (D. Md. 2016) (similar). This Court should reach the same result because the Complaint includes no allegations supporting an actual, as opposed to hypothetical, diminution in the value of their PII.

### 4.   *Alleged Loss of Privacy Is Not an Injury-In-Fact*.

Plaintiffs' conclusory allegations that they suffered a loss of privacy (*e.g.*, Compl. ¶¶ 6, 25, 432) do not establish injury-in-fact. Courts consistently hold that allegations of loss of privacy from a data incident, without more, are not enough to establish injury-in-fact. *See, e.g.*, *Darnell v. Wyndham Cap. Mortg., Inc.*, 2021 WL 1124792, at *5 (W.D.N.C. Mar. 24, 2021) (alleged loss of

privacy does not qualify as injury in fact and noting that "[t]he Court has been unable to find any law holding otherwise in the data breach context"); *Duqum v. Scottrade, Inc.*, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016) ("[L]oss of privacy and breach of confidentiality are too abstract to establish Article III standing."), *aff'd*, 868 F.3d 711 (8th Cir. 2017); *Khan*, 188 F. Supp. 3d at 533 (no injury-in-fact when plaintiff alleged loss of privacy but failed to identify "any potential damages arising from such a loss"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (same).  The Complaint contains nothing more than conclusory and unsupported allegations of loss of privacy.  That is not enough to establish standing.

### 5. *Lost Benefit of the Bargain Is Not an Injury-In-Fact*.

Plaintiffs claim they suffered a "lost benefit of their bargain with the Defendants" because they "(1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive."  Compl. ¶ 8.  Plaintiffs also assert they would have sought medical treatment elsewhere if they had known of the possibility that their information could be affected by a data breach.  *See, e.g.*, Compl. ¶ 54.  Addressing the same theory, the Eastern District of Missouri held: "A majority of courts have found that similar allegations of loss of bargained-for services in data breach cases are not sufficiently concrete to satisfy the injury in fact requirement of Article III Standing."  *Duqum*, 2016 WL 3683001, at *6 (listing cases).  Courts in this Circuit have reached the same conclusion.  *See Provost*, 2018 WL 1465766, at *4 ("Plaintiff does not allege any facts making it plausible that the price she 'paid for the goods included an amount that both parties understood would be allocated toward protecting customer data.'"); *In re Cmty. Health Sys., Inc.*, 2016 WL 4732630, at *8 (N.D. Ala. Sept. 12, 2016) (listing cases in which courts dismissed an "overpayment" theory of damages as injury-in-fact).  This Court should also reject this theory.

### 6.  *Emotional Distress, Without More, Is Not an Injury-In-Fact*.

Plaintiffs' passing reference to "emotional distress" is also insufficient for an injury-in-fact.  Without alleged actual physical or bodily injury there is no "quantifiable risk of damage in the future," and "[a]ny damages that may occur here are entirely speculative." *Reilly*, 664 F.3d at 45; *see also Preisler v. Eastpoint Recovery Grp., Inc*., 2021 WL 2110794, at *6 (S.D. Fla. May 25, 2021) (Ruiz, J.) (holding a plaintiff "cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury"); *R.W. v. Armor Corr. Health Servs., Inc*., 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) (requiring that emotional distress "flow from physical injuries" in order "to safeguard the court from fictitious and speculative claims arising from purely emotional distress").

### B.    **No Plaintiffs Have Alleged Injuries Fairly Traceable to the Security Incident.**

Eight other Plaintiffs (Larsen, Cohen, A.W.,[3] Baum, Clark, Lee, Soto, and Nielsen) try to allege additional injuries beyond those detailed above, but not one of them is fairly traceable to the Security Incident.  To satisfy the "fairly traceable" element of Article III standing, Plaintiffs must show "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560.  A "speculative chain of possibilities does not establish that injury . . . is fairly traceable." *Clapper*, 568 U.S. at 414.  Rather, Plaintiffs must plead "concrete facts" to establish that *Defendants'* actions, not the alleged conduct of any other "independent actor[] not before the court," caused the alleged harm. *Id.* at 414 n.5 (citations omitted).  "The causation element of Article III standing requires 'a causal connection between the injury and the conduct complained

---

[3] B.W. also describes herself as a "Plaintiff," but her allegations indicate that she is proceeding only as "the Next Friend" of her minor child, A.W.  Compl. ¶ 16.  To the extent that B.W. purports to assert any of her own claims, B.W.'s claims fail for all of the same reasons Plaintiff A.W.'s claims fail.

of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011); *see also Preisler*, 2021 WL 2110794, at *6 ("[T]he injury must result from the conduct of defendant—and not 'some third party.' The main inquiry is whether 'the line of causation between the illegal conduct and injury [is] too attenuated' to establish traceability." (citation omitted)).  In the data-breach context, this means that "Plaintiffs must allege facts for the Court to plausibly infer that the unauthorized access of Plaintiffs' PII by an unspecified bad actor or actors . . . is fairly traceable to [Defendants'] conduct." *Springmeyer v. Marriott Int'l, Inc.*, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021).  Here, Plaintiffs have failed to connect the dots.[4]

### 1.  *Social Security Numbers on the Dark Web Are Not Fairly Traceable to the Security Incident.*

Seven Plaintiffs (Larsen, Cohen, A.W., Baum, Clark, Lee, and Soto) claim their Social Security numbers, and other unidentified PII, are now available on the dark web.  *See* Compl. ¶¶ 26-27, 99, 124, 149-50, 206, 230, 252.  There are significant flaws in that theory, though.

*First*, and most importantly, **no Plaintiff plausibly alleges that his or her Social Security number was affected by the Security Incident.**  Plaintiffs recognize that only a "very limited number of . . . Social Security numbers" were involved in the Security Incident.  Compl. ¶ 395 n.38.  Those patients all received "complimentary identity monitoring services" from

---

[4] Plaintiffs Rumely, Fulks, Bean, and Jay—who allege no legally cognizable injury-in-fact—also have not alleged that their asserted harms are fairly traceable to Defendants.  Each of those Plaintiffs alleges that he or she, or his or her children, face a "substantially increased risk of fraud, identity theft, and misuse" because their Social Security numbers have allegedly been "placed in the hands of unauthorized third parties."  Compl. ¶¶ 48, 63, 81, 170.  But none of these Plaintiffs plausibly alleges that their Social Security numbers were compromised in the Security Incident.

Defendants. *Id.* Plaintiffs A.W., Soto, Baum, Larsen, Cohen, and Clark all expressly allege they did *not* receive the offer for complimentary credit monitoring—meaning they acknowledge their Social Security number was not affected. Compl. ¶¶ 34, 107, 132, 158, 238, 260.[5] It is impossible to tie the presence of Social Security numbers on the dark web to the Security Incident (and from there to any conduct of Defendants) without Social Security numbers being stolen in the Security Incident.[6] *See In re Cmty. Health Sys.,* 2016 WL 4732630, at *12 (finding fair traceability only when an instance of misuse has "a logical connection to the data stolen"); *Welborn v. IRS*, 218 F. Supp. 3d 64, 79 (D.D.C. 2016) ("At a minimum, [Plaintiffs] must allege facts that indicate that the information stolen from the Defendants in the . . . breach is the same type of information used to commit their injuries."); *see also In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 644 n.6 (3d Cir. 2017) (Schwartz, J., concurring) (plaintiffs failed to plead an injury was fairly traceable to an alleged failure to safeguard data when the information needed to conduct the identity theft was not stolen in the breach).

**Second**, even assuming Plaintiffs' Social Security numbers were involved in the Security Incident (or were provided to Defendants at all), the presence of that information on the dark web is still not fairly traceable to Defendants. Plaintiffs argue that "given the temporal relationship, it may be reasonably assumed that the offer of sale of [their] PII is tied to" the Security Incident and that "[c]onsidering the geographic distribution of Plaintiffs and the inclusion of multiple Plaintiffs'

---

[5] Plaintiff Lee alleges that he was offered complimentary credit monitoring, which he declined. *See* Compl. ¶ 217. But he received a notice letter from AA, which offered complimentary credit monitoring to affected individuals even if their Social Security numbers were not compromised, and Plaintiff Lee never alleges that the Security Incident affected his Social Security number.

[6] Plaintiffs claim that their Social Security numbers are now "in the hands of unauthorized third parties and possibly criminals." *E.g.*, Compl. ¶¶ 23, 96, 121, 146, 203, 227, 249. But Plaintiffs allege no facts that plausibly connect this allegation to the Security Incident, nor could they, given their acknowledgment that their Social Security numbers were not compromised.

PII in one sample database, it can be reasonably assumed that the data likely came from the same source data breach." *E.g.*, Compl. ¶¶ 101, 104.  Yet the Complaint itself contradicts both assumptions, and because Plaintiffs are all differently situated, their sweeping assumptions about temporal proximity and geographic dispersion are unsupportable.

Plaintiffs allege no facts to support their "temporal relationship" assumption.  For instance, Plaintiffs do not indicate *when* each of their information first became available on the dark web. Indeed, Plaintiffs implicitly acknowledge the possibility that at least some Plaintiffs' information could well have ended up on the dark web through some prior breach:  While some Plaintiffs claim that they do not *believe* they have ever been part of a data breach before, others make no such claim. *Compare* Compl. ¶ 101 (Plaintiff Soto) *with id.* ¶¶ 26-40 (Plaintiff A.W.).  Plaintiffs' theory that it is reasonable to infer that their data likely came from the same source is also inconsistent with their allegations elsewhere in the Complaint that by the time their information made it to the place on the dark web where they found it, it was likely already used, sold, or broken up into pieces of data from "smaller forums on the dark web first."  Compl. ¶¶ 29-30.

Plaintiffs' "geographic distribution" assumption is just as flimsy.  The crux of this argument is that because these seven different Plaintiffs do not live near each other but found their information on a popular marketplace, the information must have come from the Security Incident. For one, Plaintiffs' theory ignores that many data breaches affect people nationwide (for example, the Equifax breach).[7]  The theory also ignores the fact that five Plaintiffs were ***not*** included on that same marketplace, which cuts against any connection to Defendants.  Without any plausible basis to tie this information to the Security Incident, Plaintiffs fail to satisfy Article III standing.

---

[7] *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) (noting that the Equifax hackers allegedly obtained "at least . . . 145.5 million Social Security numbers").

### 2. *Plaintiff Lee's Spam Telephone Calls Are Not Fairly Traceable to the Security Incident*.

Plaintiff Lee claims that he "has experienced a dramatic increase in spam calls, including individuals purporting to be realtors."  Compl. ¶ 213.  But Plaintiff Lee falls far short of linking these spam calls to the Security Incident.  For instance, he fails to allege "that the callers have personal or private information found [in the Security Incident] or even allege that his phone number was unlisted and hence would have been difficult for marketers to locate absent the assistance of the data thief."  *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 33 (D.D.C. 2014); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (plaintiff did not allege that the medical conditions specifically targeted by increased spam were listed in the medical records compromised in the breach); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) ("As to the third alleged fact, spam e-mails and fake friend requests simply occur to most, if not all, e-mail and social media users. They are too common and therefore cannot on their own establish causation here. To hold otherwise would effectively negate the standing requirement as to data breaches. Accordingly, although these occurrences may be evidence of having been the victim of a data breach, on their own, they cannot serve to connect plaintiff Bass to the data breach.").  Plaintiff Lee does not allege his phone number was implicated at all, does not tie the phone calls to any information affected by the Security Incident, and readily acknowledges he was already getting spam phone calls.  Thus, Plaintiff Lee "seems to simply be one among the many of us who are interrupted in our daily lives by unsolicited calls. His harm, consequently, cannot plausibly be linked to the [Security Incident]." *In re Sci. Applications*, 45 F. Supp. 3d at 33.

### 3. *Plaintiff Nielsen's Alleged Identity Theft Is Not Fairly Traceable to the Security Incident.*

Plaintiff Nielsen claims to have suffered three instances of identity theft or misuse: (1) twelve bank accounts were opened in her name; (2) her credit score decreased; and (3) she paid "American Anesthesiology $81.47 upon discovering the bill was marked as overdue and unpaid and had been sent to collections, although the $81.47 was from a bill her insurance had already paid in 2017." Compl. ¶¶ 186-88. None of these supports Article III standing.

Plaintiff Nielsen makes no factual allegations to establish a plausible basis to blame Defendants for bank accounts being opened in her name or for a reduced credit score. In Plaintiff Nielsen's original complaint filed in the District of South Carolina, she alleged that all twelve bank accounts were opened at Charles Schwab. But opening a bank account with Charles Schwab requires a Social Security number, a fact that Plaintiff Nielsen recognized in her initial Complaint.[8] Class Action Complaint ¶¶ 20-21, *Nielsen v. Mednax, Inc., et al.*, No. 4:21-cv-00500-JD (D.S.C. Feb. 17, 2021), Dkt. No. 1. Plaintiff Nielsen does not plausibly allege that her Social Security number was compromised by the Security Incident. *See* Section I.B.1, *supra*; *see also* Compl. ¶ 177. Instead, she simply lobs an accusation at Defendants without any basis for doing so. She does not identify any of the things that would be required to trace these alleged injuries to Defendants, such as what information was needed to open these accounts, whether that information was included in the Security Incident, what her credit score was before the Security Incident, or how any of her own activities could have contributed to the credit score (including but not limited

---

[8] *See also* https://start.schwab.com/welcome?registrationType=individual (last visited Sept. 16, 2021); FINRA, Rule 6840 ("Each Industry Member shall submit to the Central Repository the Firm Designated ID, the Transformed Value for individual tax payer identification number ('ITIN')/social security number ('SSN') . . ."); 31 C.F.R. § 1020.220(a)(2)(i)(A)(4)(i) (requiring banks to implement a written Customer Identification Program that includes obtaining a taxpayer identification number for a U.S. person opening a bank account).

to ruling out that any purchases or loans she may have taken out since the time of the Security Incident may have reduced her score).  Accordingly, she cannot link this alleged injury (or her reduced credit score) to Defendants.

As for the $81.47 paid to AA, Plaintiff Nielsen states: "As a direct and proximate result of the Data Breach, Plaintiff Nielsen had to pay American Anesthesiology $81.47 upon discovering [a] bill was marked as overdue and unpaid and had been sent to collections, although the $81.47 was from a bill her insurance had already paid in 2017."  Compl. ¶ 188.  Plaintiff Nielsen offers absolutely no basis for concluding that has *anything* to do with the Security Incident.  The much more logical (and indeed, only plausible) explanation is that there is an unrelated billing issue between AA and Plaintiff Nielsen.

*     *     *

In short, no Plaintiff plausibly alleges any basis for connecting any of their asserted harms to Defendants, and they appear to include them simply because they occurred (or were first noticed) after the Security Incident.  Plaintiffs' speculation that these harms resulted from the Security Incident falls far short of the fair traceability requirement and is not enough to confer Article III standing.

## II.     THE COMPLAINT FAILS TO STATE A SINGLE PLAUSIBLE CLAIM FOR RELIEF.[9]

A motion to dismiss for failure to state a claim should be granted where the plaintiff fails "to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Claims have "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; Order Granting Motion to Dismiss with Prejudice at 2, *Goldstein v. Costco Wholesale Corp.*, No. 21-cv-80601-RAR (S.D. Fla. Sept. 9, 2021), Dkt. No. 53 (Ruiz, J.) ("A pleading is facially plausible when the plaintiff states enough facts for the court to draw a 'reasonable inference' that the defendant is liable for the alleged conduct."). Plaintiffs have not satisfied their burden, and their claims should be dismissed with prejudice, as amendment would be futile.

Given the significant number of Plaintiffs and varying state laws at issue, and to assist in the Court's review, Defendants attach as **Exhibit A** a summary of the grounds for dismissing the

---

[9] The choice-of-law rules of the transferor courts apply to each Plaintiff's claims. *See In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003). Thus, five states' choice-of-law rules apply, and the application of those rules means that each Plaintiff's claims are governed by the law of that Plaintiff's home state, which is where each Plaintiff presumably received treatment from physician practices affiliated with Defendants and where any of the alleged injuries were presumably felt. *See, e.g.*, *Howard v. Kerzner Int'l Ltd.*, 2014 WL 714787, at *3 (S.D. Fla. Feb. 24, 2014) (a "survey of the Florida cases applying . . . [its choice-of-law rules] suggest that the law of the state in which the injury occurred will almost always govern the issue in dispute" (internal quotation marks and citations omitted)); *Castro v. Budget Rent-Car Sys., Inc.*, 65 Cal. Rptr.3d 430, 442 (Cal. Ct. App. 2007) (under California's choice-of-law rules, Alabama had "a presumptive interest" in applying its law because plaintiff's "injury occurred within Alabama's borders"); *Winter v. Novartis Pharma. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) (Missouri's choice-of-law rules "essentially establish[] a presumption that the state with the most significant relationship is the state where the injury occurred" (internal quotation marks and citation omitted)).

Complaint.

### A.     This Court Should Dismiss the Complaint Because it Is a Shotgun Pleading.

The Consolidated Complaint takes shotgun pleading to a new level and must be dismissed on that basis alone.  The Eleventh Circuit has acknowledged "a thirty-year salvo of criticism aimed at shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).[10]  The Eleventh Circuit has identified four categories of shotgun pleadings, all of which violate Federal Rule of Civil Procedure 8(a)(2), Rule 10(b), or both:

(1) A complaint that "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint";

(2) A "complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action";

(3) A complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and

(4) A complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Id.* at 1321-23.   As this Court held in dismissing a shotgun pleading, such complaints "'are flatly forbidden by the spirit, if not the letter, of' the Federal Rules of Civil Procedure."  *Hale v. Wells Fargo Bank*, 2021 WL 767664, at *2 (S.D. Fla. Feb. 26, 2021) (Ruiz, J.) (citation omitted). Shotgun complaints also "waste scarce judicial resources, inexorably broaden the scope of

---

[10] *See also Barmapov v. Amual*, 986 F.3d 1321, 1324-25 (11th Cir. 2021); *Weil v. Phillips*, 816 F. App'x 339, 341 (11th Cir. 2020) (per curiam); *Sarhan v. Miami Dade Coll.*, 800 F. App'x 769, 771-72 (11th Cir. 2020) (per curiam).

discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Barmapov,* 986 F.3d at 1324 (citation omitted).[11]  A district court has inherent authority to dismiss shotgun complaints.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Sarhan*, 800 F. App'x at 772.

Plaintiffs' Complaint fits into all four categories of shotgun pleadings.  ***First***, it "adopts the allegations of all preceding counts, causing each successive count to carry all that came before." *Weiland*, 792 F.3d at 1321.  Every Count in the Complaint incorporates by reference "all" preceding allegations.  Compl. ¶¶ 445, 456, 480, 489, 495, 501, 507, 514, 518.  This Court has dismissed this type of shotgun pleading before, and it should do so here.  *See Jones v. Yaffey*, 2021 WL 687727, at *4-5 (S.D. Fla. Feb. 23, 2021) (Ruiz, J.) ("Because Plaintiff reincorporates every prior allegation and contention, it is practically impossible to readily determine the basis for each claim . . . .").

***Second***, Plaintiffs' Complaint is replete with vague, conclusory, or irrelevant allegations.  As detailed above, rather than making any particular allegations showing an injury-in-fact that is fairly traceable to Defendants' conduct, Plaintiffs litter their Complaint with macro-level studies and discussions that are a decade old.  *See* Section I.A.1, *supra*.

***Third***, Plaintiffs lump together *fourteen* statutes under one single cause of action.  *See* Compl. ¶ 472.  Those statutes have different elements and pleading requirements, yet Plaintiffs suggest they can simply bullet out a list of statutes and declare Defendants have violated them.

***Fourth***, the Complaint asserts multiple claims against Mednax, Pediatrix, and AA "without

---

[11] *See also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.  Plaintiffs allege that each named Plaintiff "was a patient of, and received medical services from, Defendants"—without specifying which Defendant provided the medical services.[12]  Compl. ¶¶ 15, 41, 56, 74, 89, 114, 139, 163, 176, 196, 242.[13]  Plaintiffs expressly recognize that AA and Mednax are distinct legal entities (*id.* ¶ 265), yet Plaintiffs lump them together throughout the Complaint.

This Court has dismissed shotgun complaints when the complaint "boils down to 'an across-the-board allegation that every [d]efendant' engaged in wrongdoing" and thus "'fails to notify each defendant of the specific claims against it and the grounds on which each claim rests.'" *Hale*, 2021 WL 767664, at *2 (citation omitted); *see also Griffin v. Florida*, 2020 BL 430625, at *4 (S.D. Fla. Nov. 4, 2020) (Ruiz, J.) (complaint "vaguely asserts 'the Defendants' are liable—thereby failing to link the specific actions of any particular Defendant giving rise to their liability"). The Eleventh Circuit has also repeatedly affirmed the dismissal of pleadings that lump together defendants,[14] and other courts in this District often dismiss that type of shotgun pleading.[15]

---

[12] The Complaint also fails to specify the Mednax entities against which it purports to assert claims.

[13] Plaintiff Cohen fails to allege she was a patient of or received any medical services from any Defendant.

[14] *See, e.g.*, *Weil*, 816 F. App'x at 341 (per curiam) (holding a complaint that was "an across-the-board allegation that every defendant conspired against" the plaintiff "failed to notify each defendant of the specific claims against him or her and the grounds upon which each claim rests"); *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 664 (11th Cir. 2019) (per curiam) (affirming the dismissal of a complaint when the counts "failed to specify the exact conduct each defendant engaged in as to each count"); *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (per curiam) ("If the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8."); *see also, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997).

[15] *See, e.g.*, *Gazzola v. NCL (Bahamas) Ltd.*, 2019 WL 3067506, at *1 (S.D. Fla. July 12, 2019) (Moreno, J.) ("Plaintiff's complaint appears to be an impermissible shotgun pleading because she states a claim against multiple defendants without specifying which of the defendants

Since the Complaint is a shotgun pleading, this Court should dismiss the entire Complaint.

**B.  Plaintiffs Fail to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count I)**

Count I of the Complaint fails to state a claim for breach of implied covenant of good faith and fair dealing for five reasons.

***First***, "[a] claim for breach of the covenant of good faith and fair dealing necessitates the existence of a contract." *E.g.*, *Doe v. St. Louis Univ. Sch. of Med.*, 2013 WL 1305825, at *15 (E.D. Mo. Mar. 28, 2013).[16] Plaintiffs do not allege the existence of an actual contract written contract with any Defendant. Moreover, as explained below, Plaintiffs fail to allege the existence of an implied contract with any Defendant. *See* Section II.E, *infra*. Because Plaintiffs cannot establish a valid contract, Count I fails. *See Rosendahl v. Bridgepoint Educ., Inc.*, 2011 WL 4914948, at *8

---

are responsible for which acts or omissions."); *Magnum Constr. Mgmt. LLC v. WSP USA Sols., Inc.*, 2021 WL 799448, *3-4 (S.D. Fla. Mar. 2, 2021) (holding a complaint was a shotgun pleading when it "lump[ed]" together distinct legal entities and did not specify which defendant was responsible for which specific act); *Prolow v. Aetna Life Ins. Co.*, 510 F. Supp. 3d 1303, 1310 (S.D. Fla. 2021) ("Defendants are correct that the Complaint impermissibly lumps the two Defendants together. Each Defendant is alleged to be distinct legal entities, but the Complaint does not adequately differentiate between Defendants nor inform each Defendant separately of the allegations that apply to it."); *Cellco P'ship v. Plaza Resorts Inc.*, 2013 WL 5436553, at *7 (S.D. Fla. Sept. 27, 2013) (finding the complaint impermissibly lumped together defendants who were alleged to be distinct legal entities); *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp.*, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011) ("This lumping technique 'creates confusion and make the analysis [of the complaint] unnecessarily burdensome,' and results in . . . making accusations that are 'just not accurate.'"(citation omitted)); *see also Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1355-56 (S.D. Fla. 2010).

[16] *See also Republic Servs., Inc. v. Am. Int'l Grp. Inc.*, 2011 WL 2313606, at *3 (D. Ariz. June 10, 2011); *Jurin v. Google Inc.*, 768 F. Supp. 2d 1064, 1073 (E.D. Cal. 2011) (dismissing claims for breach of contract and breach of the duty of good faith and fair dealing because a "broadly stated promise to abide by its own policy does not hold Defendant to a contract"); *Sloan v. Inolife Techs., Inc.*, 2017 WL 2268401, at *6 (N.C. Super. May 22, 2017) (applying New York law); *Levy v. Infilaw Corp.*, 2017 WL 3573825, at *4 (W.D.N.C. Aug. 17, 2017); *Benson v. Savannah River Nuclear Sols. LLC*, 2013 WL 5350805, at *15 (D.S.C. Sept. 20, 2013); *Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369-70 (W.D. Va. 2018); *Covarrubias v. Am. Airlines, Inc.*, 2011 WL 13100749, at *2 (W.D. Wash. Apr. 21, 2011).

(S.D. Cal. Oct. 17, 2011) (dismissing implied-covenant claim when plaintiffs "failed to allege sufficient facts to show the existence of an implied contract").

*Second*, even if Plaintiffs could establish valid contract claims, Count I would still fail because "a breach of the implied covenant of good faith claim can survive a motion to dismiss 'only if it is based on allegations different from those underlying the accompanying breach of contract claim.'" *Carolina Rest. Grp. v. Pepsico Sales, Inc.*, 2015 WL 4250395, at *4 (W.D.N.C. July 13, 2015) (citation omitted). Plaintiffs base their implied-covenant and contract claims on the same alleged promise to "safeguard" PHI and PII. Compl. ¶¶ 449, 491. Plaintiffs cannot disguise the duplicate allegations by incorrectly asserting that Defendants breached the implied covenant by violating statutes. *See Bishop & Assocs. LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 n.3 (Mo. 2017) (rejecting assertion that a "plaintiff properly pleads a breach of the implied covenant of good faith and fair dealing when he alleges the defendant's action violated public policy or a statute"). Thus, because Plaintiffs' implied-covenant claims and contract claims "cite the same underlying breach," the implied-covenant claims are "superfluous" and should be dismissed. *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014).

*Third*, California (Rumely), Missouri (A.W.), and Oklahoma (Baum and Bean) require proof of either a conscious, deliberate act or bad faith in order to establish implied-covenant claims. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011); *32nd St. Surgery Ctr. LLC v. Right Choice Managed Care*, 2013 WL 12202938, at *8 (W.D. Mo. July 24, 2013); *Pub. Serv. Co. of Okla. v. Burlington N. R. Co.*, 53 F.3d 1090 (10th Cir. 1995). Plaintiffs do not plausibly allege that Defendants acted in bad faith or deliberately failed to safeguard Plaintiffs' PHI.

*Fourth*, where no contractual relationship exists, Arizona (Larsen), California (Rumely), Oklahoma (Baum and Bean), and Texas (Soto) require a "special relationship" to establish tort

liability for a breach of the implied covenant.[17]  *See Sport Collectors Guild Inc. v. Bank of Am. NA*, 2018 WL 8248944, at *3 (D. Ariz. Jan. 5, 2018) (claim requires fiduciary relationship, unequal bargaining power, or contract of adhesion); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1165 (E.D. Cal. 2009) (claim does not apply to "parties of an ordinary commercial transaction" who "deal at arms' length" with one another); *Terry v. Ely*, 2020 WL 9074888, at *8-9 (W.D. Okla. Sept. 8, 2020) (claim requires showing of "unequal bargaining power"); *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex. App. 1989) (similar).  Plaintiffs do not allege that any such relationship exists here.

*Fifth*, Maryland (Cohen) does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing in any context.  *Daniyan v. Viridian Energy LLC*, 2015 WL 4031752, at *4 (D. Md. June 30, 2015).  As a result, Count I should be dismissed.

## C.   Plaintiffs Fail to State a Claim Under Any Consumer Protection Statute (Count II)

Count II of the Complaint asserts that Defendants violated fourteen statutes in twelve states.  Compl. ¶ 472 (listing statutes).  Count II fails for both global and state-specific reasons.

### 1.   *Plaintiffs' Consumer Statute Claims Fail for Two Global Reasons.*

*First*, Count II should be dismissed because it violates the basic rule of pleading that "separate, discrete causes of action should be plead in separate counts."  *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996); *see also Patsalides v. City of Fort Pierce*, 2016 WL 11503007, at *2 (S.D. Fla. Aug. 12, 2016) ("[A]llegations arising from separate statutory authority should be contained in separate counts.").  Plaintiffs purport to quote from unidentified "consumer protection statutes" and allege that Defendants' conduct violates a laundry list of state

---

[17] Plaintiffs do not specify whether their breach-of-implied-covenant claim sounds in tort or contract.

statutes, but Plaintiffs fail to cite to a single specific statutory provision that Defendants allegedly

violated, let alone plead facts that plausibly suggest that a violation of any particular statute has

occurred.  *See* Compl. ¶¶ 458-63, 472.  Plaintiffs' shotgun pleading falls far short of the fair notice

that Rule 8 requires and Count II should be dismissed in its entirety for that reason alone.[18]

     *Second*, the consumer-fraud statutes of each state require that Plaintiffs suffer damage

caused by the allegedly unfair practices.[19]  But Plaintiffs do not plausibly allege that they suffered

---

[18] Relatedly, ***all*** Plaintiffs improperly seek to assert claims under each of the fourteen statutes, without regard to whether they have any connection to the states whose laws they allege apply.  Because none of the statutes applies extraterritorially, and because no Plaintiff is from New York or Florida, the New York Consumer Protection Act and Florida Deceptive and Unfair Trade Practices Act claims fail.  *See Egan v. Telomerase Activation Scis., Inc.*, 8 N.Y.S.3d 175, 176 (N.Y. App. Div. 2015) (transactions that form the basis of New York Consumer Protection Act claim "must have occurred in New York"); *Océ Printing Sys. USA, Inc. v. Mailers Data Servs.*, 760 So. 2d 1037, 1042 (Fla. Dist. Ct. App. 2000) ("[O]nly in-state consumers can pursue a valid claim under the [Florida Deceptive and Unfair Trade Practices Act].").  The claims based on each of the other statutes at issue can be asserted, if at all, only by Plaintiffs who received medical care in that state from a Defendant.  *See State v. Willoughby*, 892 P.2d 1319, 1331 (Ariz. 1995); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019); Md. Code Com. Law § 13-103(a); *Att'y Gen. of Md. v. Dickson*, 717 F. Supp. 1090, 1101 (D. Md. 1989); Mo. Rev. Stat. § 407.020.1; *Planned Parenthood of Kan. v. Nixon*, 220 S.W.3d 732, 742 (Mo. 2007) (en banc); *Viper Publ'g, LLC v. Bailey*, 2018 WL 3114536, at *4 (W.D.N.C. June 25, 2018); *Steinbeck v. Dollar Thrifty Auto. Grp.*, 2008 WL 4279798, at *3 (N.D. Okla. Sept. 15, 2008); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007) (South Carolina law); *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *5 (W.D. Tex. Oct. 31, 2013); *Lohabare v. Home Recovery of Va., Inc.*, 2017 WL 11576843, at *2 (E.D. Va. Nov. 2, 2017); *vPersonalize Inc. v. Magnetize Consultants Ltd.*, 437 F. Supp. 3d 860, 879 (W.D. Wash. 2020).

[19] *See Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) (Arizona Consumer Fraud Act); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (California UCL); *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016) (California CLRA); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")); Order Granting in Part and Denying in Part Motion to Dismiss at 10, *Fischer v. CentralSquare Techs., LLC*, No. 21-cv-60856, slip op. at 10 (S.D. Fla. Sept. 16, 2021), Dkt. No. 28 (Ruiz, J.) (alleged damages from fraudulent charges, lost use of debit card, and lost time responding to data breach "are not recognized under FDUTPA"); *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018); *Browning v. Apex Physical Therapy, LLC*, 2020 WL 1455738, at *2 (E.D. Mo. Mar. 25, 2020) (Missouri Merchandising Practices Act); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995) (New York Consumer Protection Act); *Pearce v. Am. Def. Life Ins. Co.*, 343 S.E.2d 174, 180 (N.C. 1986) (North Carolina Unfair and

actual damage caused by any allegedly unfair practice of Defendants. *See* Sections I.A-II.B, *supra*; Sections II.F.2-II.F.3, *infra*. And many Plaintiffs allege no legally cognizable damages at all. *See* Section I.A, *supra*; Section II.F.3, *infra*.

### 2. Plaintiffs' Consumer Statute Claims Fail for Nine State-Specific Reasons.

**First**, to state a claim under the Arizona Consumer Fraud Act, California Unfair Competition Law, California Consumers Legal Remedies Act, Maryland Consumer Protection Act, Missouri Merchandising Practices Act, North Carolina Deceptive Trade Practices Act, Oklahoma Consumer Protection Act, Texas Deceptive Trade Practices Act, Virginia Consumer Protection Act, or Washington Consumer Protection Act, Plaintiffs (Larsen, Rumely, Cohen, A.W., Fulks, Baum, Bean, Soto, Nielsen, and Jay) must meet Rule 9(b)'s heightened pleading requirements, at least to the extent their claims are based on alleged misrepresentations or omissions.[20] Plaintiffs generally assert that Defendants deceived them. But Rule 9(b) requires alleging "precisely what statements or omissions were made in which documents or oral representations," "the time and place of each such statement," "the person responsible for making

---

Deceptive Trade Practices Act); *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000) (Oklahoma Consumer Protection Act); *Bob Mills Furniture Co., L.L.C. v. Ashley HomeStores, Ltd.*, 2017 WL 11144629, at *1-2 (W.D. Okla. July 25, 2017) (Oklahoma Deceptive Trade Practices Act); *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (South Carolina Unfair Trade Practices Act); *Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 202 (5th Cir. 1983) (Texas Deceptive Trade Practices Act); *Chisholm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 549 (E.D. Va. 2000) (Virginia Consumer Protection Act); *Panang v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009) (Washington Consumer Protection Act).

[20] *See In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *6 (D. Ariz. Dec. 20, 2017); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018); *Budach v. NIBCO, Inc.*, 2015 WL 3853298, at *6 (W.D. Mo. June 22, 2015); *Packrite, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 4112827, at *7 (M.D.N.C. Aug. 29, 2018); *Parrish v. Bank*, 2016 WL 3906814, at *2 (W.D. Okla. July 14, 2016); *Ramirez v. GEICO*, 548 S.W.3d 761, 770 (Tex. App. 2018); *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018); *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *16 (W.D. Wash. June 26, 2012).

(or, in the case of omissions, not making) them," and more.  *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016).  Plaintiffs make no effort to plead the "who, what, when, where, and how" required by Rule 9(b); they instead try to proceed based on vague statements and omissions allegedly made at unspecified times by unidentified people.  That is not enough.

*Second*, for Defendants' alleged misrepresentations and omissions to be actionable under the Arizona Consumer Fraud Act, California Unfair Competition Law, California Consumers Legal Remedies Act, Maryland Consumer Protection Act, North Carolina Unfair and Deceptive Trade Practices Act, Texas Deceptive Trade Practices Act, or Virginia Consumer Protection Act, Plaintiffs (Larsen, Rumely, Cohen, Fulks, Soto, Jay, and Nielsen) must allege that they relied on the alleged misrepresentations or omissions.[21]  Plaintiffs, however, make no effort to allege facts that would show actual reliance.  Their lone, conclusory assertion that Defendants "intended" to "induce" reliance (Compl. ¶ 469) does not suffice.

*Third*, for claims based on alleged omissions, California, Missouri, Texas, and Virginia law require Plaintiffs (Rumely, A.W., Soto, and Nielsen) to allege that Defendants failed to disclose information that Defendants knew (or, under Missouri law, should have known) *at the time* of the relevant transactions.  *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 927 (N.D. Cal. 2018); *Wright v. Bath & Body Works Direct, Inc.*, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506-07 (Tex.

---

[21] *See Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017); *Dimas v. JPMorgan Chase Bank, N.A.*, 2018 WL 809508, at *9 (N.D. Cal. Feb. 9, 2018); *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *10 (N.D. Cal. Sept. 12, 2016); *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018); *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013); *Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 840 (W.D. Tex. 2011); *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018).

App. 2004); *Allen v. FCA US LLC*, 2017 WL 1957068, at *3 (W.D. Va. May 10, 2017).  Yet Plaintiffs do not allege when they received healthcare services from physicians affiliated with Defendants, let alone that Defendants knew or should have known about any alleged data-security flaws when Plaintiffs received healthcare services.

*Fourth*, the Missouri Merchandising Practices Act (A.W.) requires that "the alleged unlawful act must occur in relation to a sale of merchandise" and that "an ascertainable pecuniary loss must occur in relation to . . . that merchandise."  *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017).  Defendants did not sell data-security services; they provided healthcare services. *See id.*  Thus, Plaintiff A.W. does not plausibly allege how any acts regarding the security of her information occurred in relation to the sale of merchandise.  *See id.*

*Fifth*, under the Maryland Consumer Protection Act and the North Carolina Unfair and Deceptive Trade Practices Act, Plaintiffs Cohen and Fulks would have to show that Defendants owed a duty to disclose before Defendants could be liable for alleged omissions.  *Kaswell v. Wells Fargo Bank, N.A.*, 2014 WL 3889183, at *5 (D. Md. Aug. 6, 2014); *City of High Point v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 635-36 (M.D.N.C. 2020).  Cohen and Fulks do not plausibly allege any duty to disclose.  Defendants do not owe a fiduciary duty to Plaintiffs, *see* Section II.H, *infra*, and Plaintiffs do not plausibly allege that Defendants actively concealed facts or had exclusive knowledge of facts that Plaintiffs could not reasonably discover.

*Sixth*, Plaintiff Rumely otherwise fails to state a valid claim under California law.  His Unfair Competition Law ("UCL") claim is equitable in nature, so for that claim to survive, Rumely would have had to allege that he lacks an adequate legal remedy.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021).  Rumely alleges no such thing.  To the

contrary, he asserts legal claims and seeks money damages.  That dooms his UCL claim, as well as his Consumer Legal Remedies Act ("CLRA") claim to the extent he seeks injunctive relief.  *See Sonner*, 871 F.3d at 839 n.2, 844.  Rumely's damages claim under the CLRA also fails because he does not allege that he provided the statutorily required pre-suit notice.  Cal. Civ. Code § 1782(a); *Allen v. Similasan Corp.*, 2013 WL 5436648, at *3 (S.D. Cal. Sept. 27, 2013).

*Seventh*, Plaintiffs Bean and Baum cannot state valid claims under Oklahoma law.  The Oklahoma Consumer Protection Act ("OCPA") does not apply to "[a]ctions or transactions regulated under laws administered by" a federal agency.  Okla. Stat. tit. 15, § 754(2).  Because Plaintiffs themselves allege that Defendants failed to comply with "duties imposed by" the FTC Act, HIPAA, and HITECH, the OCPA claims fail.  Compl. ¶ 467(c), (e), (g); *cf. id.* ¶¶ 308-27. And since the Oklahoma Deceptive Trade Practices Act "does not present a basis for suit by consumers," the claims under that statute also fail.  *Gray v. Acadia Healthcare Co.*, 2020 WL 5996418, at *10 (E.D. Okla. Oct. 9, 2020) (internal brackets and citation omitted).

*Eighth*, the South Carolina Unfair Trade Practices Act does not authorize class actions. *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 725 (D.S.C. 2016).  Thus, the class claims by Plaintiffs Lee and Clark should be dismissed.  *See id.*

*Ninth*, the Washington Consumer Protection Act provides for recovery for injury to "business or property" only.  Wash. Rev. Code § 19.86.090.  "[A]ctions for personal injury do not fall within the coverage of the [statute]."  *Stevens v. Hyde Ath. Indus., Inc.*, 773 P.2d 871, 873 (Wash. Ct. App. 1989).  Plaintiff Jay alleges no legally cognizable injury at all and does not even attempt to allege an injury to business or property under the statute.  This claim should be dismissed.

### D. Plaintiffs Fail to State a Claim Under the California Confidentiality of Medical Information Act (Count III)

Plaintiffs' claims for violation of the California Confidentiality of Medical Information Act ("CMIA") fail for at least three reasons.

***First***, Plaintiff Rumely, the only California resident, is the only Plaintiff who could even conceivably assert a CMIA claim. "[T]here is a presumption against the extraterritorial application of California law, under which a court should presume the California legislature 'did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter, or history.'" *Shook v. Indian River Transp. Co.*, 236 F. Supp. 3d 1165, 1169 (E.D. Cal. 2017) (quoting *Sullivan v. Oracle*, 254 P.3d 237, 248 (Cal. 2011)). The CMIA contains no such intention in either its text or its legislative history. To the contrary, the CMIA was passed, in part, to close what were viewed as "loopholes . . . in California privacy laws." California Bill Analysis, S.B. 19 Assem., 8/16/1999. No Plaintiff alleges that he or she received treatment from Defendants in California, and it is not plausible to infer that any Plaintiff other than Rumely had any interaction with Defendants in California. As a result, the CMIA claims of all Plaintiffs other than Rumely must be dismissed on this basis alone.

***Second***, Plaintiff Rumely's claim that Defendants violated California Civil Code § 56.10(a) by purportedly "disclos[ing] 'medical information' . . . to unauthorized persons without first obtaining consent" fails. Compl. ¶ 485. To plead a violation of that provision, a "plaintiff must plead an 'affirmative communicative act' by the defendant, which does not occur if the information is stolen." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 922 (S.D. Cal. 2020). Plaintiff Rumely would thus have to allege that Defendants "intentionally posted [his] information, or that whatever affirmative act might have caused [his] information to become accessible via the

30

internet was done with the intent to communicate that information." *Id.* But the Complaint does not—and cannot—make these allegations.

**Third**, Plaintiff Rumely has not stated a claim for a violation of California Civil Code § 56.101(a) because he has not plausibly alleged that his "medical records were, in fact, viewed by an unauthorized individual." *Regents of the Univ. of Cal. v. Super. Ct. of L.A. Cnty*, 163 Cal. Rptr. 3d 205, 221 (Cal. Ct. App. 2013). As the California Court of Appeal has recognized, "[t]he mere possession of the medical information or records by an unauthorized person [is] insufficient to establish breach of confidentiality if the unauthorized person has not viewed the information or records." *Sutter Health v. Super. Ct.*, 174 Cal. Rptr. 3d 653, 657 (Cal. Ct. App. 2014). Plaintiff Rumely alleges no facts to support the Complaint's bare assertion that "Plaintiffs' and Class Members' unencrypted personal information" collectively "was viewed by unauthorized persons." Compl. ¶ 366. Nor does Plaintiff Rumely allege that the unidentified personal information that was allegedly viewed constitutes "medical information" as defined in the CMIA. *See* Cal. Civ. Code § 56.101(a) (statute applies to "medical information," not to personal information more broadly). Thus, Count III fails.

### E.     Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count IV).

Plaintiffs' claims for breach of implied contract fail for three reasons.

**First**, under each of the potentially applicable states' laws, an implied contract requires proof of the same elements as an express contract, including mutual assent and a meeting of the minds.[22]

---

[22] *See E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App. 2017); *Dixon v. Bhuiyan*, 10 P.3d 888, 891 (Okla. 2000); *Saluteen-Maschersky v. Countrywide Funding Corp.*, 22 P.3d 804, 807 (Wash. Ct. App. 2001); *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 218 Cal. Rptr. 3d 562, 574 (Cal. Ct. App. 2017); *McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610, 618-19 (W.D. Va. 2014); *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 397 n.6 (Mo. Ct. App.

Plaintiffs, however, allege no facts to support an assertion that Defendants contractually agreed to "reasonably safeguard" their PHI and PII or to "provide Plaintiffs . . . with prompt, adequate notice of the Security Incident," let alone allege any specific data security or notice obligations to which Defendants allegedly agreed.  Compl. ¶¶ 491-92.  Plaintiffs try to infer Defendants' acceptance of vague and unspecified contractual obligations about data security from the mere allegation that Plaintiffs "provided Defendants their PHI and PII."  Compl. ¶ 490.  But courts have consistently rejected this argument.  *See, e.g.*, *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (dismissing implied-contract claim in a data-breach case under Washington law because plaintiffs failed to plausibly allege elements of a contract);  *Brush v. Miami Beach Healthcare Grp.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing implied-contract claim because "[n]othing in the . . . Complaint gives rise to a factual inference that the Defendants tacitly agreed to secure her personal data in exchange for remuneration");  *Frezza v. Google Inc.*, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing implied-contract claim because plaintiffs did not "sufficiently plead that Google agreed to and then breached a specific obligation");  *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 2017 WL 1551330, at *5 (S.D. Ill. May 1, 2017) (dismissing Missouri implied-contract claim when plaintiffs failed to allege essential elements of contract, including acceptance), *aff'd*, 887 F.3d 803 (7th Cir. 2018); *see also Longenecker-Wells v. Benecard Servs.*, 658 F. App'x 659, 662-63 (3d Cir. 2016) (dismissing implied-contract claim in data-breach case when plaintiffs "failed to plead any facts supporting

---

2015); *Snyder v. Freeman*, 266 S.E.2d 593, 602 (N.C. 1980); *Slick v. Reinecker*, 839 A.2d 784, 787 (Md. Ct. Spec. App. 2003); *Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982); *see also Hercules Inc. v. U.S.*, 516 U.S. 417, 423-24 (1996) ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'") (citation omitted).

their contention that an implied contract arose between the parties"); *Stephens v. Availity, LLC*, 2019 WL 13041330, at *6 (M.D. Fla. Oct. 1, 2019) (dismissing implied-contract claim when plaintiff failed to allege any direct relationship with the defendant (a healthcare services provider), much less a meeting of the minds as to information-security standards).

*Second*, Plaintiffs' claims for breach of implied contract also fail because they are "not directed at any one specific party" and thus do not "allow each defendant to understand what claims are being made and what are the appropriate defenses to raise." *See Transcon. Ins. Co. v. L.F. Staffing Servs., Inc.*, 2008 WL 11333473, at *4 (S.D. Fla. Aug. 13, 2008). Plaintiffs allege only that they "provided *Defendants*" collectively with "their PHI and PII." Compl. ¶ 490 (emphasis added). It is implausible that Plaintiffs provided their PHI and PII to all Defendants collectively, or that they "entered into an implied contract with Defendants" collectively. *See* Compl. ¶ 491. These group allegations require dismissal of their implied-contract claims.

*Third*, even if Plaintiffs could establish the existence of an implied contract (which they cannot), their implied-contract claims would still fail because they have not plausibly alleged proximate causation—a required element of their claims under any potentially applicable state law.[23] *See* Section II.F.2, *infra*. Similarly, Plaintiffs Rumely, Fulks, Bean, and Jay fail to state valid implied-contract claims for the additional reason that they do not plausibly allege cognizable

---

[23] *See, e.g., Global Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 853 (C.D. Cal. 2019); *Woodrum v. Integris Health, Inc.*, 2007 WL 201045, at *2 (W.D. Okla. Jan. 24, 2007); *Grich v. Mantelco, LLC*, 746 S.E.2d 316, 319 (N.C. Ct. App. 2013); *Cook v. SCI Md. Funeral Servs. Inc.*, 2016 WL 890298, at *6 (D. Md. Mar. 9, 2016); *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 693 (Tex. App. 2009); *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1184 (Ariz. Ct. App. 2016); *Rd., LLC v. Beaufort Cnty*, 857 S.E.2d 371, 376 (S.C. Ct. App. 2021); *Green Tree Servicing, LLC v. Chi. Title Ins. Co.*, 499 S.W.3d 771, 775 (Mo. Ct. App. 2016); *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004*); Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000)

damages.[24]  *See* Section II.F.3, *infra*.

### F. Plaintiffs Fail to State a Claim for Negligence (Count V).

To state a viable claim for negligence, Plaintiffs must allege a legally recognized duty, breach of that duty, and damages proximately caused by the alleged breach.[25]  Plaintiffs do not come close to meeting this burden, and their negligence claims should be dismissed for multiple reasons.

#### 1. With One Exception, Defendants Do Not Owe Plaintiffs a Common-Law Duty to Safeguard Their Information from Criminal Theft.

Plaintiffs assert that Defendants purportedly breached a duty "to exercise reasonable care and fail[ed] to safeguard and protect Plaintiffs' and the other Class Members' PHI and PII." Compl. ¶ 497.  But except for Plaintiff Rumely, no Plaintiff can show that Defendants owed them a common-law duty to safeguard Plaintiffs' information from criminal theft.[26]

---

[24] *See Global Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019); *Woodrum v. Integris Health, Inc.*, 2007 WL 201045, at *2 (W.D. Okla. Jan. 24, 2007); *Grich v. Mantelco, LLC*, 746 S.E.2d 316, 319 (N.C. Ct. App. 2013); *Trinidad v. Metro. Prop. & Cas. Ins. Co.*, 2013 WL 6729639, at *4 (W.D. Wash. 2013); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (loss of PII without direct harm is not a compensable harm); *Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (dismissing implied-contract claim for lack of direct harm); *Holmes v. Countrywide Fin. Corp.*, 2012 WL 2873892, at *13 (W.D. Ky. July 12, 2012) (dismissing contract claims in data security case because "[defendant's] actions did not cause any direct financial harm to [plaintiffs]").

[25] *Jordan v. Jordan*, 257 S.E.2d 761, 762 (Va. 1979); *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 758 (Md. 1986); *Martishius v. Carolco Studios, Inc.*, 562 S.E.2d 887, 892 (N.C. 2002); *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (en banc); *BancFirst v. Dixie Rests., Inc.*, 2012 WL 12879, at *3 (W.D. Okla. Jan. 4, 2012); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 192 Cal. Rptr. 3d 354, 375 (Cal. Ct. App. 2015); *Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, at *5 (W.D. Wash. Mar. 29, 2018); *Jenkins v. CEC Ent. Inc.*, 421 F. Supp. 3d 257, 262 (D.S.C. 2019).

[26] Plaintiff Rumely's claims are governed by California law, which recognizes a duty to safeguard personal information from third-party criminal access.  However, Rumely's negligence claim is barred by California's ELR and because he does not allege any legally cognizable damages.  *See* Sections II.F.2-II.F.3, *infra*.

Six Plaintiffs (Larsen, A.W., Bean, Baum, Nielsen, and Jay) have claims governed by the laws of states (Arizona, Missouri, Oklahoma, Virginia, and Washington) that have expressly rejected negligence claims based on an alleged duty to safeguard personal information, holding no such duty exists.  *See Parker v. Carilion Clinic*, 819 S.E.2d 809, 825 (Va. 2018) ("None of our precedents has ever imposed a tort duty on a healthcare provider" to safeguard PHI from unauthorized access); *Deutsche Bank Nat'l Tr. Co. v. Buck*, 2019 WL 1440280, at *6 (E.D. Va. Mar. 29, 2019) (Virginia law does not "recognize[] a common law duty to protect an individual's private information from an electronic data breach"); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071 (C.D. Ill. 2016) (under Arizona law, no common-law duty to safeguard personal information from a data breach); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 818 (7th Cir. 2018) (upholding dismissal of negligence claims and concluding that Missouri would not recognize a common-law duty to safeguard data); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (declining to "create a claim" for negligence based on the adequacy and timeliness of notice following theft of personal information under Missouri law); *BancFirst v. Dixie Rests., Inc.*, 2012 WL 12879, at *4 (W.D. Okla. Jan. 4, 2012) (dismissing negligence claim predicated on alleged theft of sensitive information under Oklahoma law and finding that the defendant owed no duty of care to the plaintiff); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 401 (E.D. Va. 2020) (under Washington law, "the failure to implement adequate data security measures does not implicate a legal duty on its own.") (quoting *Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, at *5 (W.D. Wash. Mar. 29, 2018)); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1150 (W.D. Wash. 2017) (no duty to safeguard sensitive information "based on common law principles of negligence in Washington").

The negligence claims of four other Plaintiffs (Fulks, Clark, Lee, and Soto) similarly fail because their states (North Carolina, South Carolina, and Texas) have never recognized a common-law duty to safeguard information.  This Court should not stretch to create state law that does not exist.  Rather, the appropriate outcome is to "choose the narrower and more reasonable path" of holding that no such general, common-law duty exists—"at least until the [state courts] tell[] us differently."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) (citation omitted); *see Gen. Fid. Ins. Co. v. Foster*, 808 F. Supp. 2d 1315, 1321 (S.D. Fla. 2011) ("[A] Federal Court sitting in diversity should not act to create or expand states['] public policy . . . .").

Plaintiff Cohen's negligence claim fails for yet another reason: Under the governing Maryland law, there is no duty to protect against the acts of a third party absent a special relationship.  *See Warr v. JMGM Grp., LLC*, 70 A.3d 347, 358 (Md. 2013) ("We have consistently recognized that, in the absence of control or a special relationship, there can be no duty to an injured person for harm caused by a third party.").  No recognized special relationship exists here. *See* Restatement (Second) of Torts § 314 (1965) (listing the special relationships that give rise to a duty to protect to include common carriers, innkeepers, and a possessor of land who holds it open to the public); *In re Marriott, Int'l, Inc., Customer Data Sec. Breach Litig.*, 2020 WL 6290670, at *8 (D. Md. Oct. 27, 2020) (finding no special relationship between the IT service provider and its hotel client's guests); *see also* Section II.H, *infra* (explaining there is no fiduciary duty between patients and healthcare facilities or the entities that support them).[27]

---

[27] While *Marriott* found a duty based on Section 5 of the FTC Act, it did so because the IT service provider "contractually agreed to accept" the responsibility to protect the plaintiffs' data. 2020 WL 6290670, at *10.  Plaintiff Cohen does not assert a claim under Section 5 of the FTC Act and does not identify any contract under which Defendants agreed to take on a duty to safeguard information.  Thus, the *Marriott* court's conclusion on this point is inapplicable.  *See* Section II.E, *supra*.

Because no Plaintiff other than Plaintiff Rumely can allege that Defendants owed them a duty to safeguard personal information, they cannot assert negligence claims.

### 2. *Plaintiffs Cannot Establish that Defendants' Conduct Proximately Caused Any Loss.*

To state negligence claims under their respective states' laws, Plaintiffs must plead facts showing that Defendants proximately caused their alleged harm. *See* note 25, *supra*. Plaintiffs fail to do so. Proximate causation is an even higher standard than Article III's "fair traceability" standard. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56, 59 (2d Cir. 2016) (the "fairly traceable" standard is "lower than that of proximate causation"); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013). As shown above, Plaintiffs have not met Article III's fair-traceability requirement. *See* Section I.B, *supra*. They therefore cannot satisfy the higher proximate-cause standard, and their negligence claims must be dismissed.

### 3. *Plaintiffs Rumely, Fulks, Bean, and Jay's Negligence Claims Fail Because They Have Not Alleged They Suffered Any Legally Cognizable Damages.*

Plaintiffs are also required to plead a cognizable injury to state negligence-based claims.[28] Plaintiffs Bean, Fulks, Jay, and Rumely—who all allege nothing more than a speculative risk of potential future harm, voluntary expenditures to mitigate against that alleged risk, and other intangible effects—rely on injuries that cannot sustain a negligence claim:

- **Increased risk of future harm** is not a cognizable injury for a negligence claim. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942,

---

[28] *Amfac Distrib. Corp. v. Miller*, 673 P.2d 792, 793 (Ariz. 1983); *Benjamin v. Shaw*, 2017 WL 3205798, at *6 (D.S.C. July 28, 2017); *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006); *Little v. Omega Meats I, Inc.*, 615 S.E.2d 45, 48 (N.C. Ct. App. 2005); *Deloitte & Touche v. Weller*, 976 S.W.2d 212, 215 (Tex. App. 1998); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1299, 1307-08 (N.D. Okla. 2000); *January v. TD Serv. Co.*, 2011 WL 13229240, at *4 (C.D. Cal. Oct. 17, 2011); *Ranger Ins. Co. v. Pierce Cnty.*, 192 P.3d 886, 889 (Wash. 2008).

996 (S.D. Cal. 2014) ("[T]he potential risk of future identity theft resulting from the loss of personal information is not a cognizable injury under Michigan law."); *Hammond v. Bank of N.Y. Mellon*, 2010 WL 2643307, at *13 (S.D.N.Y. June 25, 2010) ("[I]ncreased risk of identity theft (in the future) is not a cognizable claim."); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021) ("conclusory allegations of an increased risk of identity theft are insufficient to establish injury"); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 709-11 (S.D. Ohio 2007) (time and expenses of credit monitoring not recoverable).

- *Future out-of-pocket expenses* are not recoverable. *See, e.g.*, *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) ("those who claim only that they may incur expenses in the future have not" pleaded a cognizable injury); *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015).

- *Loss of value of PII* does not qualify as a legally cognizable injury because Plaintiffs do not allege any facts making it plausible that the value of their or their children's PII actually decreased or that they ever intended to sell their PII. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 148-49, 152 (3d Cir. 2015) (allegations that defendant impermissibly seized and deprived plaintiffs of the value of their PII did not plausibly allege loss or damage required to state claims because plaintiffs did not allege any "facts suggesting that they ever participated or intended to participate in the market they identify, or that the defendants prevented them from capturing the full value of their internet usage information for themselves"); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697 (N.D. Cal. 2019) (diminished value of PII is too speculative); *Savidge v. Pharm-Save, Inc.*, 2017 WL 5986972, at *4 (W.D. Ky. Dec. 1, 2017) (diminished value of PII not cognizable injury for negligence claim); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 403-04 (same).

- ***Time spent dealing with the Incident*** cannot support a negligence claim.  *See In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (one fraudulent card charge, monitoring, and effort to replace card not actual damages); *Amburgy*, 671 F. Supp. 2d at 1054-55 (increased risk of identity theft and time spent monitoring is not "harm resulting in compensable damage to plaintiff"); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 709-11 (S.D. Ohio 2007) (time and expenses of credit monitoring not recoverable).

### 4.   The Economic Loss Rule ("ELR") Bars Negligence Based Claims.

Plaintiffs Rumely, A.W., Fulks, Clark, Lee, Nielsen, and Soto's negligence and negligence per se claims also run afoul of their respective state's ELRs.  California, Missouri, North Carolina, South Carolina, Virginia, and Texas all bar recovery in negligence for purely economic losses, which are those losses that do not involve personal injury or property damage.[29]

If Plaintiffs Rumely, A.W., Fulks, Clark, Lee, Nielsen, and Soto had alleged any legally cognizable damages, their asserted damages would all be economic in nature.  *See, e.g.*, *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) ("[T]ime [spent] monitoring [Plaintiff's] account to deal with the side-effects of" data breach "are economic losses" barred by ELR); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526, 530-31 (N.D. Ill. 2011) (dismissing under the ELR negligence and negligence per se claims in a data breach case because "Plaintiffs

---

[29] *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols.*, 954 F.3d 804, 808 (5th Cir. 2020) (Texas law); *Severn Peanut Co., Inc. v. Indus. Fumigant Co.*, 807 F.3d 88, 94 (4th Cir. 2015) (North Carolina law); *Tri-Lift NC, Inc. v. Drive Auto. Indus. of Am.*, 2021 WL 131017, at *3 (D.S.C. Jan. 13, 2021); *see also JPMCCM 2010-C1 Aquia Office LLC v. Mosaic Aquia Owner, LLC*, 2019 WL 4134035, at *6 (Va. Cir. Jan. 15, 2019) ("Only in certain circumstances will a single act or omission support causes of action both for breach of contract and for breach of a duty arising in tort. . . . The salient issue is whether [Defendant] owed [Plaintiff] a common law duty, independent of their contractual agreements."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012); *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010).

do not dispute the fact that they seek to recover in tort solely for economic losses," which included "costs associated with the increased risk of identity theft"); *Schnuck Mkts.*, 887 F.3d at 811, 818 ("time to investigate and resolve fraud claims" barred by ELR). Courts have repeatedly dismissed negligence-based claims in data-theft cases involving virtually identical allegations of injury on the basis that the claims are barred by the ELR. *Schnuck Mkts.*, 887 F.3d at 818 (losses associated with fraudulent charges and loss of employee time were barred by Missouri ELR); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761-62 (C.D. Ill. 2020) (dismissing Missouri negligence and negligence *per se* claims because alleged losses were barred by ELR).

For this additional reason as well, these Plaintiffs' negligence claims fail.

### G. Plaintiffs Fail to State a Claim for Invasion of Privacy by Public Disclosure of Private Facts (Count VI)

The Complaint fails to state a valid claim for invasion of privacy by public disclosure of private facts for three reasons.

***First***, North Carolina and Virginia do not recognize this common-law tort claim, so Plaintiffs from those states (Fulks and Nielsen) cannot state a claim. *See Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 27 (N.C. Ct. App. 2003); *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 670-71 (E.D. Va. 2019).

***Second***, in the states where public disclosure of private facts is recognized, "the ***defendant*** [must] be the one to have publicized the private information." *McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 735 (4th Cir. 2020) (citation omitted).[30] But Plaintiffs do not (and could

---

[30] *See also Hurry v. Fin. Indus. Regul. Auth. Inc.*, 2015 WL 11118114, at *8 (D. Ariz. Aug. 5, 2015); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016); *Furman v. Sheppard*, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000); *Tesar v. Union R-XI Sch. Dist.*, 2017 WL 528318, at *6 (E.D. Mo. Feb. 9, 2017); *Hadnot v. Shaw*, 826 P.2d 978, 985 n.30 (Okla. 1992); *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 6 (S.C. Ct. App. 1989); *Doe v. United States*, 83 F. Supp. 2d 833, 841 (S.D. Tex. 2000); *Wright v. Washington*, 2020 WL 3848052, at *6 (W.D.

not plausibly) allege that Defendants themselves disseminated Plaintiffs' information—intentionally or otherwise.  *See* 77 C.J.S. *Right of Privacy & Publicity* § 32 (2021).  To the contrary, Plaintiffs allege their data was ***stolen*** from Defendants.  *See, e.g.*, Compl. ¶¶ 357, 401, 413.  That theft cannot support a claim that Defendants invaded Plaintiffs' privacy.  *See Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1288 (N.D. Ala. 2014); 62A Am. Jur. 2d *Privacy* § 97 (2021).  Thus, for this reason alone, Count VI fails.

*Third*, this tort requires that a private fact be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977).[31]  Plaintiffs have not met their burden of plausibly alleging that their information was actually communicated to the general public.  *See generally* Compl.  Though some Plaintiffs allege their data was found "on the dark web," Compl. ¶ 392, they do not allege that any unauthorized third parties—let alone the public at large—viewed their PHI or PII.  And those Plaintiffs who do not allege that their PHI or PII was found on the dark web fall even further short.  *See McNeil v. Best Buy Co.*, 2014 WL 1316935, at *4 (E.D. Mo. Apr. 2, 2014) ("The alleged threat of some future publication is too speculative to state a claim[.]").  For this independent reason, Count VI fails.

### H.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty of Confidentiality (Count VII)

Count VII of the Complaint fails to state a claim for breach of fiduciary duty of confidentiality for four reasons.

---

Wash. Mar. 20, 2020), *adopted*, 2020 WL 3839637 (W.D. Wash. July 8, 2020).

[31] *See also Howard v. Ryder Truck Rental, Inc.*, 2012 WL 12882374, at *16 (D. Ariz. Feb. 9, 2012); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1062 (N.D. Cal. 2014); *Furman*, 744 A.2d at 588; *Tesar*, 2017 WL 528318, at *6; *Hadnot*, 826 P.2d at 986 n.31; *McMichael*, 840 F. App'x at 735; *Gonnering v. Blue Cross & Blue Shield of Tex.*, 420 F. Supp. 2d 660, 667 (W.D. Tex. 2006); *Wright*, 2020 WL 3848052, at *6.

*First*, Count VII fails to plausibly allege that a fiduciary relationship exists between Plaintiffs and Defendants.  "[A] fiduciary duty exists when there is a 'great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative." *SEC v. Rauscher Pierce Refsnes, Inc.*, 17 F. Supp. 2d 985, 992 (D. Ariz. 1998) (citation omitted).[32]  And while the fiduciary relationship between patients and ***individual physicians*** is recognized, courts have declined to impose fiduciary duties on healthcare facilities or the entities that support them. *See Quechan Tribe of Fort Yuma Indian Rsrv. v. United States*, 2011 WL 1211574, at *4 (D. Ariz. Mar. 31, 2011) ("Only individual physicians and patients have such a [fiduciary] relationship."), *aff'd*, 599 F. App'x 698 (9th Cir. 2015).[33]  Although Plaintiffs allege they "entrusted" their PHI and PII to Defendants, Compl. ¶ 1, the "mere receipt of confidential information does not create fiduciary duty." *Kapu Gems v. Diamond Imports, Inc.*, 2016 WL 4259119, at *10 (N.D. Cal. Aug. 12, 2016).[34]

*Second*, even if a fiduciary duty existed (it does not), Plaintiffs have not alleged that Defendants themselves disclosed anything, which is required a required element of this intentional tort.  *See, e.g.*, *Arrington v. Hausman*, 760 F. App'x 705, 706 (11th Cir. 2019).  Plaintiffs do not claim that Defendants intentionally disclosed confidential information, but instead allege that "unauthorized third-party hackers" unilaterally "gained access" to the information.  Compl. ¶ 357.

---

[32] *See also Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp. 3d 982, 993 (E.D. Cal. 2015); *Curry v. Schletter Inc.*, 2018 WL 1472485, at *5 (W.D.N.C. Mar. 26, 2018).

[33] *See also Legrone v. Mogenson*, 2011 WL 2555710, at *5 (Cal. Ct. App. June 28, 2011) (explaining that cases about "the fiduciary relationship between the particular physician and the patient . . . do not apply to corporate medical providers with whom a physician may work under contract"); *Gonzales v. Palo Verde Mental Health Servs.*, 783 P.2d 833, 835 (Ariz. Ct. App. 1989).

[34] *See also Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 994 (Ariz. Ct. App. 2019); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *4 (W.D. Wash. Mar. 27, 2015); *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001); *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp.2d 523, 548 (S.D. Tex. 2011).

Because Defendants did not intentionally disclose Plaintiffs' information, Count VII should be dismissed.  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020) (dismissing breach-of-confidence count when defendant "did not do any act that made Plaintiffs' information known—the information was stolen by third-parties").

**Third**, to Defendants' knowledge, Missouri and South Carolina are the only states at issue in this action that have expressly recognized an independent cause of action arising from a healthcare provider's common-law fiduciary duty of confidentiality to protect patient information—but those courts did so only when an individual health provider *itself* disclosed information.[35]  *See Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 670 (Mo. 1993) (physicians testifying in malpractice action); *McCormick v. England*, 494 S.E.2d 431, 437 (S.C. Ct. App. 1997) (physician disclosing information in patient's divorce proceeding).  None of those courts has recognized a breach of common-law fiduciary duty when one party is victimized by a third-party criminal data breach.

**Fourth**, a breach of fiduciary duty requires proof of harm or injury.  *See, e.g.*, *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).  As discussed in Section II.F.3, *supra*, Plaintiffs have not plausibly alleged they suffered any legally cognizable harm as a result of the cyberattack. Thus, Count VII fails.

I.     **Plaintiffs Fail to State a Claim for Negligent Training and Supervision (Count VIII)**

Plaintiffs' claims for negligent supervision—which requires proof of causation and damages[36]—fail for the same reasons Plaintiffs' negligence claims fail.  *See* Sections II.F.1-II.F.4,

---

[35] As the Complaint acknowledges, at least some of the Defendants do not directly provide patient care.  *See* Compl. ¶ 273 ("As a condition of receiving medical care and treatment at **Defendants' Agents' facilities** . . . ." (emphasis added)).

[36] *See Brown v. ECCL 4:12, LLC*, 2021 WL 3204752, at *8 (Tex. App. July 29, 2021);

*supra*.  These claims also fail for at least five state-specific reasons.

**First,** Plaintiffs A.W., Bean, Baum, Lee, Clark, Soto and Jay's negligent-supervision claims fail because their home states (Missouri, Oklahoma, South Carolina, Texas, and Washington) do not recognize direct actions against an employer for negligent training and supervision unless the employee was acting outside the scope of employment.  *Sinclair v. Hembree & Hodgson Constr., L.L.C.*, 2020 WL 3965010, at *3 (W.D. Okla. July 13, 2020); *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 208 (Wash. 2018); *White v. Jackson*, 2015 WL 1189963, at *9 (E.D. Mo. Mar. 16, 2015); *Gregory v. Chohan*, 615 S.W.3d 277, 301 (Tex. App. 2020); *Charleston, S.C. Reg. for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 598 S.E.2d 717, 723 (S.C. Ct. App. 2004).  Plaintiffs do not allege that any employee of Defendants acted outside the scope of his or her employment.

**Second,** Plaintiffs Larsen and Fulks do not state a claim for negligent supervision because, under Arizona and North Carolina law, "[f]or an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort."  *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004); *Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998) (negligent training and supervision requires that the employee commit a tortious act).  Plaintiffs premise their negligent-supervision claims solely on the allegation that Defendants' "employees [fell] victim to a phishing scam."  Compl. ¶ 516.  They do not even

---

*Douglas v. Hardy*, 600 S.W.3d 358, 367 (Tex. App. 2019); *Tompkins v. Charlotte-Mecklenburg Sch. Sys.*, 2016 WL 5868086, at *3 (W.D.N.C. Oct. 6, 2016); *Williams v. Bank of Am., Nat'l Ass'n*, 2015 WL 3843251, at *5 n.3 (D.S.C. June 19, 2015); *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 400 (D. Md. 2011); *State Farm Fire & Cas. Co. v. Keenan*, 216 Cal. Rptr. 318, 331 (Cal. Ct. App. 1985); *Kassman v. Busfield Enters.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981); *Briggs v. Nova Servs.*, 147 P.3d 616, 622 (Wash. Ct. App. 2006); *Davis v. Lutheran S. High Sch. Assoc. of St. Louis*, 200 S.W.3d 163, 165-66 (Mo. Ct. App. 2006); *McQuade v. Arnett*, 558 F. Supp. 11, 13-14 (W.D. Okla. 1982).

attempt to allege that any employee of Defendants committed a tort.[37]

**Third,** in Arizona, California, Maryland, Missouri, North Carolina, Oklahoma, South Carolina, Texas, and Washington, claims for negligent training and supervision include a knowledge element. Plaintiffs in these states (Larsen, Rumely, Cohen, A.W., Fulks, Baum, Beam, Clark, Lee, Soto, and Jay) must demonstrate that the employer has actual or constructive knowledge of certain characteristics of the employee whose conduct forms the basis of the claims.[38] Again, Plaintiffs fall far short of this burden with their threadbare allegation that

---

[37] In California, Maryland, Oklahoma, Texas, and Washington (Plaintiffs Rumely, Cohen, Bean, Baum, Soto, and Jay), the cause of action requires an employee's incompetence, lack of fitness, or dangerous tendencies. *E.g.*, *Alexander v. Cmty. Hosp. of Long Beach*, 259 Cal. Rptr. 3d 340, 365 (Cal. Ct. App. 2020) (requiring "an unfit employee"); *Sanders v. Callender*, 2018 WL 337756, at *10 (D. Md. Jan. 9, 2018) (requiring "employee's incompetence"); *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) ("An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought."); *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex. App. 2007) ("To impose liability in negligent hiring and supervision cases, sufficient evidence must exist indicating that the defendant knew or should have known of the employee's incompetence or potential for causing harm."); *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 210 (Wash. 2018) (requiring "dangerous tendencies of the particular employee"). For the same reason as above, Plaintiffs allegation that an employee fell victim to a phishing scam does not meet their burden of showing incompetence, lack of fitness, or "dangerous tendencies."

[38] *Smith*, 495 S.E.2d at 398 (in North Carolina, "the plaintiff must prove . . . that prior to the act, the employer knew or had reason to know of the employee's incompetency"); *Alexander*, 259 Cal. Rptr. 3d at 365 (requiring "prior knowledge of the actor's propensity to do the bad act"); *Sanders*, 2018 WL 337756, at *10 (Maryland law requires showing "the employer's actual or constructive knowledge of such incompetence"); *Charleston, S.C. Reg. for Golf & Tourism*, 598 S.E.2d at 723 (to state a claim for negligent supervision in South Carolina the plaintiff must prove "the employer knows or has reason to know that he has the ability to control his employee, and . . . the employer knows or should know of the necessity and opportunity for exercising such control"); *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 87 (Mo. Ct. App. 2012) (same); *Humana Hosp. Desert Valley v. Super. Ct.*, 742 P.2d 1382, 1386 (Ariz. Ct. App. 1987) (to prove negligent supervision in Arizona, a plaintiff must prove that the employer "knew or should have known" that the employee was not competent to undertake the task delegated, and the employer's failure to supervise the employee caused injury to the plaintiff); *N.H.*, 998 P.2d at 600 ("An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are

Defendants "allow[ed] their employees to fall victim to a phishing scam."  Compl. ¶ 516.

*Fourth,* Plaintiffs Lee and Clark cannot state claims for negligent training and supervision because, under South Carolina law, that cause of action exists only "when an employee *intentionally* harms another on the employer's premises."  *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 561-62 (D.S.C. 2020) (citation omitted).

*Fifth*, the majority of courts addressing the issue have determined that there is no cause of action for negligent supervision in Virginia.  *In re Gilbertson v. Purdham*, 2009 WL 7339865, at *2 (Va. Cir. Ct. May 4, 2009); *Morgan v. Wal-Mart Stores East, LP*, 2010 WL 4394096, at *4 (W.D. Va. Nov. 1, 2010).  Thus, Plaintiff Nielsen cannot pursue such a claim here.[39]

> **J.**     **Plaintiffs Fail to State a Claim for Negligence Per Se (Count IX)**

For multiple reasons, Plaintiffs fail to state claims for negligence per se based on alleged violations of HIPAA and HITECH.

As an initial matter, Plaintiffs' allegation that Defendants violated HIPAA and HITECH by "disclos[ing] . . . the private health information of Plaintiffs without consent or authorization" is legally flawed.  Compl. ¶ 526.  A "disclosure" under those statutes requires "an affirmative act of disclosure, not a passive loss of information."  *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human Servs.*, 985 F.3d 472, 478 (5th Cir. 2021).  The Complaint does not allege any affirmative act of disclosure by Defendants; it alleges that Defendants were the victim

---

sought."); *Zarzana*, 218 S.W.3d at 158 ("To impose liability in negligent hiring and supervision cases, sufficient evidence must exist indicating that the defendant knew or should have known of the employee's incompetence or potential for causing harm."); *Anderson*, 423 P.3d at 210 (Washington courts "require a plaintiff alleging negligent supervision of an employee to show that the employer knew or should have known of the dangerous tendencies of a particular employee.").

[39] Even if Virginia allowed such a claim, it would be held to the same negligence standards discussed above (proximate cause and damages), which Plaintiffs have not met.  *See Hernandez v. Lowe's Home Centers, Inc.*, 2011 WL 8964944, at *1 (Va. Cir. Ct. Aug. 1, 2011); Sections II.F.2-II.F.3, *supra*.

of a third party's criminal conduct.  Thus, the Complaint does not allege a violation of HIPAA or HITECH based on an alleged disclosure of PHI, and the Complaint cannot state claims for negligence per se based on that allegation.  Plaintiffs' negligence per se claims also fail because they cannot establish causation or damages, *see* Sections II.F.2-II.F.3, *supra*, and for numerous state-specific reasons discussed below.[40]

### 1. *California, Maryland, and Washington Do Not Recognize Negligence Per Se.*

Plaintiffs Rumely, Cohen, and Jay's claims fail because negligence per se is not an independent cause of action in their home states (California, Maryland, and Washington).  *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (under California law, "negligence per se does not state an independent cause of action"); Wash. Rev. Code § 5.40.050 ("A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se . . . ."); *Estate of Templeton ex rel. Templeton v. Daffern*, 990 P.2d 968, 972 (Wash. Ct. App. 2000) (Washington has "abolished the doctrine of 'negligence per se'"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2020 WL 6290670, at *21 (D. Md. Oct. 27, 2020) ("Maryland does not recognize negligence per se as an independent cause of action[.]").

### 2. *Courts Applying Arizona, South Carolina, and Virginia Law Have Held that HIPAA Cannot Form the Basis of a Negligence Per Se Claim.*

Plaintiffs Larsen, Nielsen, Clark, and Lee cannot state claims for negligence per se based on the alleged violation of HIPAA or HITECH (which is part of HIPAA's statutory scheme) because HIPAA cannot form the basis of a negligence per se claim under the state laws that govern

---

[40] As discussed above, the negligence per se claims of Plaintiffs A.W., Fulks, Lee, Clark, Nielsen, Soto, and Rumely are also barred by their state's economic loss rules.  *See* Section II.F.4, *supra*.

their claims (Arizona, South Carolina, and Virginia). *See Skinner v. Tel-Drug, Inc.*, 2017 WL 1076376, at *3 (D. Ariz. Jan. 27, 2017) ("To the extent that HIPAA universally has been held *not* to authorize a private right of action, to permit HIPAA regulations to define per se the duty and liability for breach is no less than a private action to enforce HIPAA, which is precluded." (emphasis in original) (alterations, internal quotation marks, and citation omitted)); *J.R.*, 470 F. Supp. 3d at 554-55 (dismissing negligence per se claim predicated on alleged violation of HIPAA under South Carolina law); *Parker v. Carillon Clinic*, 819 S.E.2d 809, 825 (Va. 2018) (holding that a "negligence per se argument based on HIPAA finds no support in Virginia law").

### 3. HIPAA and HITECH Have No Private Right of Action, Which Bars a Negligence Per Se Claim in Missouri, North Carolina, and South Carolina.

Plaintiffs A.W., Fulks, Clark, and Lee's negligence per se claims fail for the additional, independent reason that negligence per se is available in their states (Missouri, North Carolina, and South Carolina) only for statutes that have a private right of action. *See Salley v. Heartland-Charleston of Hanahan, SC, LLC*, 2011 WL 2728051, at *2 (D.S.C. July 12, 2011) ("A statute must permit a private cause of action in order for plaintiffs to maintain a civil suit" for negligence per se under South Carolina law); *Marvin's Midtown Chiropractic Clinic, LLC v. Am. Fam. Ins. Co.*, 2018 WL 2326625, at *4 (W.D. Mo. May 22, 2018) (dismissing negligence per se claim predicated on alleged violation of Missouri statute because "there is no evidence that the legislature even intended to provide a private right of action" under the statute and noting that "Missouri law does not favor the creation of private rights of action by the judiciary"); *Hetzel v. JPMorgan Chase Bank, N.A.*, 2014 WL 7336863, at *7 (E.D.N.C. Dec. 22, 2014) ("The statute under which plaintiff's alleged negligence per se claim arises does not offer any explicitly stated mechanism for private rights of action. Accordingly, plaintiff's claim for negligence per se fails and must be dismissed." (citation omitted)). Neither HIPAA nor HITECH contain a private right of action.

*See Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011) (per curiam) ("[T]here is no private right of action for a violation of HIPAA's confidentiality provisions."); *Sullivan v. Clallam Cnty. Pub. Health Dist. No. 2*, 2016 WL 3059409, at *2 (W.D. Wash. May 31, 2016) ("[T]he HITECH Act . . . does not give rise to a private right of action."). Thus, Plaintiffs Lee, Clark, A.W., and Fulks cannot state claims for negligence per se based on the alleged violations of those statutes.

### 4. *Negligence Per Se Cannot Be Based on a General or Abstract Duty Under Arizona, Oklahoma, and Texas Law.*

Plaintiffs Larsen, Baum, Bean, and Soto cannot state claims for negligence per se based on the supposed violation of HIPAA and HITECH's alleged requirement to "reasonably safeguard the private health information of Plaintiffs from any intentional or unintentional use or disclosure," Compl. ¶ 527, because that alleged obligation is too abstract to form the basis of a negligence per se claim under their states' laws (Arizona, Oklahoma, and Texas). In those states, "[n]egligence per se is limited to situations involving a violation of a specific legal requirement, not a general standard of care." *Ibarra v. Gastelum*, 471 P.3d 1028, 1030 (Ariz. Ct. App. 2020); *Ross v. Univ. of Tulsa*, 2015 WL 4064754, at *3 (N.D. Okla. July 2, 2015) (a statute that "lacks the specificity necessary to provide any meaningful 'substitute' for common law duties of reasonable care" cannot form the basis of a negligence per se claim); *Praesel v. Johnson*, 967 S.W.2d 391, 395 (Tex. 1998) ("In those instances in which we have determined that it would be appropriate to base civil liability on a statute, the standard of conduct has been clearly defined, and the injury at issue grew directly out of a breach of that standard."). HIPAA and HITECH compliance require determining both reasonableness and appropriateness. *See, e.g.*, *Bereston v. UHS of Del., Inc.*, 180 A.3d 95, 108 (D.C. 2018). Whether Defendants acted "reasonably" or "appropriately" is the opposite of the concrete, definitive standard of care required for negligence per se. *See Ibarra*,

471 P.3d at 1031 (a statutory standard based on reasonableness cannot "provide the basis for a negligence per se claim").

### 5. *Plaintiff A.W.'s Negligence Per Se Claim Fails for Two Missouri-Specific Reasons.*

Finally, Plaintiff A.W.'s negligence per se claim fails for two Missouri-specific reasons. ***First***, under Missouri law, the doctrine of negligence per se is limited to safety statutes. Specifically, "[n]egligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*, 2017 WL 3621459, at *3 (E.D. Mo. Aug. 23, 2017) (internal quotation marks and citations omitted).

***Second***, under Missouri law, negligence per se is limited to cases in which "personal injury and physical injury to property are involved" and is unavailable when the plaintiff merely alleges "damage to economic interests." *Id.* (citation omitted). If Plaintiff A.W. alleged any legally cognizable damages at all, they would be mere economic damages. Plaintiff A.W.'s negligence per se claim fails for this reason, too.

\*     \*     \*

For the reasons set forth above, Plaintiffs' negligence per se claims fail and must be dismissed.

## III.    ADDITIONAL ARGUMENT BY AMERICAN ANESTHESIOLOGY

The preceding discussion shows that no named Plaintiff has Article III standing to sue any Defendant and that no named Plaintiff states a valid claim for relief against any Defendant. That said, Defendant American Anesthesiology stresses that the parties here are not interchangeable.

Only two named Plaintiffs—Nielsen and Lee—allege they received a notice letter "from Defendant American Anesthesiology." Compl. ¶¶ 177, 197. The other eleven named Plaintiffs

allege they received a letter "from Defendant Mednax."  Compl. ¶¶ 17, 42, 57, 75, 90, 115, 140, 164, 221, 243.  Yet Plaintiffs expressly admit and recognize that AA is a distinct legal entity from Mednax and Pediatrix; AA is only "a *former* Mednax company."  Compl. ¶ 265 (emphasis added).[41]

This matters for three reasons.  First, it confirms the Complaint is an impermissible shotgun pleading.  Second, even if Plaintiffs Nielsen and Lee had standing to sue AA (they do not), no other named Plaintiff has standing to sue AA.  Third, Plaintiffs Nielsen and Lee cannot assert claims under the laws of states other than Virginia and South Carolina, respectively.

### A.    The Complaint Improperly Lumps Together AA and the Other Defendants.

The 532-paragraph Complaint persistently and broadly asserts claims against "Defendants" as a group.  The Complaint refers to AA by name in only six paragraphs.  Compl. ¶¶ 177, 188, 197, 217, 265, 268.  By contrast, the Complaint refers to undifferentiated "Defendants" more than 340 times and in over 200 paragraphs.  This shows that the Complaint "fail[s] to specify the exact conduct each defendant engaged in as to each count."  *Embree*, 779 F. App'x at 664.

For example, Count III asserts a California state-law claim "against Defendants," Compl. ¶ 491, but the Complaint never alleges any facts that connect AA to California.  The Complaint does not allege that Plaintiffs Nielsen and Lee are California citizens, and the Complaint does not allege that AA is a California corporation.  Compl. ¶¶ 176, 196, 265.  The only connection to California alleged in the Complaint is that Plaintiff Rumely, who alleges he lives in California, alleges that he "received a 'Notice of Security Event' . . . from Defendant Mednax."  Compl. ¶¶ 41-42.  Again, though, Mednax and AA are distinct legal entities.  Compl. ¶ 265.  Thus, Count III—

---

[41] According to public records, Mednax sold AA in May 2020.  *See* Mednax, Inc., Current Report (Form 8-K) (May 6, 2020), https://tinyurl.com/9yb2str.  The Security Incident happened *after* that sale.  *See* Compl. ¶¶ 390-91.

and the Complaint as a whole—"boils down to 'an across-the-board allegation that every Defendant' engaged in wrongdoing."  *Hale*, 2021 WL 767664, at *2 (quoting *Weil*, 816 F. App'x at 341) (internal brackets omitted).

Under well-settled precedent, then, the Complaint is an impermissible "shotgun pleading."[42]  Because the Complaint indiscriminately lumps together AA, Mednax, and Pediatrix (rather than distinguishing between those separate entities), this Court should dismiss the Complaint.

### B.   Eleven Plaintiffs Lack Standing to Sue AA Because They Do Not Allege Any Connection to AA.

As explained above, no named Plaintiff has Article III standing to sue any Defendant.  *See* Sections I.A-I.B, *supra*.  But even if Plaintiffs Nielsen and Lee had standing to sue AA, no other named Plaintiffs plausibly allege facts that give them standing to sue AA.  That is because only Plaintiffs Nielsen and Lee allege any connection to AA.  Plaintiffs without a connection to AA cannot sue AA.

---

[42] *See* Section II.A, *supra*; *see also, e.g.*, *Clifford v. Federman*, 855 F. App'x 525, 528 (11th Cir. 2021) (per curiam) ("Dismissal of a complaint as a shotgun pleading is warranted where . . . the complaint indiscriminately lumps together multiple defendants without specifying how each is responsible for acts or omissions that give rise to a claim for relief."); *Joseph*, 612 F. App'x at 555 ("If the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8."); *Magnum Constr.*, 2021 WL 799448, at *4 ("Because the Complaint alleges at least [one defendant] to be a separate, legally distinct entity, the Complaint's allegations against Defendants collectively . . . impermissibly lump them together and render the Complaint a shotgun pleading."); *Prolow*, 510 F. Supp. 3d at 1310 ("[T]he Complaint impermissibly lumps the two Defendants together. Each Defendant is alleged to be distinct legal entities but the Complaint does not adequately differentiate between Defendants nor inform each Defendant separately of the allegations that apply to it." (citation omitted)); *Cellco P'ship*, 2013 WL 5436553, at *7 (similar); *Chiron Recovery Ctr. v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *5 (S.D. Fla. June 30, 2020) ("Shotgun pleading exists when multiple parties . . . are merged into a single count."); *Gazzola*, 2019 WL 3067506, at *2 (dismissing a complaint that "group[ed] together the Defendants and [did] not specify which of the Defendants is responsible for which acts or omissions").

To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "At the pleading stage," moreover, "'plaintiffs must clearly allege facts demonstrating each element' of standing." *In re Bay Circle Props., LLC*, 955 F.3d 874, 877 (11th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1547) (internal brackets omitted).[43]   And because Article III standing is a threshold issue that implicates subject-matter jurisdiction, this Court must examine standing now. *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, 2021 WL 1216897, at *6 (S.D. Fla. Mar. 30, 2021) (Ruiz, J.); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 499 F. Supp. 3d 1160, 1167 (S.D. Fla. 2020) (Ruiz, J.).[44]

It is also well-settled that "standing is not dispensed in gross." *TransUnion*, 141 S. Ct. at 2208.[45]   Instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650

---

[43] *See also, e.g.*, *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020) (requiring plaintiffs to "plausibly and clearly allege a concrete injury"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (en banc) (explaining that "even at the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990))); *cf. Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [standing to sue].").

[44] *See also, e.g.*, *Warth*, 422 U.S. at 498 ("[Article III standing] is the threshold question in every federal case, determining the power of the court to entertain the suit."); *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (explaining that "standing is a threshold question that must be explored at the outset of any case"); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."); *cf. Valley Nat'l Bank v. Warren*, 2021 WL 1597960, at *3 (M.D. Fla. Apr. 23, 2021) ("The party seeking relief bears the burden to establish standing at every stage of the litigation.").

[45] *See also, e.g.*, *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006); *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021).

(2017) (citation omitted).[46]  Put differently, "[i]t is not enough that a named plaintiff can establish a case or controversy between himself and [a] defendant by virtue of having standing as to one of many claims he wishes to assert."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).  "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *Id.* (citation omitted).

These rules are the same in the class-action context.  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo*, 136 S. Ct. at 1547 n.6 (citation and internal quotation marks omitted); *accord Lewis v. Casey*, 518 U.S. 343, 357 (1996).[47]

Given these rules, it is no surprise that a plaintiff "must allege standing as to each claim *against each Defendant*."  *Warren Tech., Inc. v. UL LLC*, 2018 WL 10550930, at *5 (S.D. Fla. Oct. 31, 2018) (emphasis added).  Just as a named plaintiff in a product-liability case cannot assert a claim about a product he did not buy, *see Ohio State Troopers Ass'n v. Point Blank Enters.*, 481

---

[46] *See also, e.g.*, *TransUnion*, 141 S. Ct. at 2208 (explaining that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("[A plaintiff] bears the burden of proving that he has standing for each type of relief sought."); *Davis*, 554 U.S. at 734 ("'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." (citation omitted)); *DaimlerChrysler*, 547 U.S. at 352 (explaining that "our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press" and that "a plaintiff must demonstrate standing separately for each form of relief sought" (citation omitted)); *Preisler*, 2021 WL 2110794, at *3.

[47] *See also, e.g.*, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) ("It is well-settled that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974))).

F. Supp. 3d 1258, 1272-74 (S.D. Fla. 2020) (Ruiz, J.), neither can that plaintiff assert a claim against a defendant who did not harm him.  Standing to sue someone does not balloon into standing to sue everyone.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*, 2021 WL 1711684, at *6 (S.D. Fla. Apr. 15, 2021) (dismissing defendants when plaintiffs did not allege injuries traceable to those defendants); *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) (requiring plaintiffs to "show that the injuries they allege are fairly traceable to each Defendant").[48]

---

[48] *See also, e.g.*, *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant . . . requires a showing that each defendant caused his injury and that an order of the court against each defendant could redress the injury."); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) (rejecting the theory that "a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants"); *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247-48 (5th Cir. 2008) (holding that a plaintiff lacked standing to sue defendants who caused the plaintiff no cognizable injury); *Easter v. Am. W. Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004) (similar); *Jackson v. Resolution GGF Oy*, 136 F.3d 1130, 1132 (7th Cir. 1998) (holding that when there was no interaction between plaintiffs and a defendant, that defendant had to be dismissed); *Salvador v. Allstate Prop. & Cas. Ins. Co.*, 2020 WL 7042843, at *4 (D.D.C. Nov. 30, 2020) ("In a multi-defendant action or class action, the [named] plaintiffs must establish that they have been harmed by each of the defendants."); *Rolaff v. Farmers Ins. Co.*, 2020 WL 4939172, at *2 (W.D. Okla. Mar. 19, 2020) ("When a representative plaintiff sues multiple defendants on behalf of a class, that representative must still have standing to pursue each claim against each defendant."); *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) ("A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim."); *Perez v. Wells Fargo & Co.*, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015) ("To demonstrate that they have standing, named plaintiffs in a class action suit must plead facts showing standing as to each defendant, including alleging that they were injured by each such defendant."); *cf. Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) ("The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant."); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977) ("[T]he complaint must indicate that the [plaintiff's] injury is indeed fairly traceable to the defendant's acts or omissions."); *Ohio State Troopers*, 481 F. Supp. 3d at 1272 (explaining that "a plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject" (citation omitted)).

Plaintiffs A.W., B.W., Rumley, Bean, Jay, Soto, Baum, Larsen, Fulks, Cohen, and Clark do not plausibly allege any contact or relationship with AA. Those Plaintiffs certainly do not "'clearly . . . allege facts demonstrating'" they suffered an injury-in-fact "that is fairly traceable to the challenged conduct of [AA]." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). As a result, even if Plaintiffs Nielsen and Lee had standing to sue AA, no other named Plaintiff has standing to sue AA.

To be clear, AA is not arguing in this section of the motion to dismiss that it must be dismissed altogether unless every named Plaintiff has standing to sue AA. That said, Article III standing must be established plaintiff-by-plaintiff, claim-by-claim, and defendant-by-defendant. AA should not have to defend against claims brought by those Plaintiffs who fail to allege facts that give them Article III standing to sue AA. Thus, claims against AA by Plaintiffs A.W., B.W., Rumley, Bean, Jay, Soto, Baum, Larsen, Fulks, Cohen, and Clark should be dismissed.

### C. Plaintiffs Cannot Assert State-Law Claims When Their Own Claims Do Not Arise Under the Laws of Those States.

Despite the meager allegations about AA, the Complaint purports to assert claims against AA under the laws of twelve states. *E.g.*, Compl. ¶ 472. Plaintiffs Nielsen and Lee allege that they are citizens of Virginia and South Carolina, respectively. Compl. ¶¶ 176, 196. Yet neither Nielsen nor Lee plausibly alleges facts about any alleged injury or supposed wrongful conduct in any other state. Plaintiffs Nielsen and Lee thus purport to assert state-law claims even when their own claims do not arise under the laws of those states. That is not allowed.

As this Court recently explained, "named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Lewis*, 2021 WL 1216897, at *7 (quoting *Feldman v. BRP US, Inc.*, 2018 WL

8300534, at *6 (S.D. Fla. Mar. 28, 2018)).  Other courts in this District agree.[49]  A plaintiff, after all, must establish standing claim-by-claim.  *See id.*  And here, for example, Plaintiffs Nielsen and Lee do not plausibly allege that they suffered any injury-in-fact that is fairly traceable to an alleged violation of (for example) California or Texas law.  *See id.*  Nor does any named Plaintiff plausibly allege how their claims arise under the laws of Florida or New York: No one plausibly alleges that he or she was injured in Florida or New York, and no one plausibly alleges that wrongful acts or omissions occurred in Florida or New York.

So even if Plaintiffs Nielsen and Lee had standing at all (they do not), Plaintiffs Nielsen and Lee would be limited to claims under Virginia and North Carolina law, respectively.  Claims against AA under the laws of other states should be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs lack Article III standing and fail to state a single viable claim to relief.  Thus, the Consolidated Complaint for Damages [ECF No. 53] should be dismissed in its entirety.

Dated:  September 20, 2021

*/s/* Kristine McAlister Brown
Kristine McAlister Brown
Florida Bar No. 443640
Gavin Reinke
M. Ashley Miller
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000

---

[49] *See, e.g.*, *In re Zantac*, 2020 WL 7866674, at *17 ("The Court concludes that a named plaintiff lacks standing to assert claims on behalf of punitive class members whose claims arise under other states' laws."); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1181 (S.D. Fla. 2019) (holding that a Florida plaintiff lacked standing to assert claims on behalf of those who bought an allegedly defective product in other states); *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise.").

Fax: (404) 881-7777
kristy.brown@alston.com
gavin.reinke@alston.com
ashley.miller@alston.com

Martin B. Goldberg
Florida Bar No. 827029
LASH & GOLDBERG LLP
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2158
Phone: (305) 347-4040
Fax: (305) 347-3050
mgoldberg@lashgoldberg.com

*Attorneys for Defendants Mednax, Inc.; Mednax Services, Inc.; Pediatrix Medical Group; and Pediatrix Medical Group of Kansas, P.C.*

*/s/ Lee E. Bains, Jr.*
Lee E. Bains, Jr.
Thomas J. Butler
Caleb C. Wolanek
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: (205) 254-1000
Fax: (205) 254-1999
lbains@maynardcooper.com
tbutler@maynardcooper.com
cwolanek@maynardcooper.com

*Attorneys for Defendant American Anesthesiology, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown
Florida Bar No. 443640
