**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:21-md-02994-RAR**

In re:

**MEDNAX SERVICES, INC.,
CUSTOMER DATA SECURITY BREACH LITIGATION**

_____ /

This Document Relates to All Actions

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY
PENDING RULING ON MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
<u>CLASS ACTION COMPLAINT</u>**

**I.      Introduction.**

Fact discovery should begin and should not be delayed.  Federal courts, and particularly

courts in this District, disfavor staying discovery while a motion to dismiss is pending.  Such stays

are the exception, not the rule:

> *Stays or Limitation of Discovery.* Normally, the pendency of a motion to dismiss or
> motion for summary judgment will not justify a unilateral motion to stay discovery
> pending a ruling on the dispositive motion. Such motions for stay are generally
> denied except where a specific showing of prejudice or burdensomeness is made,
> or where a statute dictates that a stay is appropriate or mandatory.

S.D. Fla. Local Rules, App. A, Discovery Practices Handbook I.D(5); *see also Ray v. Spirit*

*Airlines, Inc*., 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012) ("[A] stay of discovery pending

the determination of a motion to dismiss is the exception rather than the rule.").  Stays of discovery

are never permitted absent a "specific showing of prejudice or burdensomeness." S.D. Fla. Local

Rules, App. A, Discovery Practices Handbook I.D(5).  Defendants' Motion to Stay Discovery

1

Pending Ruling on Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (D.E. 62, "Motion") falls far short of this standard and thus must be denied.  Further, a peek at Defendants' motion to dismiss reveals that at least some of Plaintiffs' claims will survive such that a stay is not appropriate.  *Alcon Labs., Inc. v. Allied Vision Grp, Inc.*, 2018 WL 6441451, at *1 (S.D. Fla. Oct. 26, 2018) (denying motion to stay where the court was "unconvinced that Defendants' counterclaims [would] be dismissed in their entirety, and even more doubtful that the pleading [would] be dismissed with prejudice.") (internal marks and citation omitted; emphasis added).

**II.      This District Disfavors Staying Discovery and *Chudasama* Does Not Instruct Otherwise.**

District Courts have broad discretion to decide how best to manage their cases.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).  This discretion extends to staying discovery during the pendency of a dispositive motion.  However, motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."  *Reilly v. Amy's Kitchen, Inc.*, 2013 WL 3929709, at *1 (S.D. Fla. July 31, 2013); *Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013) ("Motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district.").  Thus, the pendency of a motion to dismiss generally "will not justify a unilateral motion to stay discovery pending a ruling on the dispositive motion."  *Montoya v. PNC Bank, N.A.*, 2014 WL 2807617, at *2 (S.D. Fla. June 30, 2014).

Defendants claim that, in *Chudasama*, the Eleventh Circuit recognized that motions to dismiss are a reasonable basis for staying discovery.  Motion at 1-2.  Defendants expand the holding in *Chudasama.*  There, the plaintiffs brought a fraud claim based upon a novel theory of law that "substantially widened the scope of discovery."  *Chudasama*, 123 F.3d at 1359 n.12, 1360,

1369 n.39. The district court failed to rule on a motion to dismiss for over a year and a half and failed, repeatedly, to rule on the defendant's objections to abusive discovery propounded by the plaintiffs. *Id.* at 1356–60. In finding that the district court had abused its discretion, the Eleventh Circuit articulated that "any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible." *Id*. at 1368. Thus, contrary to Defendants' framing of the Eleventh Circuit's ruling, *Chudasama* establishes only a "much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." *In re Winn Dixie Stores, Inc.*, 2007 WL 1877887, *1 (M.D. Fla. June 28, 2007).

To counter the resulting expansion of its holding with the notion that a discovery stay is always or presumptively proper during the pendency of a motion to dismiss, the Eleventh Circuit later explained "we only found an abuse of discretion [in *Chudasama*] because the district court ordered the parties to engage in substantive discovery despite failing to rule on the defendants' motion to dismiss for over eighteen months." *Zow v. Regions Fin. Corp*., 595 F. App'x. 887, 889 (11th Cir. 2014). That is not the case here, as Defendants repeatedly concede, because the Court has "indicated that it intends to rule promptly on Defendants' Motion to Dismiss" (Motion at 2; *see also id.* at 11). This Court should follow the precedent set forth by the Eleventh Circuit and courts in this District, which regularly deny motions to stay pending resolution of motions to dismiss, finding that *Chudasama* "does not state a general rule that discovery be stayed pending resolution of a motion to dismiss." *Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*, 2019 WL 6052408, at *1 (S.D. Fla. Nov. 15, 2019).[1]

---

[1] *See also Monks v. Diamond Resorts Int'l, Inc.*, 2018 WL 4208330, at *1 (S.D. Fla. May 11, 2018) (same); *Reilly*, 2013 WL 3929709 at *1; *Romacorp, Inc. v. Prescient, Inc.*, 2011 WL 2312563, at *2 (S.D. Fla. June 8, 2011) ("Nowhere in *Chudasama* does the Eleventh Circuit state that a party

III.     **Defendants Fail to Meet Their Burden to Show Prejudice or Burdensomeness.**

Although motions to stay are rarely granted, a stay *may* be justified where a movant has made "a specific showing of prejudice or burdensomeness."  S.D. Fla. Local Rules, App. A, Discovery Practices Handbook I.D(5).  Defendants bear the burden of making this specific showing.  *Bocciolone v. Solowsky*, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (citing *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)).  "[T]o obtain a stay, a moving party must show a particular and specific need for it, as opposed to making stereotyped or conclusory statements."  *Ray*, 2012 WL 5471793, at *2 (internal quotations and citations omitted).  Defendants' Motion must be denied because it is premised only on speculation and supposition rather than a showing of a particular and specific need.

A.  **Defendants fail to explain why commencing discovery will be burdensome.**

Defendants' Motion fails to offer any facts supporting their claim that commencing discovery will be unusually burdensome, time consuming, or expensive.  Instead, Defendants rely upon the mere fact that Plaintiffs assert nine causes of action on behalf of 13 potential classes/subclasses.  But the crux of each claim and of the case as a whole is two data breaches involving Plaintiffs' and Class Members' sensitive personal and medical information that occurred on June 17-22, 2020 and July 2-3, 2020 – breaches common to all the claims.  Thus, unlike *Chudasama*, where the fraud claim "dramatically enlarged the scope" of discovery,[2]  here the same evidence will be relevant to every claim and, as such, the scope of discovery will remain the same even if one or more claims, Plaintiffs, or Defendants are eliminated from the case on Defendants' motion to dismiss.

---

may stop complying with its discovery obligations when it files a motion to stay."); *Gannon v. Flood*, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008).

[2] 123 F.3d at 1369.

4

Defendants do nothing to detail the specific nature of the burden they would face from discovery in this case, nor do they explain how the prejudice they allegedly would face differs from that of any other party that files a case-dispositive motion.  On the contrary, Defendants are not under any immediate pressure, as Plaintiffs have yet to even serve any discovery, there are no discovery disputes to speak of (and so no burden on the Court), and because the Court intends to rule on the motion to dismiss expeditiously. As Defendants concede, they can wait to prepare their Plaintiff-specific discovery until after the Court rules on the motion to dismiss if they wish.

As courts in this District have explained, Defendants' bald supposition is no basis for a stay of discovery:

> Here, the Media Defendants readily admit that "Plaintiffs have not yet served discovery requests on [them]." Mot. at 2. Yet, the Media Defendants contend a stay is justified because if and when they are served with discovery, they "will be subjected to an undue burden to the extent they will be required to spend time and resources responding to discovery on claims that ultimately may be dismissed." But the same could be said of every case in which a motion to dismiss is filed. Such argument fails to demonstrate the type of specific and extraordinary "prejudice or burdensomeness" necessary for entry of a discovery stay. Specifically, the Media Defendants have not identified anything special about their motion to dismiss that would take it outside of the general rule. Nor have they shown that absent a stay, discovery in this case will turn especially burdensome. The Court therefore concludes that there is no basis for a stay of discovery at this time.

*Vechten v. Elenson*, 2012 WL 12978270, at *1 (S.D. Fla. July 20, 2012) (internal citations omitted).

If parties were meant to be wholesale exempt from participating in discovery while potentially dispositive motions were pending, surely the Court's local rules and case management and scheduling orders would reflect such an intention.  But no such rule exists because delays caused by such a rule would be an administrative nightmare.  Thus, courts in this District have recognized: "while a defendant should not be forced to expend substantial resources answering

discovery when the plaintiff's claims clearly lack merit, the delay and prolongation of discovery can also create case management and scheduling problems and unfairly hold up the prosecution of the case." *Cabrera v. Progressive Behavioral Sci., Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019) (citations omitted).  Once discovery commences, Defendants will have other means, outside of an outright stay of discovery, to seek relief from the Court.  If Plaintiffs' requests are too broad or unduly burdensome, Defendants may oppose such requests under the Federal Rules of Civil Procedure and the Local Rules.  *See Zelaya v. United States*, 2013 WL 12328290, at *1 (S.D. Fla. Feb. 15, 2013) (explaining that a stay of discovery was unwarranted because "any burden on Defendant can be alleviated by narrowing the scope of the discovery requests and adopting a sequential approach to the discovery process, pending a ruling on the Second Motion to Dismiss").  Specificity and clarity would then rule over generality, speculation, and supposition.

### B.  Plaintiffs will be prejudiced if discovery is stayed.

Contrary to Defendants' argument (Motion at 11), Plaintiffs will be prejudiced if discovery is delayed.  Plaintiffs' and Class Members' sensitive personal information remains in Defendants' possession and has already been accessed by unauthorized third-party hackers on at least two separate occasions.  *See* Consolidated Complaint for Damages, D.E. 53, ¶¶ 357-58 (first breach occurred from June 17-22, 2020), 391 (subsequent breach took place from July 2, 2020-July 3, 2020, after Defendants became aware of the first breach) (hereinafter the "Complaint").  Thus, Defendants have proven unwilling to implement sufficient data security measures and every day that passes without the requested injunctive relief is another day that Plaintiffs' and Class Members' sensitive personal information remains vulnerable to additional unauthorized disclosures.

### C. Defendants' own motion to dismiss illustrates why discovery should commence.

Although the allegations in Plaintiffs' complaint must be accepted as true, in their motion to dismiss, Defendants raise numerous factual issues that can be resolved through discovery. For example, Defendants raise issues regarding whether they acted intentionally as well as negligently, Motion at 23, 30, 42, 46, whether they had reason to know adequate security measures were not being implemented, *id.* at 28, and whether they engaged in affirmative acts that facilitated the data breach, *id.* at 44. Defendants argue that Plaintiffs fail to allege that their Social Security numbers were "actually involved" in the breach. Motion at 8. Without discovery, Plaintiffs **cannot** be sure that their Social Security numbers were not compromised, and this remains a question of fact not appropriate for resolution at this stage. Instead, the allegations in Plaintiffs' Complaint, which must be accepted as true, plausibly allege that some Plaintiffs' Social Security numbers were accessed, because Plaintiffs allege that some Social Security numbers **were** accessed in the breach and that some Plaintiffs' Social Security numbers (along with other personal information) have shown up on the dark web. Plaintiffs also allege specific facts that tie the appearance of their information on the dark web to the data breach. For example, Plaintiffs allege that they are very careful about sharing sensitive information, store sensitive documents in secure locations or destroy the documents, diligently choose unique usernames and passwords, and never knowingly transmit unencrypted sensitive information over the internet or any other unsecured source. Complaint, ¶¶ 19-20; 92-93; 117-118; 142-143; 199-200; 223-224; 245-246. These allegations are sufficient at the motion to dismiss stage and raise numerous factual issues that can only be addressed through discovery. Consequently, Defendants' argument that discovery should be stayed because their motion to dismiss will prevail is wholly inappropriate and assumes that the Court will disregard the legal standard before deciding a motion to dismiss.

### IV.    Plaintiffs' Well-Pled Complaint Will Survive the Motion to Dismiss.

Given that it is rarely appropriate to stay discovery pending resolution of a motion, "good cause to stay discovery exists wherein resolution of a preliminary motion may dispose of the **entire action**." *Alcon Labs., Inc.*, 2018 WL 6441451, at *1 (denying motion to stay where the court was "unconvinced that Defendants' counterclaims [would] be dismissed in their entirety, and even more doubtful that the pleading [would] be dismissed with prejudice.") (internal marks and citation omitted; emphasis added).[3]

In deciding whether to stay discovery pending resolution of a dispositive motion, the Court must take a "preliminary peek" at the merits of a dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." *Feldman v. Flood*, 176 F.R.D. 651, 652-53 (M.D. Fla. 1997).  A "preliminary peek" at the merits of Defendants' motion to dismiss demonstrates that it is not "clearly meritorious" under Rule 12(b)(6).  This is especially so because many of the arguments raised, to the extent the Court believes they have merit, are easily cured such that the case is unlikely to be dismissed with prejudice, and Plaintiffs have already given notice of their intent to file an amended complaint on or before October 11, 2021.  *See* D.E. 63.  Nonetheless, Plaintiffs will briefly address some of Defendants' arguments here.

### A.  Plaintiffs have standing because they have alleged sufficient injury-in-fact.

Defendants' argument that no Plaintiff has standing will fail.  For example, Plaintiffs have alleged sufficient injuries in the form of increased risk of future harm, time and money spent, and loss of value of their personal information.

---

[3] *See also Cuhaci v. Kouri Grp., LP*, 2021 WL 1945819, at *2 (S.D. Fla. May 14, 2021) ("A motion to stay discovery … is rarely appropriate unless resolution of the motion will dispose of the entire case.") (quotations omitted); *Hakim-Daccach v. Gyptec, S.A.*, 2018 WL 3089329, at *2 (S.D. Fla. Feb. 12, 2018) (Scola, J.) (denying request for a stay of discovery where court was unable to conclude that the case was "surely destined for dismissal").

### 1. Plaintiffs have alleged Article III injury in the form of increased risk of future harm.

Defendants' argument that alleged risk of future harm is not injury-in-fact rests primarily on *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021). But *Tsao* is distinguishable from the facts here in ways the Tsao court itself said would confer standing on plaintiffs like those here. *Tsao* involved a payment card data breach. *Id.* at 1335. Almost immediately after being informed of the breach, the plaintiff cancelled two credit cards that had been compromised in the breach. *Id.* The Court held that Tsao could not manufacture standing by "inflicting injuries on himself" in the form of mitigation costs "inextricably tied to his perception of the actual risk of identity theft following the data breach." *Id.* at 1344-45. Critical to the court's decision was the fact that the plaintiff's cards had not been misused before cancellation and there was no future risk of misuse following cancellation. But the court recognized that standing is generally conferred "based on an increased risk of theft or misuse" when there are "allegations of actual misuse or actual access to personal data." *Id.* at 1340. Crucial to the analysis of the claims brought in this case, the *Tsao* court also acknowledged that a more "substantial risk" of identity theft exists when a data breach involves immutable PHI and PII such as medical information and Social Security numbers, as opposed to easily replaceable data like credit or debit card numbers. *Id.* at 1343.

That is the case here, where Plaintiffs have alleged that there was "actual access to personal data." And, unlike the plaintiff in *Tsao*, who did not allege "that social security numbers, birth dates, or driver's license numbers were compromised," *id.*, Plaintiffs allege that immutable PHI and PII such as sensitive medical information, Social Security numbers, names, and birth dates were accessed by unauthorized persons, Complaint, ¶ 363. Many Plaintiffs further allege that their personal information, including, **but not limited to**, Social Security numbers, have been found

9

available for purchase on the dark web.   Complaint, ¶¶  26 ("Plaintiff A.W.'s PHI and PII, including her Social Security number, has been found available for purchase on the dark web") (emphasis added), 27 (same for Plaintiff B.W.); 99 (same for Plaintiff M.S.); 124 (same for Plaintiff A.B.); 149 (same for Plaintiff A.L.); 206 (same for Plaintiff Lee); 230 (same for Plaintiff A.H.); 252 (same for Plaintiff Clark's three children, J.C., J.C., and E.M.).[4]   Thus, Plaintiffs have pled the required "evidence of some misuse of class members' data" to support substantial risk of future identity theft.  *Tsao*, 986 F.3d at 1334.

Defendants' argument that alleged risk of future harm is not injury-in-fact, (Motion at 6), also falls to the United States Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  *Ramirez* stands for the principle that Congress may not "us[e] its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2205 (quotations omitted).  Thus, for federal statutory causes of action, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* (emphasis in original).  The Court thus distinguished federal statutory claims from state common law claims, explaining "[v]arious intangible harms can also be concrete," where such intangible harms have "traditionally [been] recognized as providing a basis for lawsuits in American courts," including "for example, reputational harms, disclosure of private information, and intrusion upon seclusion," or ones "specified by the Constitution itself." *Id.* at 2204 (emphasis added).  Here, unlike in *Ramirez*, Plaintiffs do not assert federal statutory rights that are not dependent on any actual harm.  By asserting, *inter alia*, that Defendants owed common law tort and contractual duties to them,

---

[4] As discussed above, Defendants' argument that Plaintiffs fail to allege that their Social Security numbers were "actually involved" in the breach, Motion at 8, illustrates why discovery should commence.

Plaintiffs have alleged *de facto* injuries "'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring) ("In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded.").

Defendants' own actions reflect that there is the heightened risk of future harm. Plaintiffs received Defendants' data breach notices and followed their recommendation to contact a credit reporting service and "to carefully review credit reports and statements sent from providers as well as [victims'] insurance compan[ies] to ensure that all account activity is valid." Complaint, ¶ 395. "It is unlikely that [the defendant] did so because the risk is so ephemeral that it can safely be disregarded." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015).

### 2. Plaintiffs have alleged other Article III injuries.

As a result of the imminent threat of future harm caused by the data breach, Plaintiffs were required, among other things, to spend time they otherwise would have spent on other pursuits on, instead, addressing the effects of the breaches. Such losses have consistently been recognized as sufficient injury in data breach cases. *See, e.g.*, *Remijas*, 794 F.3d at 694.[5] Circuit courts have held that mitigation expenses following an unauthorized disclosure of PII constitute injuries sufficient to confer standing. *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d

---

[5] *See also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 162 (1st Cir. 2011); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 425 (E.D. Va. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460 (D. Md. 2020); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *1 (S.D.N.Y. May 7, 2019); *Bass v. Facebook*, 394 F. Supp. 3d 1024, 1035 (N.D. Cal. 2019). So, too, has lost value. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *15, *25 (N.D. Cal. May 27, 2016). And, the costs Plaintiffs have incurred and will incur are concrete injuries. *See Democratic Ass'n v. Brandi*, 2014 WL 2589279, at *7 (D. Conn. June 10, 2014) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013); *Hedges v. Obama*, 724 F.3d 170, 195-96 (2d Cir. 2013)).

42, 59 (D.C. Cir. 2019) ("Because [plaintiffs] adequately allege a substantial risk of future identity theft, any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact.").[6]

### B.  At a minimum, Plaintiff Rumely's negligence claim will survive.

A reading of the Complaint makes clear that, at a minimum, Defendants acted negligently when, despite learning of the first breach on June 19, 2020, they failed to protect Plaintiffs' and Class Members' personal information from being exposed in a second breach just two weeks later. Complaint at p. 3.  Defendants' arguments regarding Plaintiff Rumely's negligence claim are plainly unavailable; at least this claim will certainly survive the motion to dismiss.

Defendants do not dispute that they owed Plaintiff Rumely a common-law duty to safeguard his information.  Motion at 34.  Nor do they dispute that Plaintiff Rumely alleged causation.  *Id.* at 37 (referring only to Section I.B involving Plaintiffs Larsen, Cohen, A.W., Baum, Clark, Lee, Soto, and Nielsen).  Instead, Defendants maintain that Plaintiff Rumely's negligence claim is barred by the economic loss doctrine and fails because he has not alleged any legally cognizable damages.  *Id.* at 37-40.  Neither argument has merit.

### 1.  Neither California's, Florida's, nor New York's economic loss doctrine applies.

Defendants do not specify which state's economic loss doctrine allegedly bars Plaintiff

---

[6] *See also Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) ("Because the injuries alleged by the Plaintiffs are not speculative, the costs of mitigating measures to safeguard against future identity theft support the other allegations and together readily show sufficient injury-in-fact."); *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963. 967-68 (7th Cir. 2016) (mitigation expenses, *e.g.*, purchasing credit monitoring, and time and effort monitoring financial statements, qualify as "actual injuries"); *Galaria v. Nationwide Mutual Ins. Co.*, 663 F. App'x 384, 388-89 (6th Cir. 2016) (mitigation expenses, including the time and money spent monitoring bank statements and credit, are reasonable, concrete injuries); *Remijas*, 794 F.3d at 694 (after being notified that her payment card was at risk, purchase of credit monitoring was a reasonable mitigation expense and a concrete injury).

Rumely's negligence claim.  Florida choice of law rules govern this diversity action, and in tort cases, Florida applies the "significant relationship" test to find the state with the most significant contacts in relation to the occurrence and to the parties.  *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1218 (S.D. Fla. 2008).  Whether discovery reveals that Plaintiff's home state law – California – applies, or that Defendants' home states law – Florida and New York – apply, the economic loss doctrine will not bar Plaintiff Rumely's negligence claim.

### i.  California's economic loss doctrine does not apply.

California courts routinely reject application of the economic loss rule in data breach cases. While the general rule in California is that purely economic losses are not recoverable in tort, *see Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019), allegations like those here— a defendant's deficient security practices resulted in a breach and the compromise of plaintiff's personal information—give rise to the recognized "special relationship" exception to the general rule.  *See, e.g.*, *Yahoo!*, 313 F. Supp. 3d 1113, 1132–33 (N.D. Cal. 2018); *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015).  "'What [California courts] mean by special relationship is that the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out.'"  *Southern California Gas Leak Cases*, 441 P.3d 881, 887 (Cal. 2019).  Six factors determine whether a "special relationship" exists under California law:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.

> *Yahoo!*, 313 F. Supp. 3d at 1132-33.

All six factors must be considered by the court, and the presence or absence of one factor

is not decisive. *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 606 (9th Cir. 2008). The same factors apply whether or not the parties are in contractual privity. *See J'Aire*, 24 Cal. 3d at 804.

Each of these factors supports finding a special relationship between Defendants and Plaintiff Rumely: (1) Plaintiff (as legal guardian of his minor children) was an intended beneficiary of the transaction wherein Defendants took possession of his children's personal information to them medical services. Complaint, ¶¶ 1, 41; (2) Plaintiff alleges facts demonstrating that it was foreseeable that the mishandling of his children's personal information would cause them and him harm. *Id.* at ¶¶ 279-303 (personally identifiable information has value); *id.* at ¶¶ 333-348 (Defendants were on notice of cyber-attack threats in the healthcare industry and of the inadequacy of their data security); (3) and (4) Plaintiff was harmed when, as a direct result of Defendants' failure to protect his children's personal information, hackers obtained unauthorized access to that information, causing Plaintiff to lose privacy, the value of the personal information, and the benefit of his bargain with Defendants; suffer from increased risk of identity theft and fraud; expend time, money, and effort verifying the legitimacy of the data breach, exploring and enrolling in credit monitoring and identity theft insurance options, and self-monitoring accounts on behalf of himself and his children to mitigate the resulting harm. *Id.* at ¶¶ 43-55; (5) Defendants are morally culpable because they knew they were a target for cyber-criminals and that their data security was inadequate – especially after the first breach, *id.* at ¶¶ 333-348, they were hacked twice, and Defendants did not inform affected individuals for months after the breaches; (6) Finally, Defendants' failure to adequately protect Plaintiff Rumley's personal information "implicates the consumer data protection concerns expressed in California statutes, such as the [Customer Records Act]." *See Yahoo!*, 313 F. Supp. 3d at 1132-33; *Anthem*, 162 F. Supp. 3d 953, 990 (N.D. Cal.

14

2016) ("various California statutes . . . reflect California's public policy of protecting customer data") (quotations omitted). Thus, Plaintiff Rumely has adequately alleged a special relationship with Defendants, making California's economic loss doctrine inapplicable. *See Yahoo!*, 313 F. Supp. 3d at 1132-33; *Corona*, 2015 WL 3916744, at *5 (both rejecting application of the economic loss doctrine for harms arising out of data breach).[7]

> ii.     **Neither Florida's nor New York's economic loss rule applies.**

Florida's economic loss rule is expressly limited to the products liability context, and thus does not apply here. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1030 (11th Cir. 2017); *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016). The same is true of New York's economic loss doctrine. *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *9 (S.D.N.Y. May 7, 2019) (declining to apply economic loss rule to data breach claim); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749-50 (S.D.N.Y. 2017) (citations omitted).

> 2.  **Plaintiff Rumely has alleged adequate damages to support his negligence claim.**

Plaintiff's injuries support a claim for damages, just as they create standing. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("The plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things

---

[7] Moreover, the loss of time devoted to mitigating the harm from a data breach and the loss in value of one's personal information, are more than purely economic losses. Plaintiff alleges each of these forms of harm. Complaint, ¶¶ 43, 46, 47, 50. Therefore, the economic loss doctrine does not apply for this reason as well. *See Bass*, 394 F. Supp. 3d at 1039 ("Here, plaintiff alleged his loss of time as a harm and so does not allege pure economic loss. The economic loss rule therefore does not apply."); *Hameed-Bolden*, 2018 WL 6802818, at *5 (recognizing that loss of value of personal information may represent a form of property damages, not merely economic losses).

straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing.").[8]

### V. Conclusion.

Defendants' Motion fails to articulate any specific showing of prejudice or burden sufficient to support a stay of discovery. Moreover, at least some of Plaintiffs' claims are likely to survive the motion to dismiss, and the scope of discovery will be the same for those claims. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

---

[8] *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2020 WL 6290670, *24 (D. Md. Oct. 27, 2020) (concluding court's prior opinion finding the plaintiffs had alleged injury in fact premised on a substantial increased risk of identity theft and costs incurred to mitigate that risk established plaintiffs had likewise stated a claim for damages under their state law claims); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) ("mitigation expenses satisfy the injury requirements of negligence; otherwise Plaintiffs would face an untenable Catch–22 . . . Plaintiffs were required to take reasonable steps to mitigate the consequences of the data breach; they could not passively wait for their identities and money to be stolen"); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 n.15 (E.D. Va. 2020) ("Because the Plaintiffs have satisfactorily alleged that the risk of harm has occurred or is, at the least, sufficiently imminent, the time and expense incurred as a reasonable reaction to a risk of this harm [is] . . . sufficient to establish damages under state law.") (citing Restatement (Second) of Torts § 919(1) (1979) ("One whose legally protected interests have been endangered by the tortious conduct of another is entitled to recover for expenditures reasonably made or harm suffered in a reasonable effort to avert the harm threatened.")); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1317 (N.D. Ga. 2019) (concluding plaintiffs' mitigation costs were sufficient "to state cognizable harms to support their tort claims."); *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016) ("Plaintiffs have suffered damages by taking measures to both 'deter' and 'detect' identity theft," spending time addressing issues arising from the data breach, "including addressing the fraudulent activity and checking his accounts and credit report for fraud").

Dated: September 27, 2021

Respectfully submitted,

*Maureen M. Brady*

Maureen M. Brady      MO#57800
Lucy McShane            MO#57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone: (816) 888-8010
Facsimile: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
            lmcshane@mcshanebradylaw.com
*Co-Lead Counsel for Plaintiffs and the
Proposed Classes*

William B. Federman (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com
*Co-Lead Counsel for Plaintiffs and the
Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th of September 2021, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

*Maureen M. Brady*

*Co-Lead Counsel for Plaintiffs and the
Proposed Classes*

17