UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:21-md-02994-RAR

In re:

**MEDNAX SERVICES, INC.,
CUSTOMER DATA SECURITY BREACH LITIGATION**
_____/

This Document Relates to All Actions

**DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Mednax Inc., Mednax Services, Inc., Pediatrix Medical Group,[1] and Pediatrix Medical Group of Kansas, P.C. (collectively, "Mednax") and American Anesthesiology, Inc. ("AA") move to dismiss Counts IV, V, VII, and VIII of Plaintiffs' Consolidated Second Amended Complaint for Damages [ECF No. 115 ("Second Amended Complaint" or "SAC")].

**INTRODUCTION**

This Court's Order on Defendants' Motion to Dismiss the First Amended Complaint [ECF No. 104 ("MTD Order")] gave Plaintiffs very clear instructions about what they needed to do to cure the deficiencies this Court found in the claims it dismissed without prejudice.[2] But Plaintiffs did not comply with those instructions—and do not state viable claims for relief—for three of those counts: Count IV, under the Florida Deceptive and Unfair Trade Practices Act; Count V, under the Missouri Merchandising Practices Act; and Count VIII, under the Virginia Consumer

---

[1] "Pediatrix Medical Group" is named as a Defendant in several of the individual actions that were consolidated into this MDL but is not a legal entity.

[2] For clarity, the previous iteration of Plaintiffs' complaint—the Consolidated Amended Complaint for Damages [ECF No. 71]—is referred to as the "First Amended Complaint." For the Court's convenience, attached hereto as Exhibit A is a redline comparison of the First Amended Complaint and the Second Amended Complaint.

1

Protection Act. Those reasserted claims fail because, as discussed below:

- Plaintiffs have abandoned their claims for damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and now only seek declaratory and injunctive relief under that statute (Count IV). But Plaintiffs' new FDUTPA claims fail because Plaintiffs have not plausibly alleged—and cannot establish—that they lack an adequate remedy at law or that they will be irreparably harmed if the proposed relief is not granted. To the contrary, Plaintiffs seek money damages in numerous counts in the Second Amended Complaint, underscoring that they have an adequate remedy at law.

- The Missouri Merchandising Practices Act ("MMPA") claim (Count V) fails for two separate and distinct reasons. First, the MMPA only allows recovery for damages that occur in relation to the sale of "merchandise," which is broadly defined to include goods and services. The Court held that Plaintiffs B.W. and A.W. had not satisfied this element because they had not plausibly alleged that Mednax sold them data security. Plaintiffs B.W. and A.W. have not corrected this deficiency. Indeed, the very nature of Plaintiffs' claims foreclose such an argument given that: (i) the product or service that Mednax—and any affiliated physician practices—sold Plaintiffs was healthcare; and (ii) Plaintiffs do not plausibly allege that their supposed damages occurred in relation to the sale of healthcare; Plaintiffs allege they occurred (if at all) because of the third party criminal cyberattack that forms the basis of this action ("the Security Incident"). The MMPA claim also fails because, as this Court previously held, that statute requires Plaintiffs to allege that Mednax failed to disclose information that it should have known when Plaintiffs A.W. and B.W. received services from Mednax. But Plaintiffs B.W. and A.W still have not alleged when they visited Mednax's affiliated physician practices and therefore have not alleged any

facts from which the Court plausibly could conclude that this element is satisfied.

- To state a valid claim under the Virginia Consumer Protection Act (Count VIII), Plaintiff Nielsen must plausibly allege that Defendants had actual knowledge of alleged data-security deficiencies when she received healthcare. This Court already held that generalized allegations about knowledge of cybersecurity risks in the healthcare industry are not enough. Yet in the Second Amended Complaint, Plaintiff Nielsen tries to rely only on the same insufficient allegations that she relied on before. Those allegations fail again because they say nothing about Defendants' security, let alone plausibly suggest actual knowledge of any deficiency.

In addition, Plaintiffs fail to state a claim under § 349 of the New York General Business Law (Count VII). Though this Court did not dismiss Plaintiffs' § 349 claims in the First Amended Complaint, New York precedent holds that § 349 applies only when the deception of a consumer occurs in New York. The mere fact that AA's headquarters are in New York does not mean § 349 applies. Because Plaintiffs do not plausibly allege that they were deceived in New York or that any part of a relevant transaction with AA occurred in New York, their § 349 claims fail.

For these reasons, and for those discussed below, Counts IV, V, VII, and VIII of Plaintiffs' Second Amended Complaint must be dismissed.[3] Given the intractable problems Plaintiffs face on these four state statutory claims, as well as Plaintiffs' continuing failure to satisfy the pleading standards, these claims should be dismissed with prejudice.

---

[3] Since Plaintiffs B.W. and A.W. do not assert Count V against AA, see SAC ¶ 533, only Mednax moves to dismiss Count V. Similarly, because Plaintiffs do not assert Count VII against Mednax, see SAC ¶ 562, only AA moves to dismiss Count VII.

## ARGUMENT AND CITATION TO AUTHORITIES[4]

A.   **Plaintiffs Are Not Entitled to the Declaratory and Injunctive Relief They Seek Under the Florida Deceptive and Unfair Trade Practices Act (Count IV).**

This Court previously dismissed Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act because the damages they sought were "consequential damages insufficient to state a claim under FDUTPA." MTD Order at 32. In response to that ruling, Plaintiffs abandoned their quest to recover damages for a violation of that statute; they made no effort to remedy their defective allegations about damages. Plaintiffs instead reworked their FDUTPA claims to seek only injunctive and declaratory relief. *See* SAC ¶¶ 531-532. These new FDUTPA claims fail for four reasons, though.

***First***, as this Court recognized in dismissing Plaintiff Rumely's California Unfair Competition Law and Consumer Legal Remedies Act claims, Plaintiffs who bring claims that are "equitable in nature . . . must allege that [they] lack[] an adequate remedy at law." MTD Order at 37 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021)). This requirement applies to Plaintiffs who seek injunctive relief. The Supreme Court has explained that it is "well-established" that a party seeking injunctive relief must show "that it has suffered an irreparable injury" and "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[5]

---

[4] Defendants reference the Second Amended Complaint's relevant factual allegations because they must be taken as true in assessing this motion to dismiss, which is brought under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants do not concede and vigorously dispute the veracity of the allegations. Because this Motion to Dismiss is limited to just four claims, Defendants will address the applicable factual allegations within their argument.

[5] Federal law—not state law—governs the availability of equitable relief in federal court. *See, e.g., Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945) ("State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction

This same requirement also applies to claims for declaratory relief. *See Bolin v. Story*, 225 F.3d 1234, 1242-43 (11th Cir. 2000); *Azure Coll., Inc. v. Bank of Am., N.A.*, 2022 WL 180290, at *2 (S.D. Fla. Jan. 19, 2022) (Ruiz, J.); *Point Conversions, LLC v. Lopane*, 2021 WL 328533, at *17 (S.D. Fla. Jan. 8, 2021), *R&R adopted*, 2021 WL 327536 (S.D. Fla. Feb. 1, 2021) (Ruiz, J.). And, importantly, a legal remedy need not be successful to be considered "adequate." *See Justice v. United States*, 6 F.3d 1474, 1482 n.16 (11th Cir. 1993).

Plaintiffs, however, do not even attempt to allege that they lack an adequate legal remedy. To the contrary, Plaintiffs seek money damages throughout the Second Amended Complaint, asserting both common-law negligence claims and state statutory claims for damages. *See Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) (explaining that "cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity"). Plaintiffs' FDUTPA claims stem from the Security Incident, just like their common-law negligence and state statutory claims.[6] Thus, Plaintiffs' demand for money damages supposedly incurred as a result of the Security Incident shows that Plaintiffs do not lack an adequate remedy at law. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021)

---

is available as an alternative tribunal to the State's courts."); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999) (explaining that a federal court's authority to grant equitable relief is limited to the authority possessed by the English Court of Chancery at the time of the Founding); *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (holding that federal law, not state law, governed the appointment of a receiver in equity); *Sonner*, 971 F.3d at 845 (holding that "federal equitable principles" apply to suits for equitable relief under state law); *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 972-73 (10th Cir. 2019) (holding that a district court erred by failing to apply the federal permanent-injunction standard instead of the state-law standard).

[6] The problem is not that Plaintiffs assert conflicting claims; the issue is instead whether equitable remedies are available at all. Where, as here, Plaintiffs do not plausibly allege that they lack an adequate legal remedy, Plaintiffs fail to state a valid claim for equitable relief. *See McElrath v. ABN AMRO Mortg. Grp.*, 2012 WL 463893, at *8 (S.D. Fla. Feb. 13, 2012); *Amauri do Nascimento v. Chase Home Fin., LLC*, 2009 WL 10698331, at *9 (S.D. Fla. June 11, 2009).

5

(dismissing a claim for an injunction because the plaintiffs "failed to allege that the legal remedies they seek for the injuries they incurred as a result of Defendants' past failure to protect their information are inadequate"). This dooms Plaintiffs' claims for injunctive and declaratory relief under FDUTPA.

***Second***, injunctive relief is available only if a violation of a legal right "will result in irreparable injury if the injunction does not issue." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). The same requirement governs requests for declaratory relief. *Azure Coll.*, 2022 WL 180290, at *2. And, in general, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiffs do not allege any facts from which this Court could plausibly conclude they would be irreparably harmed if the injunctive or declaratory relief they seek under FDUTPA is not issued. To the contrary, the relief Plaintiffs seek under FDUTPA is based on the same factual allegations as their claims for damages. *See, e.g.*, SAC ¶¶ 521, 603 (incorporating the same factual allegations into the FDUTPA and negligence claims). This "indicates that their harms are compensable through money damages, and precludes a finding of irreparable harm." *Bohnak v. Marsh & McLennan Cos.*, 2022 WL 158537, at *6 (S.D.N.Y. Jan. 17, 2022) (dismissing claim for injunctive relief in a data-breach case).

***Third***, Plaintiffs are not entitled to the injunctive relief they seek under FDUTPA because Plaintiffs have not plausibly alleged "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). "Injunctive relief," after all, "is inherently prospective in nature." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 734 (11th Cir. 2018).[7] Though

---

[7] *See also Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) ("Equitable

this Court held that Plaintiffs have Article III standing to sue for injunctive relief, it did so on the grounds that certain personal information allegedly compromised in 2020 (in the Security Incident) might be misused. *See* MTD Order at 10-14. That is a question about potential future effects of what has already happened. But the injunction that Plaintiffs seek under FDUTPA is almost exclusively about requiring Defendants to make security changes to prevent *other* data breaches from occurring in the future.[8] *See* SAC ¶ 532. For example, Plaintiffs want this Court to order Defendants to "engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis," as well as to "conduct regular database scanning and securing checks." SAC ¶ 532(a), (f). Yet Plaintiffs have not plausibly alleged that Defendants will be the victim of another, separate data breach—much less a breach that would put Plaintiffs' personal information at risk. Plaintiffs therefore cannot pursue the injunctive relief that they seek. *See Beck v. McDonald*, 848 F.3d 262, 277-78 (4th Cir. 2017) (affirming the dismissal of a claim for injunctive relief despite two prior data breaches); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *26 (D. Mass. Dec. 31, 2019)(dismissing an equitable claim when the plaintiff sought an injunction to prevent future breaches), *R&R adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *15-16 (D. Minn. Mar. 7, 2018) (dismissing a claim for injunctive relief under a state statute despite two prior

---

relief is a prospective remedy, intended to prevent future injuries. In contrast, a claim for money damages looks back in time and is intended to redress a past injury.").

[8] The only part of the injunction Plaintiffs seek under FDUTPA that arguably has anything to do with alleged effects of the Security Incident is a request that this Court order Defendants to "meaningfully educate their current and former patients about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps [they] must take to protect themselves." SAC ¶ 532(h). But, as explained above, that requested injunctive relief is foreclosed because Plaintiffs have not plausibly alleged that they lack an adequate legal remedy or that they will suffer irreparable injury absent an injunction.

data breaches), *aff'd*, 925 F.3d 955 (8th Cir. 2019).

***Fourth***, even if Plaintiffs could plausibly allege that they lack an adequate legal remedy and would suffer irreparable injury (they cannot), this Court should still exercise its substantial discretion to deny Plaintiffs' request for declaratory relief.  The Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so.[9]  In other words, declaratory relief is discretionary.  *See Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1284 (11th Cir. 2021).  Here, a declaration that a defendant "violated" FDUTPA, SAC at 131, ¶ E, would serve no useful purpose.  Plaintiffs' claims are all based on the same set of facts, and Plaintiffs give no reason to think those other claims are inadequate to resolve the issues.  *See Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla. 2019) (Ruiz, J.) ("Where, as here, the declaratory judgment count would serve no useful purpose because the issues will be resolved by another claim, courts generally decline to entertain the declaratory judgment count."); *Azure Coll.*, 2022 WL 180290, at *2 (similar).

In short, because Plaintiffs abandoned their quest for monetary damages under FDUTPA, and because they cannot obtain equitable relief or declaratory relief under FDUTPA, Count IV of the Second Amended Complaint fails.

### B. Plaintiffs B.W. and A.W. Fail to State a Claim Against Mednax Under the Missouri Merchandising Practices Act (Count V).

Plaintiffs B.W. and A.W. have not stated a claim under the Missouri Merchandising Practices Act for two reasons.

---

[9] Federal courts treat requests for declaratory relief as being brought under the federal Declaratory Judgment Act, not under state law.  *See, e.g.*, *Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337, 1346 n.6 (S.D. Fla. 2012), *aff'd*, 622 F. App'x 890 (11th Cir. 2015) (per curiam).

8

***First***, to state a claim under that statute, a plaintiff must allege that she sustained an "ascertainable loss in connection with the purchase or lease of merchandise." MTD Order at 35. Though the provision of healthcare services can constitute "merchandise" under the MMPA, *see* Mo. Rev. Stat. § 407.010 (defining "merchandise" to mean "any objects, wares, goods, commodities, intangibles, real estate or services"), this Court held that Plaintiffs B.W. and A.W. had not plausibly alleged this element because any alleged injuries Plaintiffs suffered from the Security Incident did not arise out of the provision of healthcare to Plaintiffs. *See* MTD Order at 36.

Plaintiffs B.W. and A.W. attempt to revive this claim by adding the single conclusory allegation that "[p]rivacy and the security of Plaintiff's and the Missouri Subclass Members' PHI and PII is part of the services provided by Defendant and paid for by Plaintiff and the Missouri Subclass Members." SAC ¶ 548. But this mere recitation of an element of a claim under the MMPA is unsupported by any factual allegations. Plaintiffs B.W. and A.W. do not plausibly allege any sale of security services—for example, they do not allege that they paid Mednax anything at all for data security, what data security services they purchased, or the amounts that they allegedly paid for those data security services.

The absence of these allegations is not surprising. As the Court already recognized, "patients who seek medical care do so for the sake of their personal health—not for the sake of *information* about their personal health." MTD Order at 36 n.14 (emphasis in original). Plaintiffs' suggestion to the contrary is both unsupported by the Second Amended Complaint and ignores the reality of the healthcare industry, where the amount paid, if any, is often dictated by a patient's insurance coverage. Moreover, as Plaintiffs allege throughout the Second Amended Complaint, federal law governs Mednax's obligation to protect patient data, and that law applies equally

regardless of what, if anything, a patient pays for the services she receives. *See* MTD Order at 46-47 ("Plaintiffs' allegations reveal only that they provided their personal information as required to receive healthcare services from Defendants—not data security services beyond the privacy requirements already imposed on Defendants by federal law." (internal citation omitted)). Without these allegations, Plaintiffs B.W. and A.W. cannot state a plausible claim to relief under the MMPA. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (plaintiff could not state MMPA claim against a defendant that "did not sell data security services").

*Second*, because the MMPA requires Plaintiffs B.W. and A.W. to allege that Mednax failed to disclose information that it should have known at the time of the relevant transactions, this Court previously held that Plaintiffs B.W. and A.W. must allege "when they received healthcare services from physicians affiliated with Defendants." MTD Order at 34. Despite this clear roadmap from the Court, Plaintiffs B.W. and A.W. have not done so. Thus, there is no basis to plausibly conclude that Mednax failed to disclose information that it should have known when Plaintiffs B.W. and A.W. received healthcare services from a physician practice affiliated with Mednax, and their MMPA claims must be dismissed.[10] *Wright v. Bath & Body Works Direct, Inc.*, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012).

C. **Plaintiff Nielsen Fails to State a Claim Under the Virginia Consumer Protection Act (Count VIII).**

As this Court explained before, to state a valid claim under the Virginia Consumer

---

[10] Even if Plaintiffs B.W. and A.W. had alleged when they received healthcare services from physicians affiliated with Mednax, their MMPA claims would still fail. Though Plaintiffs have added conclusory allegations about what Mednax allegedly knew or should have known, *see* SAC ¶¶ 537-40, the only factual allegations that they cite to support these allegations are the same general allegations about "studies showing an increase in healthcare related cyberattacks as of 2014" that were included in the First Amended Complaint and that this Court previously rejected as "insufficient to reveal[] deficiencies in Defendants' security measures in particular." MTD Order at 35.

Protection Act, Plaintiff Nielsen had to plausibly allege "that Defendants knew . . . about any alleged data security flaws when [Plaintiff Nielsen] received healthcare services." MTD Order at 34; *see also Allen v. FCA US LLC*, 2017 WL 1957068, at *2-3 (W.D. Va. May 10, 2017); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001) ("We hold that a violation of the [VCPA] founded upon the nondisclosure of a material fact also requires evidence of a knowing and deliberate decision not to disclose the fact."). The First Amended Complaint did not plausibly allege that Defendants had any such actual knowledge, so this Court dismissed the VCPA claim in that complaint. MTD Order at 34-35.

Yet in the Second Amended Complaint, Plaintiff Nielsen did not add a single new allegation to address this deficiency. At best, she tries to rely on the same general "studies showing an increase in healthcare related cyberattacks" that Plaintiffs cited in the First Amended Complaint. MTD Order at 35; *see* SAC ¶ 581. But this Court rejected that very argument when it dismissed the prior VCPA claim. MTD Order at 35. The Court explained that such generalized allegations say nothing about Defendants' data security specifically, let alone whether Defendants had actual knowledge of any alleged data-security deficiencies. *See id.* This Court's logic applies with equal force to the Second Amended Complaint. Thus, the VCPA claim in Count VIII must be dismissed.

D.   **Plaintiffs Fail to State a Claim Against AA Under the New York General Business Law (Count VII).**

The Second Amended Complaint asserts claims against AA under § 349 of the New York General Business Law. The First Amended Complaint raised the same claims, which this Court declined to dismiss. MTD Order at 30. This Court wrote that because AA "is headquartered in New York," then "to the extent it was responsible for overseeing or contributing to the protocols for properly safeguarding Plaintiffs' and putative Class Members' PHI and PII, it did so in New

York." *Id.* Respectfully, however, that is not enough to state a valid § 349 claim. AA therefore moves to dismiss Count VII of the Second Amended Complaint.

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). A § 349 claim has three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (citation omitted). The text of § 349 also includes a territorial restriction: "*in this state.*" N.Y. Gen. Bus. Law § 349(a) (emphasis added).

"Thus, to qualify as a prohibited act under [§ 349], *the deception* of a consumer *must occur in New York.*" *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (emphasis added). An appropriate, narrow reading of that territorial requirement looks at where a plaintiff is deceived. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122-23 (2d Cir. 2013) (citing cases focusing on where deception occurs).[11] But even under a more lenient approach, § 349's territorial restriction demands that at least part of "the transactions at issue must have occurred in New York." *Egan v. Telomerase Activation Scis., Inc.*, 8 N.Y.S.3d 175, 176 (App. Div. 1st Dep't 2015); *see Cruz*, 720 F.3d at 122 (focusing on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties'" (citation omitted)).[12]

---

[11] *See also Ovitz v. Bloomberg L.P.*, 909 N.Y.S.2d 710, 712 (App. Div. 1st Dep't 2010) ("The complaint also fails to state a cause of action under General Business Law § 349. Plaintiff, a resident of Illinois, was not deceived in New York State." (citation omitted)), *aff'd*, 967 N.E.2d 1170 (N.Y. 2012).

[12] *See also, e.g.*, *Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 587 (App. Div. 3d Dep't 2010) ("General Business Law § 349 requires the deceptive transaction to have occurred in New York and, therefore, no viable claim under the statute would lie for potential class members

Plaintiffs, however, do not (and cannot) plausibly allege that they were deceived in New York. Nor can Plaintiffs plausibly allege that even part of a relevant transaction occurred in New York. If there were a "transaction" between a Plaintiff and AA, then that transaction occurred when that Plaintiff received medical care. Once treatment was provided, the transaction ended. But not one Plaintiff alleges ever being in New York for any reason, much less receiving medical care from an AA-affiliated doctor in New York. Instead, only Plaintiffs Nielsen and Lee allege receiving notice letters from AA, *see* SAC ¶¶ 191, 218, and this Court previously wrote that those Plaintiffs allegedly provided their PHI and PII to Defendants in their "home states"—that is, in Virginia and South Carolina. MTD Order at 8; *see* SAC ¶¶ 190, 217. The other Plaintiffs allege no contacts with—and no transactions with—AA. And, in any event, this Court read the First Amended Complaint to allege that *Florida*—not New York—"is where [Plaintiffs'] data was maintained . . . and [where] Defendants' security protocols allegedly broke down." MTD Order at 8. The Second Amended Complaint does not allege facts that would shift the focus to New York.

Where AA maintains its headquarters has no bearing on the viability of a § 349 claim. *See In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (explaining that it was "irrelevant" that a defendant had its principal place of business in New York; rejecting conclusory assertions about where conduct occurred). The mere fact that AA is based in New York does not mean that all transactions involving AA necessarily take place there. Nor does it mean that everything AA allegedly does (or fails to do) at its headquarters constitutes a "transaction." Just as alleged "oversight failures" are not deceptive practices under § 349, *In re*

---

from outside the state who were victimized by defendant's practices." (citation omitted)); *Drizin v. Sprint Corp.*, 785 N.Y.S.2d 428, 429 (App. Div. 1st Dep't 2004) (similar).

13

*Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *32 (D.N.J. Dec. 16, 2021), neither are such alleged "oversight failures" a "transaction." So even if this Court were to infer that some data-security-related issue happened at AA's headquarters, that says nothing about where any "transaction" with (or purported "deception" of) a Plaintiff took place. As a result, Plaintiffs fail to state plausible § 349 claims.

Precedent makes this clear. In *Wright v. Publishers Clearing House, Inc.*, for instance, New York-based defendants allegedly "hatched" a deceptive advertising scheme "in New York," "sent the relevant advertising materials from New York," and "received payment and processed orders in New York." 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020). But the *Wright* court *dismissed* the § 349 claim against those defendants. *Id.* at 112. It explained that "transactions occur where the consumer viewed the advertisement or purchased the product," and the *Wright* plaintiffs had not alleged their transactions took place in New York. *Id.* Similarly, the court in *Fishon v. Peloton Interactive, Inc.* held that not even "part" of a plaintiff's "specific transaction" occurred in New York—even though the plaintiff alleged that the "deceptive conduct was organized and perpetrated in [the defendant's] New York headquarters" and that the plaintiff's payment to the defendant ended up in a New York bank account. 2021 WL 2941820, at *4 (S.D.N.Y. July 12, 2021).[13] As in *Wright* and *Fishon*, Plaintiffs' arguments for applying § 349 boil down to the fact that AA is headquartered in New York. But "'clever re-articulations'" of a defendant's principal place of

---

[13] *See also, e.g., Goshen*, 774 N.E.2d at 1196 (rejecting a § 349 claim by a Florida plaintiff who alleged a deceptive scheme was "conceived and orchestrated in New York"; explaining that § 349 "was not intended to police the out-of-state transactions of New York companies"); *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7-8 (2d Cir. 2012) (rejecting a § 349 claim by a Nevada plaintiff who alleged a New York-based company wrongly charged and retained a fee through deception); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 223 (S.D.N.Y. 2019) (rejecting a § 349 claim against defendants allegedly based in New York); *cf. Haft v. Haier US Appliance Sols.*, 2022 WL 62181, at *14 (S.D.N.Y. Jan. 5, 2022) (holding that merely delivering a product to a New York address is insufficient for § 349 purposes).

14

business are not enough to state a valid § 349 claim. *Fishon*, 2021 WL 2941820, at *4 (quoting *Wright*, 439 F. Supp. 3d at 110)).[14] Count VII of the Second Amended Complaint therefore fails.

## CONCLUSION

For the reasons above, Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act (Count IV), Missouri Merchandising Practices Act (Count V), Virginia Consumer Protection Act (Count VIII), and New York General Business Law (Count VII) are legally deficient. Because Plaintiffs have had multiple opportunities to state a valid claim but have been unable to do so, those claims should be dismissed with prejudice.

Dated: July 1, 2022

/s/ *Kristine McAlister Brown*
Kristine McAlister Brown
Florida Bar No. 443640
Gavin Reinke
M. Ashley Miller
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
kristy.brown@alston.com
gavin.reinke@alston.com
ashley.miller@alston.com

Martin B. Goldberg
Florida Bar No. 827029
LASH & GOLDBERG LLP
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2158
Phone: (305) 347-4040
Fax: (305) 347-3050
mgoldberg@lashgoldberg.com

---

[14] Plaintiffs may cite *Cruz v. FXDirectDealer, LLC*, but the plaintiff in *Cruz* alleged he was deceived while trading on a New York-based online foreign currency exchange. 720 F.3d at 118-19, 123-24. That is, the *Cruz* plaintiff "directly participated in a marketplace located in New York." *Wright*, 439 F. Supp. 3d at 112; *see id.* at 111 (distinguishing *Cruz* in other ways, as well). This case involves no such New York marketplace.

15

*Attorneys for Defendants Mednax, Inc.; Mednax Services, Inc.; Pediatrix Medical Group; and Pediatrix Medical Group of Kansas, P.C.*

*/s/ Lee E. Bains, Jr.*
Lee E. Bains, Jr.
Thomas J. Butler
Caleb C. Wolanek
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: (205) 254-1000
Fax: (205) 254-1999
lbains@maynardcooper.com
tbutler@maynardcooper.com
cwolanek@maynardcooper.com

*Attorneys for Defendant American Anesthesiology, Inc.*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

>*/s/ Kristine McAlister Brown*
>Kristine McAlister Brown
>Florida Bar No. 443640