**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-02994-RAR**

**IN RE:**

**MEDNAX SERVICES, INC.,**
**CUSTOMER DATA SECURITY BREACH LITIGATION**

**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

SUMMARY OF FACTS .......................................................................................................1

LEGAL STANDARD ............................................................................................................4

ARGUMENT.........................................................................................................................5

   I.   THE PROPOSED CLASSES. .....................................................................................5

   II.   THE NAMED PLAINTIFFS HAVE STANDING............................................................6

   III.   THE PROPOSED CLASS IS ADEQUATELY DEFINED AND ASCERTAINABLE. .....6

   IV.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a)..................................6

      A. Joinder of All Proposed Class Members Is Impracticable. ................................6

      B. Defendants' Conduct Related to the Breach Raises Common Legal and Factual
      Questions.. .............................................................................................................7

      C. Plaintiffs' Claims Are Typical of Those of the Class. ........................................7

      D. Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of
      the Proposed Classes. ...........................................................................................8

   V.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(3). ..........................10

      A.   Predominance Is Satisfied. .............................................................................10

      B.   A Class Action Is the Superior Method of Adjudication for This Case........................17

   VI.   THE COURT SHOULD CERTIFY A RULE 23(b)(2) CLASS FOR INJUNCTIVE
      RELIEF. .................................................................................................................18

   VII.   ALTERNATIVELY, THE COURT SHOULD GRANT ISSUE CERTIFICATION UNDER
      RULE 23(c)(4). .....................................................................................................19

CONCLUSION.....................................................................................................................20

i

## **TABLE OF AUTHORITIES**

### CASES

*Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019) ..................................................19

*Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) .........................................10, 17

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) ......................................13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).........................................5, 11

*Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183 (11th Cir. 2009) .......................................................4

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505 (D. Md. 2011)...................16

*Birmingham Steel Corp v. Tenn. Valley Authority*, 353 F.3d 1331 (11th Cir. 2003) .......................4

*Bowe v. Pub. Storage*, 318 F.R.D. 160 (S.D. Fla. 2015) ..............................................................16

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016)......................................13

*Burrows v. Purchasing Power, LLC*, 2012 WL 9391827 (S.D. Fla. Oct. 18, 2012) .....................16

*Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) .........................6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...........................................................................13

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) .........................................................6

*Davidson v. Apple, Inc.*, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .........................................16

*Davis v. S. Bell Tel. & Tel. Co.*, 1993 WL 593999 (S.D. Fla. Dec. 23, 1993) ..............................18

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)...........................................10

*Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310 (S.D. Fla. 2001) ..........................................19

*Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) .............................. 5, 6, 13, 15

*Hines v. Widnall*, 334 F.3d 1253 (11th Cir. 2003).........................................................................8

*Hirsch v. Jupiter Golf Club LLC*, 2015 WL 2254471 (S.D. Fla. May 13, 2015) .........................19

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014)...............................16

*In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .......................13

*In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012)..................................7, 17

*In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015)......................................11

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Derivative Litig.*,
331 F.R.D. 675 (S.D. Fla. 2019) ..........................................................................................4

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352
(W.D. Ky. Dec. 22, 2009) .....................................................................................................12

*In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040 (E.D. Tex. 2012) .......................................8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128
(D. Md. 2022) .......................................................................................................................16

*In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306 (D. Minn.
May 17, 2017)........................................................................................................................9

*In re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003)...............................................19

*Ingram v. Coca–Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .......................................................10

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) .............................19

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983).......................................................................8

*Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859 (11th Cir. 1986)........................................7

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ..........................................................4, 10

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984)...................................8

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018)..............................17

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000)....................................4, 6

*Randolph v. J.M. Smucker, Co.*, 303 F.R.D. 679 (S.D. Fla. 2014)................................................6

*Rosner v. United States*, 2005 WL 8155967 (S.D. Fla. Apr. 11, 2005).......................................12

*Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977 (Fla. 2018) ......................................13

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000) ......................................11

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159
  (11th Cir. 2010) ............................................................................................. 13, 15

*Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002) ................................................17

*Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........................12

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988) ............................................. 11, 12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ..................................................... 10, 15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................................................12

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003) ...................................8

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ........................................................7

*Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140 (W.D. Wash. 2017) .............16

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) .....................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........................................................4, 7, 18

**STATUTES**

Fla. Stat. Ann. § 501.211(1) ............................................................................................18

Wash. Rev. Code Ann. § 19.86.090 ..................................................................................18

**OTHER AUTHORITIES**

*Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009) ...............18

**TREATISES**

1 McLaughlin on Class Actions § 5:23 (17th ed.) ......................................................................14

## INTRODUCTION

Plaintiffs respectfully move for class certification of their claims pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), (b)(2), and if necessary, (c)(4). Pursuant to Fed. R. Civ. P. Rule 23(a) and (g), Plaintiffs further move for an order appointing Plaintiffs as Class Representatives and appointing Federman & Sherwood and McShane & Brady, LLC as Class Counsel.

The common questions of law and fact raised by Defendants' inadequate (indeed, abysmal) data security practices predominate, both in significance and in ability to move the case toward adjudication, over any individual questions, making this action ideal for class treatment. Questions common to the putative class include whether and to what extent Defendants had an obligation to secure its customers' data and whether they failed to meet those obligations. Because the answers to these questions uniformly apply to all Class members, common issues will predominate the trial of all claims. Class certification is further appropriate since the costs for individuals to litigate their claims, which stem from a highly technical Data Breach, would far surpass the individual damages.

## SUMMARY OF FACTS[1]



In December 2020 and January 2021, Defendants disclosed that one or more unauthorized third party(ies) had gained access to Mednax and NAPA/AA employee email accounts and

---

[1] As this Court noted in its Order Granting in Part Defendants' Partial Motion to Dismiss [ECF No. 131], the Court extensively set forth the factual background of this case in the Court's Order granting in Part Defendant's Motion to Dismiss [ECF No. 104]. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-02994, 2022, WL 1468057 (S.D. Fla. May 10, 2022).

[2] Mednax changed its name to Pediatrix Medical Group, Inc. on July 1, 2022. Pediatrix is the nation's largest provider of maternal-fetal, newborn and pediatric subspecialty services. *See* https://www.businesswire.com/news/home/20220621005373/en/Mednax-To-Change-Name-to-Pediatrix-Medical-Group-Inc.-Effective-July-1-2022 (last accessed Oct. 2, 2023).

[3] ████████████, attached as Exhibit 1.

[4] ████████████, attached as Exhibit 2.

[5] ████████████, attached as Exhibit 1.

applications that were hosted through Mednax's Microsoft Office365 platform (the "Data Breach").[6] Mednax discovered this unauthorized intrusion on June 19, 2020.[7]



_____

[6] https://oag.ca.gov/system/files/Attachment%20-%20CA%20Individual%20Notice%20Letters.pdf; https://www.mass.gov/doc/assigned-data-breach-number-18526-american-anesthesiology-inc/download.

[7] *Id.*

[8] ████████████████████, attached as Exhibit 1.

[9] *Id.*

[10] *Id.*

[11] ████████████████, attached as Exhibit 1.



That the healthcare industry is an attractive target of cyber criminals and the susceptibility of employees to phishing schemes is well-known throughout the healthcare industry. ▉▉▉▉▉

---

12 ▉▉▉▉▉, attached as Exhibit 3.

13 ▉▉▉▉▉▉▉▉▉▉, attached as Exhibit 4.

14 ▉▉▉▉▉▉▉▉▉.

15 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, attached as Exhibit 5.

16 ▉▉▉▉.



The story of this Data Breach is one of flagrant inattention to data security and total disregard for the duty to protect PHI. Unfortunately for Plaintiffs and Class Members, they are now and forever at a substantially increased risk for identity theft and fraud, among a host of other damages detailed below.

## LEGAL STANDARD

To obtain class certification under Rule 23, Plaintiffs must meet each of the requirements specified in Rule 23(a), as well as at least one of the three subsections of Rule 23(b). *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Because "class certification decisions require the application of broad and flexible legal standards to unique and complex sets of facts that do not fit squarely within prior precedent," district courts are given wide latitude to decide whether and how to certify a class. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000). The Eleventh Circuit has advised that courts should analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of class certification. *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009).

In the exercise of the court's discretion to certify a class, "it must conduct a 'rigorous analysis' in determining whether Rule 23's pre-requisites have been met*." In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Derivative Litig.*, 331 F.R.D. 675, 682 (S.D. Fla. 2019); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). However, a court should only consider "the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau*, 576 F.3d at 1190. Thus, "a district court does not have a free-ranging 'authority to conduct a preliminary inquiry into the merits of a suit' at the class certification stage

---

17 ███████

'unless it is necessary to determine the propriety of certification.'" *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

## ARGUMENT

**I. THE PROPOSED CLASSES.**

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), (b)(2), and if necessary, (c)(4), Plaintiffs seek certification of the following classes:

- The Nationwide Mednax Class: "All current and former patients of Mednax residing in the United States whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The Nationwide AA Class: "All current and former patients of American Anesthesiology residing in the United States whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The Arizona Subclass: "All current and former Mednax patients residing in Arizona whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The California Subclass: "All current and former Mednax patients residing in California whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The Florida Subclass: "All current and former Mednax patients residing in Florida whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The Maryland Subclass: "All current and former Mednax patients residing in Maryland whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

- The Washington Subclass: "All current and former Mednax patients residing in Washington whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020."

Excluded from the Nationwide Class and Subclasses (hereinafter, collectively, "the Class") are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

The Class meets the requirements for certification with respect to the alleged claims, as set forth below.

## II.   THE NAMED PLAINTIFFS HAVE STANDING.

The first step in the examination of class certification begins with a determination of constitutional standing. *Prado-Steiman,* 221 F.3d at 1280. "[A]t the class certification stage only the named plaintiffs need have standing." *Brinker*, 73 F.4th at 888–89 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019)). Plaintiffs demonstrated their standing in their response to Defendants' motion to dismiss their Consolidated Amended Complaint (*see* Doc. 92 at 24–36), and this Court has held that they have sufficiently established Article III standing. Doc. 104 at 10–23.[18]

## III.   THE PROPOSED CLASS IS ADEQUATELY DEFINED AND ASCERTAINABLE.

"Before establishing the explicit requirements of Rule 23(a), a plaintiff must first establish that the proposed Class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker, Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014). This requirement asks (i) whether members of the proposed class "can be ascertained by reference to objective material," and (ii) whether analysis of that objective criteria is "administratively feasible," such that "identifying class members [would be] a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).

Here, the Class definitions use only objective criteria that limit the Class to current and former patients or Mednax and/or AA residing in the United States, or the respective subclass states, whose PHI and PII was compromised as a result of the Data Breach disclosed beginning in December 2020. The Class is easily identified through Defendants' records of current and former patients and individuals whose PHI and PII was compromised, each of whom was notified of the Data Breach. Such objective indicia of membership in the Class satisfies the ascertainability criteria.

## IV.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a).

### A.   Joinder of All Proposed Class Members Is Impracticable.

To establish numerosity, Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266–67 (11th Cir.

---

[18] All cites to the Docket use the ECF pagination.

2009). While the Eleventh Circuit has not established a fixed number of class members to satisfy the Rule 23 numerosity requirement, it has affirmed certification of a class of "at least thirty-one individual class members," *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ ■ Accordingly, numerosity is plainly satisfied.

### B.   Defendants' Conduct Related to the Breach Raises Common Legal and Factual Questions.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 359 (citation omitted). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Id.*

Here, each Class Member's PII and PHI was compromised in the Data Breach. Because common issues—including the adequacy of Defendants' systems, data security practices, and policies safeguarding patient data—underlie all Class Members' claims, and because Defendants' course of conduct caused all Class Members to be harmed, the commonality requirement is satisfied. In particular, Plaintiffs' negligence claim, which is common to the entire Class, is based on Defendants' failure to secure their PII and PHI and will turn factually on the question of whether Defendants owed a duty to patients with respect to securing their confidential information, the actions Defendants did or did not take to secure their PII and PHI, and whether that conduct (or lack thereof) enabled the Data Breach to occur. The questions of how Defendants' systems failed and were exploited by the attacker will not vary from plaintiff to plaintiff and have common answers that will drive the resolution of this case. *See Dukes*, 564 U.S. at 350.

### C.   Plaintiffs' Claims Are Typical of Those of the Class.

"Like commonality, the test for typicality is not demanding." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012). Typicality "measures whether a significant

---

19 ████████████████████████████████████████████████████████████

████████████████████████████████

nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). Where the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' claims and legal theories arise under the same factual predicate as those of the Class Members. Plaintiffs' and Class Members' PII and PHI was compromised in the same Data Breach, which was caused by Defendants' inadequate data security practices. If Defendants owed a duty to protect the PII and PHI it collected from its patients, then it owed that duty to the entire Class, and common evidence that Defendants' inadequate security protocols and procedures created ripe conditions for the Data Breach will establish Defendants' breach of that duty to the entire Class. Additionally, Plaintiffs and Class Members experienced the same harm of having their PII and PHI exposed to fraudulent misuse and suffered damages typical to the Class, including having unauthorized accounts opened in their names, experiencing increased phishing attempts, and having to monitor their accounts and credit reports for fraudulent activity. Typicality is thus satisfied. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1054 (E.D. Tex. 2012) (finding typicality where "the state-law claims that the Consumer Plaintiffs assert in this case—negligence, breach of contract, and violations of state consumer-protection laws—are recognized in some form in all jurisdictions and therefore available for all [class members.] . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct by [defendant] and a single set of legal theories.") (citations and internal quotation omitted).

### D. Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Proposed Classes.

The adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation and internal quotation marks omitted). Both factors are met here.

8

As demonstrated above, Plaintiffs' claims are common with and typical of the class. Plaintiffs have vigorously prosecuted their claims in this case on their own behalf and on behalf of the putative Class Members. While some Plaintiffs possess claims under particular state statutes, all of their claims are similar in their essence and arise from the same set of facts focused on Defendants' uniform conduct vis-à-vis a single occurrence—the Data Breach. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *7 (D. Minn. May 17, 2017) (finding adequacy in a data breach case: "This class suffered the same injury—theft of personal financial information—and the same risk of future injury. The only difference among class members is in the quantifiable damages suffered, not in the underlying injury.") *aff'd*, 892 F.3d 968 (8th Cir. 2018). Furthermore, there is no respect in which Plaintiffs' claims are antagonistic to absent Class Members. To the contrary, Plaintiffs' success in proving their claims will benefit the Class because their interests are directly aligned with the Class's interests. In addition, the proposed Class Representatives are committed to seeking redress for the allegations contained in the Complaint on behalf of the entire Class.

Plaintiffs have actively participated in the litigation of this matter, conferring on numerous occasions with counsel, responding to discovery requests, reviewing, and commenting on court filings, producing documents, and appearing for their depositions. At this stage of the litigation, there should be no reason to doubt that Plaintiffs are adequate representatives for the Class and will continue protecting Class members' interests at trial.

Plaintiffs' counsel, the law firms of Federman & Sherwood and McShane & Brady, LLC (collectively, "Proposed Class Counsel"), have extensive experience prosecuting class actions and other complex litigation. *See* Exhibit 7 (firm resumes) , attached hereto. Moreover, Proposed Class Counsel have demonstrated their willingness to prosecute this litigation vigorously through investigating the subject claims, drafting the consolidated complaints, opposing Defendants' motions to dismiss, conducting significant discovery, including depositions, hiring experts, expending substantial resources, and preparing and filing this Motion for Class Certification.

For these reasons, Plaintiffs satisfy the adequacy requirement, and upon certifying the Class, the Court should appoint Federman & Sherwood and McShane & Brady as Class Counsel pursuant to Rule 23(g).

## V.     PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(3).

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both requirements are satisfied here.

### A.     Predominance Is Satisfied.

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). In assessing predominance, a district court considers the "relation between common and individual questions in a case." *Id.* "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotations omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotations omitted).

When considering the element of predominance, "[i]t is not necessary that all questions of fact or law be common, but only that *some* questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (emphasis added). The inquiry into "whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay*, 382 F.3d at 1255 (quoting *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)) (alteration in original).

The predominance inquiry "begins, of course with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011). Plaintiffs are

not required to prove every element of their claims is susceptible to class-wide proof. *Amgen,* 568 U.S. at 469. Rather, the Court should assess each element and determine whether those issues that are subject to "generalized proof" predominate over those issues that are subject only to individualized proof. *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000).

> **1.    Common Questions of Liability Predominate Over Individual Issues Regarding Plaintiffs' Negligence Claim.**

The most important liability questions in this case have common answers. What matters for purposes of class certification is not whether this Court or a jury will ultimately agree that Defendants' security measures were inadequate, but whether all Class members' claims will rise or fall together. *Amgen*, 568 U.S. at 459. The answer to that is yes.

As the Court previously found in its choice of law analysis (*see* Doc. 104 at 8, 48), Florida law governs Plaintiffs' negligence claim. Under Florida law, to state a claim for negligence, a plaintiff "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

The Court has already recognized that Defendants owed Plaintiffs a duty to exercise due care in safeguarding Plaintiffs' PII and PHI. Doc. 104 at 48–49. The necessary factual proof related to that duty as well as the question of whether Defendants breached that duty would focus solely on Defendants' conduct rather than individualized questions about Plaintiffs' conduct. *See In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 630, 646 (S.D. Fla. 2015) ("Unique defenses rarely predominate where a common course of conduct is shown."); *accord Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy"). Because all Class Members provided Defendants with their PII and PHI as a condition of receiving medical treatment and all suffered the disclosure and theft of their sensitive personal information, whether Defendants provided inadequate data security and whether that inadequate data security allowed the Breach to happen are common, predominating questions that will be answered the same way for each Class Member: either Defendants failed to maintain proper security measures, policies and procedures or they did not; either Defendants breached their duty to implement and maintain such security measures, or they did not; either the failure to implement those security measures allowed the Breach to occur, or it did not.

11

### 2. Issues of Causation to Not Predominate Over Common Issues.

It is well-settled that "common questions need only predominate; they need not be dispositive of the litigation." *Rosner v. United States*, 2005 WL 8155967, at *5 (S.D. Fla. Apr. 11, 2005). As noted above, the main issue in this case boils down to the common factual contention of whether Defendants' data security practices were reasonable. For this reason, Plaintiffs' negligence claims in this data breach case will not get bogged down in the kind of individualized causation issues that sometimes plague negligence claims arising in other contexts, such as products-defect cases. Those cases often cannot clear the predominance hurdle because "[n]o single happening or accident occurs to cause similar types of physical harm or property damage." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231 (9th Cir. 1996).

By contrast, a negligence claim in a data breach action like this one is particularly suited to certification, as the court held in *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017), *denying reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). There, the court acknowledged the difficulty in certifying some negligence claims but found that with respect to the data breach in that case, "[t]he questions of duty and breach—like the questions of the existence and breach of a contract—are common issues susceptible to proof on a class-wide basis." *Id.* Although the amount that each class member could recover would turn on "individualized questions of causation and damages," the court found that the issues of the defendant's liability for the data breach were "common issues [] pivotal to the resolution of the litigation," and thus predominated over the individual issues. *Id.* (citing *Sterling*, 855 F.2d at 1197 (emphasizing that tort actions arising from "a single course of conduct" are well suited for class resolution)); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) ("Whether [defendant's] conduct (before and during the theft of Plaintiffs' private information) violated the various laws alleged in the Complaints is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members. Without a determination on this common question, there would be no recovery for any of the class members.").

Similarly, here, because the same actions (inadequate data security practices) by the same actors (Defendants) caused the same injury to all Class Members (compromise of their PII and PHI), at the class certification stage, individual issues of causation like the possibility that some Plaintiffs' sensitive personal information may have been exposed to multiple data breaches is "not

a disqualifying causation issue, but rather to be determined at the damages phase." *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *12 (M.D. Fla. Apr. 14, 2021) (further noting the court had the option to decertify the class later "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized"), *vacated in part on other grounds in Brinker*, 73 F.4th 883.[20]

### 3.    Individualized Damages Do Not Defeat Predominance.

As recently as a few months ago, the Eleventh Circuit reiterated that "'the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.'" *Brinker*, 73 F.4th at 893 (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)). "Individualized damages issues predominate if 'computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable' or if 'significant individualized questions go[ ] to liability.'" *Id.* (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016)). "Individualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (internal quotation marks and citation omitted).

The *Brinker* court further explained that "[a]t the class certification stage, all that the named plaintiffs had to prove was that a reliable damages methodology existed, not the actual damages plaintiffs sustained. Plaintiffs must demonstrate that a 'model purporting to serve as evidence of damages in this class action ... measure[s] only those damages attributable to that theory.'" 73 F. 4th at 893 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." *Id.* (quoting *Comcast*, 569 U.S. at 38 (emphasis in original and citation omitted)).

---

[20] Furthermore, it is doubtful multiple data breaches would greatly affect the issue of causation in this case because in Florida, the law of proximate causation "does not require an act to be the exclusive or even the primary cause of an injury in order for that act to be considered the proximate cause of the injury, rather, it need only be a substantial cause of the injury" where the injury "was a foreseeable consequence of the danger created by the defendant's negligent act or omission." *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 982 (Fla. 2018).



This use of "readily-applied mechanical computation" of classwide data is conducive to Rule 23(b)(3) certification. *See* 1 McLaughlin on Class Actions § 5:23 (17th ed.).

Finally, members of the California Subclass are entitled to statutory damages of $1,000 for violation of the CMIA if it is determined that Defendants negligently released their medical information without consent. There is no damages calculation necessary on an individual basis. *Id.*, ¶¶ 87–90.

███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ *See Brinker*, 73 F.4th at 893. Critically, this damages methodology could be "used to establish liability in an individual action." *Id.* at 894 (quoting *Tyson Foods*, 577 U.S. at 458). The methodology is based on the categories of PII and PHI that were actually exposed for each individual Plaintiff or Class Member. Thus, the "damages methodology is not 'enlarging the class members substantive rights' by giving class members an award for an injury they could not otherwise prove in an individual action." *Id.* (quoting *Tyson Foods*, 577 U.S. at 458). As the Eleventh Circuit held in *Brinker*, such a damages model is sufficient at the class certification stage; it is "a matter for the jury' to decide actual damages at trial." *Id.* (quoting *Tyson Foods*, 577 U.S. at 459). ██████████████████

████████████████████████████████████████████████

██████████████████████████████ *Sacred Heart Health Sys.*, 601 F.3d at 1179. Consequently, "[any] individual inquiry into particularized damages resulting from the data breach, such as damages recoverable due to uncompensated loss caused by compromised personal information, does not predominate over the three categories of common damages inquiries analyzed by the plaintiffs' expert." *Brinker*, 73 F.4th at 893.

### 4.   Predominance is Satisfied as to Plaintiffs' Statutory Claims.

Plaintiffs' claims on behalf of the respective state subclasses for violations of California's Consumer Records Act and Confidentiality of Medical Information Act, Florida's Deceptive and Unfair Trade Practices Act, Maryland's Consumer Protection Act, and Washington's Consumer Protection Act, should also be certified.[22] As set forth above, all class members provided their PII and PHI to Defendants and all suffered the theft of that information in the Breach; thus, whether Defendants' inadequate data security and/or uniform misrepresentations or omissions regarding

---

[22] With respect to the Arizona Consumer Fraud Act, Plaintiffs seek only certification of a particular issue under Rule 23(c)(4).

that data security violated these statutes is a common, predominating question that will be answered the same way for each class member.

Likewise, whether class members' harm was caused by Defendants' misrepresentations or omissions regarding the adequacy of their data security can be proven class-wide because class members are entitled to a presumption of reliance on uniform misrepresentations or failures to disclose material information. *See Bowe v. Pub. Storage*, 318 F.R.D. 160, 181–82 (S.D. Fla. 2015) (causation under FDUTPA can be established on a classwide basis because plaintiffs can show causation by establishing that a reasonable person would have relied on the representations); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 341 F.R.D. 128, 160 (D. Md. 2022) ("The use of an objective test to determine materiality allows courts to presume classwide reliance under the MCPA when the alleged omission is uniformly applicable to the putative class.), *vacated on other grounds sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023); *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) ("[T]he MCPA's materiality inquiry is from the objective standpoint of an unsophisticated consumer"); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *16 (N.D. Cal. May 8, 2018) ("[F]ederal and state cases interpreting the WCPA have found that there is a 'a rebuttable presumption of reliance for WCPA fraud claims' . . . . This presumption also renders causation unproblematic because in omissions cases the presumption of reliance resolves causation problems—plaintiffs are presumed to have relied on omissions, and thus the omissions are presumed to have proximately caused plaintiffs' harm.").

Additionally, courts routinely conclude that the practice of maintaining deficient data security for consumer PII itself violates unfair business practices statutes without regard to any misrepresentations or omissions that were made. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226–27 (N.D. Cal. 2014) (maintaining deficient data security violates the UCL's unlawful and unfair prongs); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) (allegation "that Defendants failed to adequately secure his PII[] qualifies as an unfair practice" under the FDUTPA); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017) (failure to maintain adequate data security is unfair business practice under the WCPA).

Because Plaintiffs' claims for Defendants' violations of these statutes can be proven with common evidence of Defendants' inadequate data security and common misrepresentations and

omissions regarding the adequacy of their data security, predominance is satisfied as to these claims.

**B.      A Class Action Is the Superior Method of Adjudication for This Case.**

Superiority under Rule 23(b)(3) requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). The Court must consider (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3).  "The predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018) (citation and internal quotation marks omitted).

Here, class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of the Class Members' claims. The relatively small amount of damages each Class Member has suffered on an individual basis would not justify the prosecution of separate lawsuits. Moreover, the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications of the issues in this action.

Counsel in this action are not aware of any other earlier litigation against Defendants to which any Class Members are parties and in which any question of law or fact controverted in this action is being adjudicated. Plaintiffs also know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action.

## VI.   THE COURT SHOULD CERTIFY A RULE 23(b)(2) CLASS FOR INJUNCTIVE RELIEF.

Class certification of a claim seeking injunctive relief is appropriate when, in addition to the four requirements of Rule 23(a) discussed above, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Dukes*, 564 U.S. at 362–63. Accordingly, the "key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* at 360 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).

The fact that Plaintiffs also seek certification of a (b)(3) damages class should not impact the Court's analysis of whether to also certify a (b)(2) injunctive class. "Nothing in the language of Rule 23 precludes certification of both an injunctive class and a damages class in the same action. In fact, where injunctive relief and damages are both important components of the relief requested, court[s] have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action." *Davis v. S. Bell Tel. & Tel. Co.*, 1993 WL 593999, at \*7 (S.D. Fla. Dec. 23, 1993).

Here, the injunctive relief sought by Plaintiffs meets the Rule 23(b)(2) standard because Defendants acted in a manner common to the Class. Defendants subjected all Class Members' PII and PHI to the same inadequate data security; Class Members' PII and PHI was compromised as a result of those data security deficiencies; Defendants are still in possession of Class Members' PII and PHI; and Defendants still have not adequately secured Class Members' PII and PHI.[23] Injunctive relief is thus needed to remediate Defendants' inadequate data security, which uniformly applies to all class members. ███████████████████████████████████

---

[23] Injunctive relief is also available and can be resolved on a class-wide basis for the respective subclasses' claims under the FDUTPA (Fla. Stat. Ann. § 501.211(1), and WCPA (Wash. Rev. Code Ann. § 19.86.090).

███████████████████████████████████
██████████████████████

Given Defendants' uniform ongoing treatment of the PII and PHI at issue, this is an ideal case for certification of claims for injunctive relief under Rule 23(b)(2). *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697–99 (N.D. Cal. 2019) (certifying Rule 23(b)(2) class seeking declaration of insufficient data security practices and corresponding injunctive relief).

## VII.   ALTERNATIVELY, THE COURT SHOULD GRANT ISSUE CERTIFICATION UNDER RULE 23(c)(4).

Should the Court determine that individualized issues going to causation or damages overwhelms common questions such that a Rule 23(b)(3) class is inappropriate, Plaintiffs request that the Court certify certain specific issues under Rule 23(c)(4).

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *Hirsch v. Jupiter Golf Club LLC*, 2015 WL 2254471, at *1 (S.D. Fla. May 13, 2015); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 317 (S.D. Fla. 2001). Rule 23(c)(4) does not prescribe elements that representatives must show in order to maintain an issue class, but courts recognize its value in resolving cases where, though common questions may not predominate, denying certification of common issues would all but strip class members of their right to seek relief.  Specifically, the Court may certify issues under Rule 23(c)(4) if it materially advances the litigation as a whole, with the focus being "judicial economy and efficiency." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 193 (N.D. Cal. 2015).

Rule 23(c)(4) can be used to certify specific questions, even where the case as a whole does not otherwise satisfy Rule 23(b)(3) predominance. *See, e.g., In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696–97 (N.D. Ga. 2003) (court concluded that "certain negligence issues are appropriate for class treatment"); *Valentino*, 97 F.3d at 1234 ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

Here, the particular issues that would lead to an efficient disposition of the parties' interest include:

---

[24] ██████ ███████.

19

a.  Whether Mednax and/or AA owed a legal duty to Plaintiffs and the class to exercise due care in collecting, storing, using, transmitting, and safeguarding their PII;

b.  Whether Mednax and/or AA breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using, transmitting, and safeguarding their PII;

c.  Whether Mednax and/or AA failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether Mednax and/or AA failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information disclosed and compromised in the Breach; and

e.  Whether Class Members are entitled to damages as a result of Mednax's and/or AA's wrongful conduct.

f.  Whether Mednax's failure to maintain adequate data security was a false promise or misrepresentation within the meaning of the Arizona Consumer Fraud Act.

Because each of these issues may be resolved with common proof and because individualized inquiries do not outweigh common questions for any of these issues, certifying these issues for class treatment will lead to the efficient and fair answer to these issues once for all Class Members rather than in piecemeal litigation. Accordingly, if the Court finds that the Plaintiff has not met the requirements of Rule 23(b)(2) and/or Rule 23(b)(3), it should certify the above issues for class treatment.

## CONCLUSION

Based on the above, Plaintiffs have established all of the prerequisites for class certification under Rule 23(a), Rule 23(b)(3) for damages, Rule 23(b)(2) for injunctive relief, and alternatively Rule 23(c)(4) for issue certification. Plaintiffs therefore respectfully request that the Court enter an Order granting their Motion for Class Certification, certifying this case as a class action pursuant to Rules 23(a), 23(b)(3), and 23(b)(2). Alternatively, Plaintiffs respectfully request that the Court enter an Order certifying common issues under Rule 23(c)(4). Plaintiffs further request that this Court appoint Plaintiffs as Class Representatives and appoint Federman & Sherwood and McShane & Brady, LLC as Class Counsel.

Dated: October 16, 2023.                    Respectfully submitted,


                                            */s/ William B. Federman*
                                            William B. Federman*
                                            FEDERMAN & SHERWOOD
                                            10205 N. Pennsylvania Ave.
                                            Oklahoma City, Oklahoma 73120
                                            (405) 235-1560
                                            (405) 239-2112 (facsimile)

                                            wbf@federmanlaw.com

                                            *admitted pro hac vice*

                                            Maureen M. Brady
                                            Lucy McShane
                                            MCSHANE & BRADY, LLC
                                            1656 Washington Street, Suite 120
                                            Kansas City, MO 64108
                                            Telephone: (816) 888-8010
                                            Facsimile: (816) 332-6295
                                            E-mail: mbrady@mcshanebradylaw.com
                                                    lmcshane@mcshanebradylaw.com

                                            **ATTORNEYS FOR PLAINTIFFS**

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: _/s/ William B. Federman_____