**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-MD-02994-RAR**

In re:

**MEDNAX SERVICES, INC.,**
**CUSTOMER DATA SECURITY BREACH LITIGATION**

_____/

This Document Relates to All Actions

**ORDER CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PROGRAM**

      **THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law in Support ("Motion"), [ECF No. 316]. Plaintiffs request that the Court consider whether the Settlement reached by the Parties should be preliminarily approved, the proposed Settlement Class preliminarily certified, and the proposed plan for notifying the Settlement Class approved. *See generally*, Mot. Having carefully reviewed the proposed Settlement, together with its exhibits, all relevant filings, and the record, the Court finds that the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, and the proposed notice plan approved.[1] Accordingly, it is hereby

      **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

**BACKGROUND**

      On August 5, 2021, Plaintiffs filed their initial Consolidated Class Action MDL Complaint against Defendants, alleging Defendants failed to adequately protect Plaintiffs' and

---

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

the Class's Protected Health Information ("PHI") and Personally Identifiable Information ("PII") from unauthorized access and asserting multiple common law and statutory claims for relief. [ECF No. 53]. Defendants filed a Motion to Dismiss on September 20, 2021, [ECF No. 61], and Plaintiffs filed their First Amended Consolidated Class Action Complaint on October 20, 2021, [ECF No. 71]. Defendants proceeded to file another Motion to Dismiss, [ECF No. 84], which Plaintiffs opposed, [ECF No. 92], and the Court entered an Order Granting in Part Defendants' Motion, [ECF No. 104]. Plaintiffs filed their Second Amended Consolidated Class Action Complaint, [ECF No. 115], Defendants filed a Partial Motion to Dismiss, [ECF No. 123], which Plaintiffs opposed, [ECF Nos. 126, 129], and on August 18, 2022, the Court entered an Order Granting in Part Defendants' Partial Motion to Dismiss, [ECF No. 131]. The Second Amended Consolidated Class Action Complaint ("Complaint") remains the operative complaint in this matter.

Defendants are national healthcare services partners providing "newborn, anesthesia, maternal-fetal, radiology and teleradiology, pediatric cardiology, and other pediatric subspecialty care services in 39 states and Puerto Rico." Complaint ¶ 292. Defendants also provide consulting services, including administrative solutions to hospitals and healthcare providers. Compl. ¶ 293. As part of the services Defendants provide, they are entrusted with PII and PHI of Plaintiffs and the Class. *See* Compl. ¶ 295. On or about June 19, 2020, an unauthorized hacker accessed Microsoft Office 365-hosted business and email accounts through a successful phishing event and compromised the PHI and PII of Plaintiffs and the Class. *See* Compl. ¶ 385. In or around late December 2020 and January 2021, Defendants issued formal notices of the Data Incident to Plaintiffs and the Class. Compl. ¶¶ 19, 42, 60, 79, 102, 127, 152, 177, 242, 264.

Prior to engaging in mediation and reaching a settlement, the Parties conducted meaningful discovery. Decl. of William B. Federman in Support of Pls.' Mot. for Preliminary Approval of Class Action Settlement ("Federman Decl."), [ECF No. 317], ¶ 4. Beginning in May of 2022 through September of 2023, Plaintiffs and Defendants conducted extensive discovery, including responding to written interrogatories and requests for production, producing thousands of pages of documents, taking numerous fact witness depositions, exchanging expert reports, and taking expert depositions. *Id*. On April 17, 2023, the Parties engaged in a full-day mediation session with the Honorable Judge John Thornton (Ret.) of JAMS, which did not result in a settlement. *Id.* ¶ 5. Although the Parties were participating in good faith, additional follow-up discussions with Judge Thornton were also unsuccessful. *Id*. The Parties then proceeded to engage in extensive motion practice. Plaintiffs filed a Motion for Class Certification on October 16, 2023, [ECF No. 232], Defendants filed Motions for Summary Judgment, [ECF Nos. 254, 260], on November 29 and December 1, 2023, and both sides also filed Motions to Exclude Expert Testimony, [ECF Nos. 252, 258] on November 29 and November 30, 2023.

On October 26, 2023, the Court appointed Judge Eduardo C. Robreno (Ret.) as Special Mediator in the case ("Special Mediator"). [ECF No. 235]. On January 16 and 17, 2024, Plaintiffs and Defendants participated in two full days of mediation before the Special Mediator and, while considerable progress was made, the mediation did not result in an agreement. Federman Decl. ¶ 5. Over the next several weeks, Plaintiffs and Defendants continued settlement discussions facilitated by the Special Mediator, which resulted in the execution of a term sheet memorializing the essential terms of the settlement on February 9, 2024. *Id*. The terms of the settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's length, in good faith and without collusion, by capable and experienced counsel, with

full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Plaintiffs and Defendants. *Id.* Plaintiffs now seek preliminary approval of the Settlement Agreement, [ECF No. 317-1]. Defendants do not oppose the relief sought in the Motion and agree that the Court should grant preliminary approval of the settlement and allow notice to issue to the Settlement Class.

Specifically, the Settlement provides monetary relief that includes a non-reversionary Settlement Fund of six million Dollars ($6,000,000). Settlement Agreement ¶ 3.1. Relief to be paid out of the Settlement Fund includes: (i) reimbursement of Out-of-Pocket Losses up to $5,000.00 for expenses incurred as a result of the Data Incident (*id.* ¶ 7.1.1.); (ii) reimbursement for up to four (4) hours of Attested Time spent responding to the Data Incident at a rate of $30.00 an hour (*id.* ¶ 7.1.4.); and (iii) reimbursement for up to ten (10) additional hours of Documented Time spent responding to the Data Incident at a rate of $30.00 an hour (*id.* ¶ 7.1.5.). In addition, all Settlement Class Members are eligible to receive three (3) years of medical monitoring and medical fraud protection services to be paid out of the Settlement Fund. *Id.* ¶ 7.1.6. For the avoidance of doubt, in no event shall Defendants' collective liability or obligation under this Settlement Agreement exceed the Settlement Fund. As further discussed below, the Settlement falls within the range of judicial approval and includes a comprehensive notice plan. As such, preliminary approval of the proposed class action settlement is warranted.

## LEGAL STANDARD

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted

to protracted litigation." *Id.*   In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.   *See id.* at 671–672.; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.   *See* FED. R. CIV. P. 23(a)(1)–(4).   Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).   The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable.   *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).   To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*  Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are:

> there was no fraud or collusion in arriving at the settlement and . . . the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 ("*Bennett* factors").  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (cleaned up).

## ANALYSIS

The Court finds, for settlement purposes only, that the Rule 23 factors are present, and that certification of the proposed Settlement Class is appropriate under Rule 23.  The Court therefore provisionally certifies the following Settlement Class:

> All persons residing in the United States who were notified in or around December 2020 and January 2021, via either written or substitute notice, that their PHI and PII may have been involved in the Incident.  The Settlement Class specifically excludes: (i) Defendants, any Entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the settlement.

The Court finds, for settlement purposes only and conditioned on final certification of the proposed class and on the entry of a Final Approval Order, that the Settlement Class satisfies the requirements of Rule 23(a), 23(b)(3), and 23(e), as well as the *Bennett* factors.[2]  The Court will address each factor in turn.

### A.   The Rule 23(a) Factors Are Satisfied.

#### (1)   Numerosity

Rule 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  The numerosity requirement is "generally a low hurdle" and, as a general rule, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up).  Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes approximately 2,712,790 individuals. *Id.*; *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied  where there are more than 40 class members).

#### (2)   Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or

---

[2]  To be clear, before any of the factors under Rule 23 can be addressed, a Court must ensure that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing . . . .").  To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This Court addressed the issue of standing extensively in its Order Granting in Part Defendants' Motion to Dismiss, [ECF No. 104] at 10–23, and found that the standing requirement is met here. *Cf. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up).    The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).  Here, Plaintiffs' claims turn on the adequacy of Defendants' data security in protecting Plaintiffs' and the Class's PHI/PII.  These issues are common to the Settlement Class, are alleged to have injured all Settlement Class Members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial.  In other words, evidence to resolve said claims does not vary among Settlement Class Members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class Members at once.  Thus, commonality is satisfied.

### (3)  *Typicality*

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent.  *See* FED. R. CIV. P. 23(a)(3).  Typicality under Rule 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory").  To be typical, a class representative must have "the same interest and suffer the same injury as the class members." *Id.*  But "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (cleaned up); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).  When the same course of conduct is directed at both the named plaintiff and the

members of the proposed class, the typicality requirement is met.  *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).  Here, the typicality requirement is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice letter from Defendants informing them their PHI/PII may have been compromised as a result of the Data Incident and was therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class.  Thus, typicality is met here.  *See Hines*, 334 F.3d at 1256.

### (4) Adequacy

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  Adequacy relates to:  (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation.  *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314–15 (S.D. Fla. 2001).  The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class."  *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (cleaned up).  Here, the Class Representatives have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation.  Federman Decl. ¶ 13. Moreover, Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators.  *See generally* [ECF Nos. 317-2–317-3].

**B.  The Rule 23(b) Factors Are Satisfied.**

Having found that all Rule 23(a) factors are satisfied, the Court proceeds to address at least one subsection of Rule 23(b)—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3).

***(1) Predominance and Superiority***

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311–16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* at 312. All Class Members had their PHI/PII compromised in the Data Incident and the security practices at issue did not vary from person to person. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,

there is a clear justification for handling the dispute on a representative rather than on an individual basis. Thus, the predominance requirement is readily satisfied.

### (2)  Class Action is the Superior Method of Adjudication

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up).  Here, adjudicating individual actions would be impractical.  The amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly.  Further, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.  Accordingly, a class action is the superior method of adjudicating this dispute.

### C.  The Rule 23(e) Factors and the *Bennett* Factors are Satisfied.

Next, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors. At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there

are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).   Courts have substantial discretion in approving a settlement agreement, *Bennett*, 737 F.2d at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness*, see Manual for Compl. Lit.*, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (cleaned up)).   For the foregoing reasons, the Rule 23(e) and *Bennett* factors have been satisfied.

### *(1)   Rule 23(e)(2)(A) – Plaintiffs and Class Counsel Adequately Represented the Class*

The first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class.  Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the Complaints; briefing multiple Oppositions to Defendants' Motions to Dismiss and Motions for Summary Judgment; fully briefing a motion for Class Certification; conducting extensive discovery, including responding to written interrogatories and requests for production, reviewing thousands of pages of documents, taking numerous fact witness depositions, exchanging expert reports, and taking expert depositions; participating in a full-day mediation session with the Honorable Judge John Thornton and two full days of mediation before Special Mediator Judge Eduardo C. Robreno; and negotiating and reaching a Settlement at arm's length, in good faith, and without collusion.  Federman Decl. ¶ 7.  Additionally, the Settlement Class Representatives have also demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to

Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation, including for depositions; and (v) monitoring the Litigation. *Id.* ¶ 13.

### *(2) Rule 23(e)(2)(B) – The Settlement was Negotiated at Arm's Length*

The Settlement is the result of intensive, arm's-length negotiations through a neutral third-party mediator, and between experienced attorneys who are familiar with data breach class action litigation and with the legal and factual issues in these cases. *Id.* ¶ 5. Before discussing a potential settlement, the Parties completed an engaged in significant meaningful discovery that lasted over a year. *Id.* ¶ 4. This allowed the Parties to fully understand the claims, defenses, and risks of continued litigation. *Id.* ¶ 8. The Settlement is the result of prolonged and serious arm's-length negotiations through multiple mediation sessions between counsel for the Parties, who fought hard for the interests of their respective clients. *See id.* ¶ 5. As part of the mediation process, the Parties exchanged and provided the mediators with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and engaged in meaningful discovery. *Id.* The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### *(3) Rule 23(e)(2)(C)(i) and Bennett Factors 1-4 – the Relief Provided is Adequate*

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. This multi-district litigation has taken years to litigate with the Parties briefing and arguing several dispositive motions, including Defendants' Motions to Dismiss and Motions for Summary Judgment and Plaintiffs' Motion for Class Certification; engaging in voluminous discovery; and participating in multiple mediation sessions and months of settlement negotiations. *Id.* ¶¶ 3, 7. Given the complexity of the

claims and arguments here, a lengthy trial would follow. Since the filing of these cases began in January of 2021, several years will have passed before the Class would be able to receive any recovery. Thus, the extensive and prolonged litigation conducted here favors preliminary approval. Further, while Plaintiffs are confident in their claims, data breach class actions are risky cases. *See Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). As another court observed in approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). And maintaining class certification through trial is another over-arching risk. Thus, the costs, risks, and delay of continued litigation are great, and weigh heavily in favor of preliminary approval. Here, the Settlement includes a non-reversionary Settlement Fund of $6,000,000.00, reimbursement of out-of-pocket losses, reimbursement of attested time spent, reimbursement of documented time spent, and medical monitoring services. Settlement Agreement ¶¶ 3, 7. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

> **(4) Rule 23(e)(2)(C)(ii)-(iv) and Rule 23(e)(2)(D) – Notice Will Be Effectively Distributed; the Award of Attorneys' Fees and Expenses is Reasonable; No Agreements Required to be Identified; and Class Members are Treated Equitably Related to Each Other**

The method of distributing the settlement benefits will be equitable and effective. As explained above, all Class Members are eligible to make a claim for the reimbursement of Out-of-Pocket Losses, Attested Time Spent, Documented Time Spent, Medical Monitoring, and Medical Fraud Protection Services. Settlement Agreement ¶ 7.1. The task of validating those claims will

be delegated to the Settlement Administrator, a neutral party with significant experience processing these claims in similar cases. The only difference in treatment among Class Members is that those who incurred and submit a claim for reimbursement of Out-of-Pocket Losses, Attested Time Spent, and Documented Time Spent will—appropriately and equitably—receive payments in proportion to the amount of their losses. Additionally, the 90-day claim period is sufficiently long to enable all eligible Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective. Class Counsel will request no more than 30.00% of the Settlement Fund in attorneys' fees and up to $800,000.00 in expenses to be paid from the Settlement Fund, which are both subject to Court approval. Settlement Agreement ¶ 18.2. This award of attorneys' fees and costs was negotiated after the total amount of the Settlement Fund was established and will be paid from the non-reversionary Settlement Fund. *Id*; Federman Decl. ¶¶ 6, 9.

### (5) *Bennett Factor 5 – Substance and Amount of Opposition to the Settlement*

This *Bennett* factor cannot be discerned at this time because Notice has not yet been given to the Class.

### (6) *Bennett Factor 6 – The Stage the Settlement was Achieved*

The Parties arrived at the proposed settlement following briefing on Defendants' Motions to Dismiss and Motions for Summary Judgment, Plaintiffs' Motion for Class Certification, over a year of discovery, several mediation sessions with multiple mediators, and hard-fought settlement negotiations. *Id.* ¶ 7. Class Counsel had all the information needed to make an informed decision regarding the appropriateness of settlement. Through extensive investigation, discovery, and multiple mediation sessions, Class Counsel adequately understood the merits of the case before negotiating, and the Parties were well-positioned to evaluate the

strengths and weaknesses of their claims. *Id.* ¶ 8.  Thus, these efforts equipped the Parties with sufficient information to thoroughly understand the case and negotiate a Settlement, thereby providing significant benefits to Plaintiffs and the Class.

## PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

In sum, upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate; otherwise meets the criteria for approval; and warrants issuance of notice to the Settlement Class.  Accordingly, the proposed Settlement is preliminarily approved.

### A.  Appointment of Class Representatives and Class Counsel

Gregory Baum, as legal guardian of a minor child whose initials are A.B.; Abigail Bean, as legal guardian of a minor child whose initials are C.B.; Chaya Clark; Chelsea Cohen, as parent and legal guardian of A.H.; Jessica Jay, as legal guardian of a minor child whose initials are B.J.; Gerald Lee; Joseph Larsen, as parent and legal guardian of a minor child whose initials are A.L.; Brooke Nielsen; Michael Rumely, as legal guardian of minor children whose initials are H.R. and M.R.; Matias Soto, as legal guardian of a minor child whose initials are M.S.; and A.W. by and through her Next Friend, B.W., are designated and appointed as the Settlement Class Representatives.

William B. Federman of Federman & Sherwood and Maureen M. Brady of McShane & Brady, LLC, who were previously appointed by the Court as interim Co-Lead Class Counsel, are designated as Class Counsel pursuant to FED. R. CIV. P. 23(g).  The Court finds that Mr. Federman and Ms. Brady are experienced and will adequately protect the interests of the Settlement Class.

### B.  Final Approval Hearing

A Final Approval Hearing shall take place before the Court on **Friday, October 4, 2024 at 10:00 A.M. in Courtroom 11-2, Wilkie D. Ferguson Jr. United States Courthouse, 400 N.**

**Miami Avenue, Miami, FL 33128**, to determine, among other things, whether: (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and, in accordance with the Settlement's terms, all claims in the Amended Complaint and Action should be dismissed with prejudice; (c) Settlement Class Members should be bound by the releases set forth in the Settlement; (d) the proposed Final Approval Order and Judgment should be entered; and (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved.  Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

Class Counsel shall submit their application for Attorneys' Fees and Expenses no later than **fourteen (14) days** before the Objection Deadline.

Any Settlement Class Member(s) who have not timely and properly excluded themselves from the Settlement in the manner described below, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Settlement Class Member who has elected to exclude his or herself from the Settlement shall be entitled to object or otherwise appear, and, further provided, that no Settlement Class Member shall be heard in opposition to the Settlement unless the Settlement Class Member complies with the requirements of this Order pertaining to objections, which are described below.

### C.  Appointment of Claims Administrator

As agreed by the Parties, Kurtzman Carson Consultants LLC ("KCC") is hereby appointed the Claims and Settlement Administrator, with responsibility for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Member, and all other

obligations of the Settlement Administrator as set forth in the Settlement.  All Administration and Notice Costs incurred by the Settlement Administrator will be paid out of the Settlement Fund, as provided in the Settlement.

### D.  Approval of Class Notice

The Notice Plan, along with the Short Notice, Long Notice, and Claim Form attached to the Settlement as Exhibits A through D satisfy the requirements of Federal Rule of Civil Procedure 23 and due process and are thus approved.  Non-material modifications to these exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Plan and to perform all other tasks that the Settlement requires.

The Court finds that the form, content, and method of giving notice to the Settlement Class as described in the Notice Plan, Short Notice, Long Notice, and Claim Form:  (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements.  The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

### E.  Exclusions from the Class

Any individual who wishes to be excluded from the Settlement must mail a written notification of such intent by United States mail to the designated address established by the Settlement Administrator (or submit online via the settlement website), postmarked or submitted

no later than 60 days after the Notice Date (the "Opt-Out Deadline"). The written notification must include the name of this Action (*In Re: Mednax Services, Inc.*, *Customer Data Security Breach Litigation*, Case No. 21-md-02994-RAR (S.D. Fla.)); the full name and address of the individual seeking exclusion from the Settlement; be personally signed by the individual seeking exclusion; include a statement in the body of the document clearly indicating the individual's intent to be excluded from the Settlement; and request exclusion only for the individual whose personal signature appears on the request. Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be bound by the Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

All individuals who submit valid and timely requests for exclusion from the Settlement shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement..

The Settlement Administrator shall provide the Parties with copies of all requests for exclusion promptly upon receipt, a weekly report which includes a summary of the number of requests for exclusion, and, within five (5) Business Days after the Opt-Out Deadline, a final list of all individuals that have timely and validly excluded themselves from the Settlement Class in accordance with the terms of the Settlement and herein. Prior to the Final Approval Hearing, the Settlement Administrator shall also prepare and execute a declaration identifying each individual who timely and validly requested exclusion from the Settlement.

### F.  Objections to the Settlement

A Settlement Class Member who complies with the requirements of this Order may object to the Settlement.

No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless a written objection is submitted to the Court on or before the Objection Deadline, which shall be 60 days after the Notice Date.  To be considered by the Court, a written objection must include:

a.   the case name and number of the Action (*In Re: Mednax Services, Inc.*, *Customer Data Security Breach Litigation*, Case No. 21-md-02994-RAR (S.D. Fla.));

b.   the name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

c.   a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

d.   a statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection;

e.   a statement of the specific grounds for the objection; and

f.   a statement identifying whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

A written notice of objection may be either electronically filed in the Action's electronic docket on or before the Objection Deadline; or sent via first class, postage-prepaid United States Mail, postmarked no later than the Objection Deadline to (a) the Clerk of Court, (b) Lead Class Counsel; and (c) Defendants' Counsel at the addresses below.

| COURT | DEFENDANTS' COUNSEL | LEAD CLASS COUNSEL |
|---|---|---|
| Clerk of Court<br>Wilkie D. Ferguson, Jr.<br>United States Courthouse<br>400 N. Miami Avenue<br>Miami, FL 33128 | Kristine M. Brown<br>Gavin Reinke<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street NW<br>Atlanta, GA 30309-3424<br><br>and to:<br><br>Thomas J. Butler<br>MAYNARD NEXSEN P.C.<br>1901 Sixth Ave. N., Suite 1700<br>Birmingham, AL 35203<br><br>and to:<br><br>J.T. Malatesta<br>POLSINELLI P.C.<br>2100 Southbridge Pkwy., Suite 650<br>Birmingham, AL 35209 | William B. Federman<br>FEDERMAN & SHERWOOD<br>10205 N. Pennsylvania<br>Oklahoma City, OK 73120<br><br>and to:<br><br>Maureen M. Brady<br>MCSHANE & BRADY, LLC<br>1656 Washington Street, Suite 120<br>Kansas City, MO 64108 |

Any Settlement Class Member who fails to object to the Settlement in the manner described herein shall be deemed to have waived any such objection, shall not be permitted to object to any

terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

### G.  Claims Process and Distribution Plan

The Settlement establishes a process for assessing and determining the validity and value of claims and a methodology for paying Settlement Class Members who submit a timely and valid Claim Form.  The Court preliminarily approves this process.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form.  If the Settlement is finally approved, all Settlement Class Members who qualify for any benefit under the Settlement, but who fail to submit a claim in accordance with the requirements and procedures specified in the Settlement, including the Claim Form, shall be forever barred from receiving any such benefit.  Such Class Members, however, will in all other respects be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

### H.  Termination of the Settlement and Use of this Order

This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement.  In such event, the Settlement shall become null and void and be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against any Settlement Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims he or she may have in this Action or in any other lawsuit.

**I. Stay of Proceedings**

Except as necessary to effectuate this Order, this matter and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

**J. Continuance of Final Approval Hearing**

The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

**K. Actions By Settlement Class Members**

The Court stays and enjoins, pending Final Approval of the Settlement, any actions, lawsuits, or other proceedings brought by Settlement Class Members against Defendants related to the Incident.

## L.  Summary of Deadlines

The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.  Deadlines arising under the Settlement and this Order include but are not limited to the following:

| ACTION | DEADLINE |
|---|---|
| Deadline for Defendants to provide the Settlement Administrator with a list of individuals to whom it sent direct mail notice of the Incident, as reflected in Defendants' records. | Friday, May 10, 2024 |
| Notice Date | Monday, June 10, 2024 |
| Motion for Attorneys' Fees and Expenses | Friday, July 26, 2024 |
| Opt-Out / Exclusion Deadline | Friday, August 9, 2024 |
| Objection Deadline | Friday, August 9, 2024 |
| Claims Deadline | Monday, September 9, 2024 |
| Final Approval Brief and Response to Objections Due | Friday, September 20, 2024 |
| Final Approval Hearing | Friday, October 4, 2024 at 10:00 A.M. |

**DONE AND ORDERED** in Miami, Florida, this 10th day of April, 2024.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**