**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: MEDNAX SERVICES, INC.,
CUSTOMER DATA SECURITY
BREACH LITIGATION

Case No.: 21-MD-02994-RAR

This Document Relates To: All Actions

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL**
**OF ATTORNEYS' FEES, COSTS, AND EXPENSES**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.   ARGUMENT AND AUTHORITIES ................................................................. 4

    A.  Applicable Law ........................................................................................ 4

    B.  Argument ................................................................................................. 5

      1.  The *Camden I* Factors Weigh in Favor of Awarding Class Counsel's Requested Fee.
      ............................................................................................................ 6

          i.    Time and Labor Required. ......................................................... 6

          ii.   The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys. ................................... 7

          iii.  The Case Involved Considerable Risk. ...................................... 8

          iv.  Class Counsel Assumed Substantial Risk Pursuing this Case on a Pure Contingency Basis and Were Precluded from Other Employment. ........... 9

          v.    Class Counsel's Requested Fee is Consistent with Fee Awards in Similar Cases. ......................................................................... 10

          vi.  Class Counsel Obtained an Excellent Result for Class Members............. 11

          vii.  The Remaining *Camden I* and Other Factors Favor Approval of the Fee Request............................................................................ 12

      2.  A Lodestar Analysis Confirms the Reasonableness of Class Counsel's Requested Fee. ................................................................................. 13

      3.  The Litigation Costs Are Reasonable. ................................................ 17

IV.   CONCLUSION ................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F.Supp.2d 1185 (S.D. Fla. 2006) ................................................................. 10, 13

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. Jan. 8, 1988) ................................................................. 17

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................. 4, 5, 12, 13

*Desue v. 20/20 Eye Care Network, Inc.*,
  2023 WL 4420348 (S.D. Fla. July 8, 2023) ................................................................. 16

*Duckworth v. Whisenant*,
  97 F.3d 1393 (11th Cir. 1996) ................................................................. 14

*Elkins v. Equitable Life Ins. Co. of Iowa*,
  1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ................................................................. 13

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ................................................................. 7

*Francisco v. Numismatic Guaranty Corp. of America*,
  2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ................................................................. 7

*Fulton-Green v. Accolade, Inc.*,
  2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ................................................................. 8

*Gonzalez v. TCR Sports Broadcasting Holding, LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) ................................................................. 5

*Health Ins. Innovations Securities Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ................................................................. 16

*In re Checking Account Overdraft Litig.*,
  830 F.Supp.2d 1330 (S.D. Fla. 2011) ................................................................. 11, 13

*In re Citrix Data Breach Litig.*,
  2021 WL 2410651 (S.D. Fla. June 11, 2021) ................................................................. 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ................................................................. 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)............................................................................8

*In re NetBank, Inc. Securities Litig.*,
    2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ...............................................16

*In re SandRidge Energy, Inc.*,
    875 F.3d 1297 (10th Cir. 2017) ....................................................................16

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)...............................................7

*In re Sunbeam Securities Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) ..........................................4, 5, 9, 12, 13, 14

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .......................................................................8

*Morgan v. Pub. Storage*,
    301 F.Supp.3d 1237 (S.D. Fla. 2016) ...............................................4, 10, 11, 17

*Norman v. Housing Authority of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ...............................................................14, 15

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F.Supp.2d 1334 (S.D. Fla. 2007) ......................................................11, 13

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) .........................................8, 9, 11, 12, 13

*Walco Inv., Inc. v. Thenen*,
    975 F.Supp. 1468 (S.D. Fla. 1997) ..............................................................8

*Walters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) .............................................................10, 13

*Waters v. Cook's Pest Control, Inc.*,
    2012 WL 2923542 (N.D. Ala. July 17, 2012) ...............................................13

*Wolff v. Cash 4 Titles*
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..........................................10, 12

## **Rules**

Fed. R. Civ. P. 23(h) ...................................................................................4, 17

I.     **INTRODUCTION**

Plaintiffs' Class Counsel have diligently and vigorously prosecuted this case to secure a fair, reasonable and adequate settlement for Plaintiffs and the Class without any guarantee of payment for their services. [1] Through Class Counsel's determination and hard work, Class Counsel secured a non-reversionary common fund settlement of $6,000,000 (the "Settlement Fund"). The Settlement Fund provides monetary and non-monetary benefits for Plaintiffs and the Class that redress the harms Plaintiffs allege were caused by Defendants. Obtaining this relief did not come easily. Class Counsel, with Plaintiffs' assistance, shouldered significant risk and expenses, conducted a lengthy pre-filing investigation, fully briefed and argued against Defendants' motion to dismiss, survived Defendants' motion to dismiss, engaged in formal and informal discovery, retained and worked with expert witnesses, and conducted contentious discovery and arm's-length negotiations, which ultimately culminated in the Settlement presented to the Court. The result achieved in this case would not be possible without the significant investment of time and resources by Class Counsel.

In recognition of the considerable time and effort Class Counsel expended on behalf of Plaintiffs and the Class, Plaintiffs respectfully request the Court award: (i) Class Counsel attorneys' fees in the amount of $1,800,000 (30.00% of the Settlement Fund); and (ii) Class Counsel's litigation costs and expenses in the amount of $746,322.11. The requested fee is within the range of approval for the Eleventh Circuit and results in a large negative lodestar multiplier. Further, the costs and expenses incurred by Class Counsel were reasonable and necessary to prosecute this action to reach a final and successful resolution. For the reasons set forth herein, Plaintiffs

---

[1] Unless otherwise stated, all capitalized terms are defined in the Settlement Agreement ("SA"), which was previously filed. (ECF No. 317-1). Plaintiffs submit herewith the Declaration of William B. Federman ("Federman Decl.") on behalf of Class Counsel, attached as **Exhibit 1**.

respectfully request the Court approve their award of attorneys' fees and expenses.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In June 2020, Defendants Pediatrix Medical Group, Inc. (f/k/a Mednax, Inc.), PMG Services, Inc. (f/k/a Mednax Services, Inc.), and Pediatrix Medical Group of Kansas, P.C. (collectively, "Mednax"), and American Anesthesiology, Inc. ("AA" and together with Mednax, "Defendants") discovered unauthorized third-party hackers gained access to certain Microsoft Office 365-hosted business email accounts (the "Data Incident"). *See* Second Amended Class Action Complaint ("Compl."), ¶ 4, ECF No. 115. Defendants issued formal notices of the Data Incident in or around December of 2020. *Id.* ¶¶ 19, 42, 60, 79, 102, 127, 152, 176, 241, 263. Thereafter, Plaintiffs commenced this class action lawsuit, alleging Defendants failed to sufficiently protect their PHI and PII from unauthorized access. *Id.* ¶ 1.

Defendants, who have been represented by experienced complex and data breach defense counsel, are national healthcare services partners providing "newborn, anesthesia, maternal-fetal, radiology and teleradiology, pediatric cardiology, and other pediatric subspecialty care services in 39 states and Puerto Rico." Compl. ¶ 291. Defendants also provide consulting services, including administrative solutions to hospitals and healthcare providers. *Id.* ¶ 292. As part of the services Defendants provide, they are entrusted with the PII and PHI of Plaintiffs and the Class. *Id.* ¶ 294. On August 5, 2021, Plaintiffs filed their first Consolidated Class Action MDL Complaint against Defendants, alleging Defendants failed to adequately protect Plaintiffs' and the Class's PII and PHI from unauthorized access. *See* MDL Amended Complaint, ECF No. 53. Plaintiffs filed their First Amended Consolidated Class Action Complaint on October 20, 2021. *See* First Amended Complaint, ECF No. 71. Subsequently, on June 10, 2022, Plaintiffs filed their Second Amended Class Action Complaint asserting multiple common law and statutory claims for relief. *See* Second Amended Complaint, ECF No. 115. In response, Defendants filed a Motion to Dismiss (ECF No.

123), which Plaintiffs opposed (ECF No. 126).

Prior to engaging in mediation and reaching a settlement, the Parties conducted extensive meaningful discovery. Decl. of William B. Federman in Support of Pls.' Mot. for Attorneys' Fees, Costs, and Expenses ("Federman Decl."), ¶ 10. Beginning in May of 2022 through September of 2023, the Parties drafted, served, and responded to interrogatories, requests for production of documents, and requests for admission. *Id*. During discovery, Defendants produced tens of thousands of pages of documents which were reviewed by Class Counsel and their cybersecurity and damages experts. *Id*. The Parties also formulated and exchanged expert reports, took numerous fact and corporate representative depositions, and conducted expert witness depositions. *Id*. After participating in extensive discovery, the Parties fully briefed a Motion for Class Certification (ECF No. 232), Motions for Summary Judgment (ECF Nos. 254, 260), and Motions to Exclude Expert Testimony (ECF No. 252, 258). *Id*. ¶ 16. The Parties were fully informed of the strengths and weaknesses of their respective positions before a settlement was reached.

On April 17, 2023, the Parties engaged in a full day mediation session with the Honorable Judge John Thornton (Ret.) of JAMS, which did not result in a settlement. *Id.* ¶ 11 Although the Parties were participating in good faith, additional follow-up discussions with Judge Thornton were also unsuccessful. *Id*. After additional discovery was conducted by the Parties, on October 26, 2023, the Court appointed Judge Eduardo C. Robreno (Ret.) as Special Mediator in the case (the "Special Mediator"). *Id*. Judge Robreno conducted pre-mediation discussions with the Parties and gained a thorough understanding of the case and the Parties' positions. *Id*. On January 16 and 17, 2024, Plaintiffs and Defendants participated in two (2) full days of mediation before the Special Mediator. *Id*. While considerable progress was made, the mediation did not result in an agreement. *Id*. Over the next several weeks, the Parties continued settlement discussions facilitated by the Special Mediator, which resulted in the execution of a term sheet memorializing the essential terms

3

of the settlement on February 9, 2024. *Id.* The terms of the settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Plaintiffs and Defendants. *Id.* ¶ 12.

On April 5, 2024, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 316. Subsequently, on April 10, 2024, the Court entered an order preliminarily certifying the Settlement Class, preliminarily approving the Settlement, and approving the Parties' Notice Plan. (ECF No. 320). For the reasons set forth herein, and in recognition of the significant work completed to date, Class Counsel respectfully request this Court award $1,800,000 in attorneys' fees and reimbursement of $746,322.11 in necessary expenses incurred in prosecuting and settling the Action.

## III.    ARGUMENT AND AUTHORITIES

### A.  Applicable Law

Pursuant to the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). In the Eleventh Circuit, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). As such, this Court adopts the "percentage of the fund" approach to determine the award of attorneys' fees in common fund cases. *In re Sunbeam Securities Litig.*, 176 F.Supp.2d 1323, 1333 (S.D. Fla. 2001) (citing *Camden I*, 946 F.2d at 774); *See also Morgan v. Pub. Storage*, 301 F.Supp.3d 1237, 1255 (S.D. Fla. 2016) (recognizing that a fee award of 33% was consistent with fee awards in federal class actions in the Eleventh Circuit).

4

"Although there is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee, an award of one-third of the common fund is consistent with the trend in [the Eleventh Circuit]." *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 1:18-cv-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (internal citations omitted). Further, in assessing an appropriate fee award, the Eleventh Circuit in *Camden I* directs courts to consider: (i) the time and labor required; (ii) the novelty and difficulty of the questions involved; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and the length of the professional relationship with the client; and (xii) awards in similar cases. *Camden I*, 946 F.2d at 772. However, the *Camden I* factors are guidelines and are not exclusive. *Sunbeam*, 176 F.Supp.2d at 1333.

## B. Argument

Class Counsel seeks a fee award based on a 30.00% of the Settlement Fund—equaling $1,800,000—which is contemplated and permitted under the Settlement and well within the confines of reasonableness in the Eleventh Circuit. Class Counsel also seeks the reimbursement of litigation costs and expenses incurred in the amount of $746,322.11. Plaintiffs and Defendants negotiated and reached an agreement on the amount of attorneys' fees, costs, and expenses only after negotiating and reaching an agreement on all other material terms of the Settlement. Federman Decl. ¶ 12. For the foregoing reasons, the requested fee is within the range of reasonable under the factors identified in *Camden I*, and is appropriate in light of the considerable work Class Counsel have done to date.

1. **The *Camden I* Factors Weigh in Favor of Awarding Class Counsel's Requested Fee.**

   i.   **Time and Labor Required.**

The prosecution and settlement of these claims required considerable time and effort by Class Counsel on a contingency basis, supporting the reasonableness of this fee request. Federman Decl. ¶ 18. Following the announcement of the Data Incident in December of 2020, Class Counsel, with the help of supporting Plaintiffs' counsel, spent significant time: (i) fully investigating the facts and legal claims; (ii) preparing the Complaints; (iii) briefing multiple oppositions to Defendants' Motions to Dismiss and Motions for Summary Judgment; (iv) fully briefing a motion for Class Certification and Motions to Exclude Expert Testimony; (v) conducting extensive discovery, including serving and responding to interrogatories, requests for admission, and requests for production, (vi) reviewing thousands of pages of documents produced by Defendants during discovery; (vii) taking numerous fact witness depositions; (viii) preparing and exchanging expert reports; and (ix) conducting expert witness depositions. Pursuing this litigation was no small feat. *Id*. ¶ 16.

Class Counsel also expended significant time and effort negotiating and achieving a favorable settlement for all Settlement Class Members after multiple mediations with the Honorable Judge John Thornton (Ret.) of JAMS, and the Court appointed Special Mediator, Judge Eduardo C. Robreno (Ret.). *Id*. ¶ 11. In advance of the mediation sessions, Class Counsel submitted detailed mediation statements articulating the Plaintiffs' respective positions on the facts, claims, defenses, and assessments of the risks of continued litigation. *Id*. On April 17, 2023, the Parties engaged in a full day mediation session with the Honorable Judge John Thornton (Ret.) of JAMS, which did not result in a settlement. *Id*. Although the Parties were participating in good faith, additional follow-up discussions with Judge Thornton were also unsuccessful. *Id*. Subsequently,

on October 26, 2023, the Court appointed Judge Eduardo C. Robreno (Ret.) as Special Mediator in the case (the "Special Mediator"). *Id*. On January 16 and 17, 2024, the Parties participated in two full days of mediation before the Special Mediator and, while considerable progress was made, the mediation did not result in an agreement. *Id*. Over the next several weeks, the Parties continued settlement discussions facilitated by the Special Mediator, which resulted in the execution of a term sheet memorializing the essential terms of the settlement on February 9, 2024. *Id*.

Finally, significant time and effort was devoted to negotiating and drafting the Settlement Agreement and accompanying exhibits, soliciting bids from and selecting a settlement administrator, drafting Plaintiffs' Unopposed Motion for Preliminary Approval, and all other actions necessary to the preliminary approval process. *Id*. ¶ 12. Class Counsel will continue to devote significant time and effort overseeing the administration of the settlement, communicating with class members, and preparing and arguing the motion for final approval. *Id*. ¶ 19. Therefore, Class Counsel should be compensated for the time and labor required to obtain a favorable settlement on behalf of the Settlement Class.

### ii. The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys.

This factor weighs heavily in support of Class Counsel's request for an award of attorneys' fees and reimbursement of expenses. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[d]ata breach litigation is complex and risky. This

unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result…[they] are particularly risky, expensive, and complex.").

Further, in addition to the inherent difficulties surrounding data breach class actions, the case is further complex due to the caliber of lawyers representing the Parties, including the Defendants. *See Walco Inv., Inc. v. Thenen*, 975 F.Supp. 1468, 1472 (S.D. Fla. 1997) (recognizing that "[g]iven the quality of defense counsel from prominent national law firms, the [c]ourt is not confident that attorneys of less aptitude could have achieved similar results."); *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("[I]n assessing quality, the [c]ourt has considered the quality of the opposition as well as the standing of plaintiff's counsel.").

Here, the Parties were represented by highly competent and skilled counsel who have extensive experience litigating data breach class actions. Federman Decl. ¶¶ 4-7. Class Counsel, including supporting counsel, all have significant experience prosecuting data breach class actions and have established themselves as vigorous data breach class action litigators. *Id*. Therefore, the quality of the Parties' counsel and skill needed to litigate this case further supports the reasonableness of Class Counsel's requested fee.

### iii.   The Case Involved Considerable Risk.

As stated above, data breach class actions are notoriously risky cases. While Plaintiffs are confident in their claims, class actions involve a high level of complexity, risk, and expense, which supports the public policy of resolving class actions through settlement. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g., In re*

*Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). Further, maintaining class certification through trial is another over-arching risk emphasizing what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs. Considering Defendants raised compelling defenses to Plaintiffs' motion for class certification and meritorious arguments in its motion for summary judgment, continuing to pursue this case posed a significant risk for Plaintiffs. Historically, few data breach class actions have survived the certification stage, and none have proceeded to trial.

Therefore, the considerable risks assumed by Class Counsel in prosecuting this case weigh in favor of Class Counsel's requested fee.

### iv. Class Counsel Assumed Substantial Risk Pursuing this Case on a Pure Contingency Basis and Were Precluded from Other Employment.

Class Counsel's decision to undertake this case on a pure contingency basis posed a significant risk of non-payment or underpayment, thereby justifying Class Counsel's requested fee. Federman Decl. ¶ 8. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *In re Sunbeam*, 176 F.Supp.2d at 1335. In fact, justification for increasing an award of attorneys' fees is "that the outcome is unsure in the beginning, and the attorneys assume a fairly great risk of ultimately getting nothing." *Id.*; *see also Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. Dec. 15, 1992) (finding the plaintiffs requested fee was justified where "the fee was entirely contingent, which meant that, had [plaintiffs] recovered nothing for the Class, they would not have been entitled to any fee at all.").

Class Counsel faced significant risk taking this case on a contingency basis, including the risk that the Court would disagree with their theories of liability, that a class would not be certified,

and that Defendants' Motions for Summary Judgment would be granted. Federman Decl. ¶ 9. Despite these risks and uncertainties, Class Counsel took this case on a contingency basis with no guarantee the case would result in any recovery. *Id*. ¶ 8. This case has taken years to litigate, including briefing and arguing dispositive motions, contributing substantial discovery efforts, participating in multiple mediation sessions, and months of settlement negotiations. *Id*. ¶¶ 8, 10-12. Further, given the time and effort necessary to successfully litigate this case, Class Counsel abstained from other employment opportunities they otherwise would have accepted. *Id*. ¶ 13.

Therefore, Class Counsel's pursuit of this case on a contingency basis coupled with the preclusion of other employment opportunities supports Class Counsel's requested fee.

### v.   Class Counsel's Requested Fee is Consistent with Fee Awards in Similar Cases.

In common fund cases, a fee award of 30% of the common fund is well within the range of reasonableness for this Court and the Eleventh Circuit. Further, "[u]nder *Camden I*, this Court should…look at awards in comparable cases in determining the appropriate percentage fee award." *See Wolff v. Cash 4 Titles*, 1:03-cv-22778, at *6 (S.D. Fla. Sept. 26, 2012) (citing *Camden I*). As such, Class Counsel's requested fee is consistent with fee awards in similar class actions in this Court. *See Wolff*, 2012 WL 5290155, at *5 (finding a requested fee of 33% was reasonable and "entirely consistent with the percentage awarded in class actions in [this Court] since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I*."); *Walters v. Int'l Precious Metals Corp.*, *et al.*, 190 F.3d 1291 (11th Cir. 1999) (approving an award of 33.33% of a $40 million settlement fund); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1252-54 (S.D. Fla. 2016) (approving a fee award of 33% of settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1204 (S.D. Fla. 2006) (approving a requested award equaling 31.3% of a settlement fund).

Class Counsel's fee request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id*. Indeed, this Court has recognized a fee of 33% "is at the market rate of what the Class could have negotiated with counsel…as a traditional contingency fee arrangement at the outset of the case." *Morgan*, 301 F.Supp.3d at 1255; *see also In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging that class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

Therefore, Class Counsel's request for a fee award totaling 30% of the common fund is consistent with fee awards in this Court and the Eleventh Circuit.

### vi. Class Counsel Obtained an Excellent Result for Class Members.

The significant monetary relief and medical monitoring and fraud protection services obtained for the Class Members favors a fee award of 30% of the Settlement Fund. Despite the inherent risks associated with data breach class action litigation (as discussed above), Class Counsel was able to negotiate and obtain: (i) a $6,000,000 non-reversionary Settlement Fund; (ii) reimbursement for documented out-of-pocket expenses; (iii) reimbursement for attested time spent responding to the Data Incident in an amount of $30.00 per hour for up to four (4) hours; (iv) reimbursement of documented time spent in an amount of $30.00 per hour for up to ten additional (10) hours if the Settlement Class Member spent more than four (4) hours researching and remedying issues related to the Data Incident; and (v) three (3) years of medical monitoring and medical fraud protection services. *See* ECF No. 316, pp. 5-6.

"It is well-settled that one of the primary determinations of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. It is particularly significant that Class Counsel secured a cash common fund, which this Court recognizes as a "substantial, tangible, and real benefit for the Class." *See Wolff*, 2012 WL 5290155, at *3 ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of "coupons", Class Counsel…created a wholly cash common fund."). Further, this case has taken years to resolve following extensive motion practice, discovery, and settlement negotiations. Litigation has been extraordinarily complex, and, since the filing of these cases began in January of 2021, several years will have passed before the Class is able to receive any recovery. As such, the settlement achieved "eliminates the potential risk of non-recovery" and "instead of facing additional years of costly litigation, class members will now share in a substantial settlement fund." *Ressler*, 149 F.R.D. at 655.

Therefore, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, and the exceptional relief made available to the Settlement Class Members, Class Counsel's request for attorneys' fees totaling 30% of the Settlement Fund is justified.

### vii.   The Remaining *Camden I* and Other Factors Favor Approval of the Fee Request.

The remaining *Camden I* factors also support Class Counsel's fee request. In addition to the above factors identified in *Camden I*, "[o]ther pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other Parties to the settlement terms or fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775.

Class Counsel's fee request is consistent with the "economics involved in prosecuting a class action." *In re Sunbeam*, 176 F.Supp.2d at 1333. Given the risks and complexity of this case, it is important that "proper incentives must be maintained to ensure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking*, 830 F.Supp.2d at 1368. Further, the fact that the Parties extensively negotiated the Settlement by participating in multiple mediations before multiple mediators, and that, to date, there have been no objections to the Settlement, weighs in favor of approving Class Counsel's fee request. *See Allapattah Services, Inc.*, 454 F.Supp.2d at 1204 (approving an award of attorneys' fees of 31.3% of the common fund and noting that "[t]he lack of significant objection from the Class supports the reasonableness of the fee request."); *Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (approving class counsel's fee request of 35% of the settlement fund in a "high risk case with difficult discovery and liability issues", with only one objection); *Elkins v. Equitable Life Ins. Co. of Iowa*, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998) ("The lack of objections is itself important evidence that the requested fees are fair.").

Therefore, the Court should find that Class Counsel's fee request is reasonable under the factors identified in *Camden I*.

## 2. A Lodestar Analysis Confirms the Reasonableness of Class Counsel's Requested Fee.

Despite this Court's adherence to the percentage-of-fund approach, some courts also use the lodestar method as a cross-check to assess the reasonableness of a fee request. *In re Sunbeam*, 176 F.Supp.2d at 1336; *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (recognizing that "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto*, 513

F.Supp.2d at 1343 (acknowledging that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach."); *Ressler*, 149 F.R.D. at 653. As such, Class Counsel is not attempting to use the lodestar method as a "backdoor avenue of using the lodestar method instead of the percentage of the fund method", but rather merely as a cross-check to highlight the reasonableness of Class Counsel's requested fee. *See In re Sunbeam*, 176 F.Supp.2d at 1336.

To calculate the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Next, "[a]fter the lodestar is determined by multiplication of a reasonably hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. Where exceptional results were achieved by Class Counsel, "some enhancement of the lodestar might be called for." *Id.* However, Class Counsel do not seek an enhancement on their fee request and, in fact, the combined lodestar for all counsel who participated in this case will result in a negative multiplier.

As shown in the chart below, Class Counsel made considerable efforts to litigate this case efficiently and effectively, spending approximately 6,851.95 hours prosecuting the case. Multiplied by counsel's customary and usual rates, these hours are worth $4,914,071.25 in lodestar. Federman Decl. ¶¶ 15–16.

**LODESTAR**

| FIRM | HOURS | LODESTAR |
|---|---|---|
| Federman & Sherwood | 2,733.4 | $1,916,065.50 |

| | | |
|---|---|---|
| McShane & Brady, LLC | 1,739.15 | $1,362,449.00 |
| Morgan & Morgan | 1,491.55 | $1,102,170.25 |
| Colson Hicks Eidson | 146.55 | $108,455.00 |
| Fell Law, PC | 61.30 | $20,360.00 |
| Law Office of Kenneth Berger/Shealey Law Firm | 72.60 | $26,775.00 |
| Bonnett Fairbourn Friedman & Balint, P.C./Auer Ryan PC | 415.90 | $269,989.00 |
| Clayeo C. Arnold, A Professional Corporation | 191.5 | $107,807.50 |
| **TOTALS** | 6,851.95 | $4,914,071.25 |

Federman Decl. ¶ 16. In addition to the above total hours and lodestar, Class Counsel will continue to invest a significant amount of time and effort through the settlement administration process by: (i) preparing for an attending the final approval hearing, including researching and drafting the motion for final approval; (ii) responding to any inquiries from Settlement Class Members; (iii) overseeing the Settlement through final approval; and (iv) overseeing the claims administration process, including addressing any claim review issues. Federman Decl. ¶ 19.

The lodestar reflects Class Counsel's recognized hourly rates. "A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). As discussed above, Class Counsel are skilled attorneys with extensive prior experience in data breach class actions. *Id*. As such, their rates are reasonable when measured against the relevant community. *See Desue v. 20/20 Eye Care Network, Inc., et al.*, No.

15

0:21-cv-61275-RAR (S.D. Fla. July 8, 2023) (ECF No. 100) (finding reasonable hourly rates in data breach class action for partners who billed $1,300, $1,050, $995, and $800 per hour); *In re: Citrix Data Breach Litig.*, No. 0:19-cv-61350-RKA (S.D. Fla. June 11, 2021) (ECF No. 67) (finding reasonable hourly rate in data breach class action for partners who billed $985, $950, $900, and $835 per hour). In addition, Class Counsel's rates are also reasonable when measured against the national markets for complex class action. *See In re Equifax Inc. Customer Data Sec. Breach Litig.,* No. 1:17-MD2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (finding reasonable hourly rates charged by partners who billed $1050, $1000, $750, and $935 per hour in 2020); *In re SandRidge Energy, Inc*., 875 F.3d 1297 (10th Cir. 2017) (approving rates for partners in national complex litigation firms, ranging from $850/hour to $1,150/hour).

Further, the total lodestar for all counsel who participated in the Action results in a negative multiplier. This Court and others within the Eleventh Circuit have routinely found that the existence of a negative multiplier strongly supports the reasonableness of class counsel's fee request. *See Desue v. 20/20 Eye Care Network, Inc.*, No. 0:21-cv-61275, 2023 WL 4420348, at *10 (S.D. Fla. July 8, 2023) (finding a combined lodestar with a negative multiplier "supports the reasonableness of the fee request."); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *4 (S.D. Fla. June 11, 2021); *In re Health Ins. Innovations Securities Litig.*, No. 8:17-cv-2186, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021) (finding "the negative multiplier of 0.33 further supports the reasonableness of the fee requested."); *In re NetBank, Inc. Securities Litig.*, No. 1:07-cv-2298-TCB, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011) ("As such, even an award granting in full the requested attorneys' fees, [p]laintiff's [c]ounsel will receive no multiplier at all, let alone only recover about one-half of their lodestar, which further confirms that the awarded fee is wholly proper.").

Here, Class Counsel requests a fee award of 30% of the Settlement Fund, which totals $1,800,000. The lodestar in this case is $4,914,071.25. Therefore, although not required in this Circuit, it is clear from the lodestar cross-check that Class Counsel's requested attorneys' fees in this case are reasonable.

### 3. The Litigation Costs Are Reasonable.

"Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Morgan*, 301 F.Supp.3d at 1258. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. Jan. 8, 1988) (noting that plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in the action."); *In re NetBank,* 2011 WL 1335322, at *4 ("Since counsel in a class action will necessarily incur substantial costs and expenses over the course of many years and will presumably have paid the expenses by the time a fee request is considered by the Court, providing for reimbursements of costs and expenses is a component of affording adequate compensation to counsel in order to encourage attorneys to pursue common fund cases.") (quoting *In re KeySpan Corp. Sec. Litig.*, No. CV-2001-5852 (ARR) (MDG) (S.D.N.Y. Aug. 25, 2005)).

As shown in the chart below, to date, Class Counsel and supporting counsel have collectively incurred $746,322.11 in unreimbursed litigation costs. Federman Decl. ¶ 20.

| FIRM | EXPENSES |
|---|---|
| Federman & Sherwood | $234,243.33 |
| McShane & Brady, LLC | $246,117.35 |

| | |
|---|---|
| Morgan & Morgan | $165,194.11 |
| Colson Hicks Eidson | $24,921.64 |
| Fell Law, PC | $14,064.90 |
| Law Office of Kenneth Berger/Shealey Law Firm | $14,000.00 |
| Bonnett Fairbourn Friedman & Balint, P.C./Auer Ryan PC | $19,887.20 |
| Clayeo C. Arnold, A Professional Corporation | $27,893.58 |
| **TOTAL** | $746,322.11 |

*Id*. The amount of costs actually expended and advanced by Plaintiffs' counsel include but are not limited to: (i) filing fees; (ii) service of process fees; (iii) *pro hac vice* fees; (iv) Westlaw and other research charges; (v) copying, printing, and mailing expenses; (vi) mediation expenses; (vii) expert expenses; and (viii) travel expenses. *Id*. The costs and expenses advanced by Class Counsel were necessary to the successful prosecution of this case and were incurred by Class Counsel without a guarantee they would be reimbursed. *Id*.

Therefore, Class Counsel respectfully requests the Court approve the reimbursement of their litigation costs.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award Class Counsel attorneys' fees amounting to 30% of the Settlement Fund and approve the reimbursement of their litigation expenses in the amount of $746,322.11.

Dated: July 26, 2024                    Respectfully submitted,

                                                 */s/: William B. Federman*

18

William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com

Maureen M. Brady (*pro hac vice*)
**MCSHANE & BRADY, LLC**
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone: (816) 888-8010
Facsimile: (816) 332-6295 E-mail:
mbrady@mcshanebradylaw.com

***Class Counsel for Plaintiffs and the Proposed
Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

*/s/ William B. Federman*
William B. Federman

## CERTIFICATE OF GOOD FAITH CONFERENCE

Defendants do not oppose the relief sought by this Motion for Approval of Attorneys' Fees, Costs, and Expenses (the "Motion"). By not opposing this relief, Defendants do not concede the factual basis for any claim and deny liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, are Plaintiffs', and Defendants may disagree with certain of those characterizations and descriptions.

*/s/ William B. Federman*
William B. Federman
